# EXHIBIT A

1   Scott Rafferty (SBD 224389)
    1913 Whitecliff Court
2   Walnut Creek CA 94596
    202-380-5525
3   Attorney for PLAINTIFFS



FILED/ENDORSED

DEC 3 1 2020

By: _____ K. Johnson
              Deputy Clerk

4

5

6               SUPERIOR COURT OF THE STATE OF CALIFORNIA

7                  FOR THE COUNTY OF SACRAMENTO

8

9

10

11  HARI SHETTY, KAVITA SOOD, AND          )   Case No.:  34𝐸2020-0029 16 3𝟗
                                           )
12  NEIGHBORHOOD ELECTIONS NOW             )   COMPLAINT FOR VIOLATION OF THE
                                           )   CALIFORNIA VOTING ACT
13              PLAINTIFFS,                 )
                                           )
14                                         )
         vs.                               )
15                                         )
    CITY OF FOLSOM, et al.,                )
16                                         )
              Defendants                   )
17                                         )
                                           )
18                                         )
                                           )
19                                         )

20  COMES NOW PLAINTIFFS HARI SHETTY, KAVITA SOOD, and NEIGHBORHOOD

21  ELECTIONS NOW (collectively, "PLAINTIFFS"), and allege as follows:

22                         NATURE OF THE ACTION

23      1.    This action is brought by PLAINTIFFS for injunctive relief against the CITY OF

24  FOLSOM for its violation of the California Voting Rights Act, Elections Code, Section 14025, et

25  seq. The imposition of at-large method of election by the CITY OF FOLSOM has resulted in the

26  dilution of votes by Asian and Latino electors, suppressed the ability of these communities to choose

    and recruit candidates for public office, and denied them equal and effective political participation in
27
    elections. The CITY OF FOLSOM's at-large method of election for electing members to its City
28
                                          - 1 -
            COMPLAINT FOR VIOLATION OF THE CALIFORNIA VOTING RIGHTS ACT

Council prevents Asian and Latino residents from electing candidates of their choice or from exercising influence in City Council elections that is equal to the rest of the electorate.

2.     On February 10, 2020, before any public health restriction, the Folsom Democratic Club submitted a petition asking the City Council to comply with the California Voting Rights Act and citing additional benefits of district elections. Approximately 350 signatories included residents from every part of the CITY OF FOLSOM and from every political party. The addresses at which they are registered to vote are shown in Figure 1. The City Manager responded by letter dismissing the proposal to comply with the California Voting Rights Act. The City Manager did not deny that CITY OF FOLSOM's at-large election violated the California Voting Rights Act but stated that district elections would cause "factions and frictions." The City Council took no other action.

3.     CITY OF FOLSOM's at-large method of election does violate the California Voting Rights Act. PLAINTIFFS bring this action to enjoin the CITY OF FOLSOM's continued abridgment of Asian and Latino voting rights. PLAINTIFFS seek a declaration from this Court that the at-large method of election currently used by the CITY OF FOLSOM violates the California Voting Rights Act. PLAINTIFFS seek a decree enjoining the CITY OF FOLSOM from further imposing or applying its current at-large method of election. PLAINTIFFS seek additional injunctive relief requiring the CITY OF FOLSOM to implement district-based elections, ranked choice voting, and other appropriate relief tailored to remedy CITY OF FOLSOM's violation of the California Voting Rights Act.

4.     The California Voting Rights Act is a no-fault statute. It does not require a showing of discriminatory intent. At this time, PLAINTIFFS do not assert violations of Section 2 of the Voting Rights Act of 1965, 52 U.S.C. §10301(c) or of Section 1 of the Civil Rights Act of 1871, 42 U.S.C. §1983, which might require a showing that past or present members of the City Council have chosen to maintain at-large elections as the avenue to preserve or perpetuate their own incumbencies. Garza v. County of Los Angeles (9th Cir. 1990) 918 F.2d 763, 771. Allegations of intentional discrimination can be divisive. While PLAINTIFFS reserve all rights to amend this complaint, avoiding the need to determine intent is a benefit of resolving the case under the California Voting Rights Act.

5.     Since 2000, California Governors of both political parties have supported minority voting rights. On December 18, 2020, former Republican Governor Arnold Schwarzenegger called

- 2 -

COMPLAINT FOR VIOLATION OF THE CALIFORNIA VOTING RIGHTS ACT

1  for new voting rights legislation to prevent COVID from being used as "an excuse for voter

2  suppression."[1]

3      6.      Despite Governor Schwarzenegger's guidance, CITY OF FOLSOM, through its

4  attorney, has indicated that it will not timely and voluntarily comply with the CVRA because

5  "Executive Orders" prohibit public hearings required to permit the City Council to enact an

   ordinance, which is not the case. The attorney goes on to state:

6
        The Governor's Executive Orders carry the force of law under GC sections 8567, 8571 and
7       8627.5, and refusing to comply with such Orders is punishable as a misdemeanor under GC
        8665. Hence if your clients insist that we violate and refuse to comply with the Governor's
8       Orders, which we cannot lawfully do, I'm afraid we simply won't be able to have an
        agreement.
9

10     7.      No other political subdivision has argued that a municipality or its officials can be

11 held criminally liable for conducting public hearings, especially if the municipality avails itself of the

12 ability to conduct these hearings by teleconference.  The statement demonstrates purpose and intent

   to discriminate.
13
       8.      Several jurisdictions[2] have completed hearings in order voluntarily to comply with the
14
   CVRA, sometimes relying on EO N-29-20, which facilitates holding such hearings by teleconfer-
15
   ences.  By contrast, the City Council for CITY OF FOLSOM has continued to accept public
16
   testimony live in its chambers on every other subjects.  To claim that the City can lawfully conduct
17
   all other forms of business, but that COVID somehow renders compliance with the CVRA a criminal
18
   offense, would be redolent of the egregious abuses and pretexts by officials in the Deep South that
19
   led Congress to enact of the Voting Rights Act of 1965.

20     9.      Elections Code, Section 10010(e), requires any prospective plaintiff to send a petition

21 (or notice of possible violation) by certified mail.  Since the evidence is based on the 2018 election, it

22 was appropriate to send this notice in advance of the 2020 election.[3]   However, since it was too late

23 to require compliance for the 2020 election, PLAINTIFFS chose to delay sending the formal notice

24 of possible violation until October 28, 2020.  PLAINTIFFS expected the CITY OF FOLSOM to

25 accept district elections and to execute the "written agreement" set forth in Elections Code, Section

   10010(e) to allow additional time for public input.  PLAINTIFFS hoped that this collaborative
26
   [1] cnn.com/videos/tv/2020/12/19/schwartzenegger-on-the-future-of-the-gop.cnn
27 [2] e.g., City of Napa, Napa Valley Unified School District, and Folsom's own school district, Folsom-
   Cordova USD.
28 [3] The 2018 election is more probative. See Elections Code, Section 14028(a).

                                    - 3 -
              COMPLAINT FOR VIOLATION OF THE CALIFORNIA VOTING RIGHTS ACT

approach might defer this action (and preclude any court action by other affected voters) long enough to allow Folsom's initial district maps to use data from the 2020 census. The Census Bureau usually delivers California data in advance of the statutory deadline (March 31, 2021), which has not been extended. However, many observers expect a delay of the redistricting file until July 2021.

10.    In other jurisdictions, prospective plaintiffs have not attempted to negotiate a statutory agreement and have demanded that districts be drawn using 2010 census data (for use only in the event of a special election) and be redistricted in 2021. Jurisdictions have complied, as required by law.[4]

11.    During the 45-day safe-harbor period that ended on December 14, 2020, PLAINTIFFS attempted to reach an agreement that would delay hearings long enough to avoid the preparation of maps using 2010 census data.

12.    CITY OF FOLSOM further declined unconditionally to agree that districts would be mapped in time for the 2022 election.

13.    CITY OF FOLSOM failed to pass any "resolution of intent," or to schedule hearings to create district maps at any time, prior to the statutory deadline of December 14, 2020.

14.    Absent judicial approval, the refusal of CITY OF FOLSOM to satisfy the statutory conditions for an extension precludes any agreement to delay hearings until after the 2021 redistricting file becomes available. By filing this lawsuit, PLAINTIFFS have provided an opportunity to save public funds and to avoid two sets of hearings, which will likely discourage effective public participation.

15.    CITY OF FOLSOM has delivered to PLAINTIFFS a purported "resolution of intent" for possible consideration at a regular meeting on January 12, 2021. This resolution has not been posted or agendized, so PLAINTIFFS cannot determine if the City Council has any actual intention of considering it. In any event, the untimely resolution does not include a "requirement that the district boundaries be established no later than the six months before the [city's] next regular election to select [Council] members," *i.e.*, before May 8, 2022. If passed, the belated resolution would only promise to implement maps "beginning in November 2022 or the next earliest municipal election if the Sacramento County Voter Registration and Elections Department is unable to implement the new 'district-based' election areas for the November 2022 election."

---

[4] *e.g.*, Central Costa Contra Sanitary Commission received the notice on July 13, 2020 and adopted maps on November 16. 2020.

-4-

COMPLAINT FOR VIOLATION OF THE CALIFORNIA VOTING RIGHTS ACT

16.     After November 2022, the next regular elections occur on November 3, 2024 and November 4, 2026.

17.     The only conceivable basis for a registrar to decline to implement a district map for November 2022 would be a failure by CITY OF FOLSOM to submit the map as a boundary change no later than 125 days before the election (July 6, 2022). Elections Code, Section 12262. Because CITY OF FOLSOM has not negotiated an extension, it must create districts using 2010 census data and then redistrict before April 17, 2022. Section 21622(c). In CITY OF FOLSOM were creating maps for the first time, no extension could extend beyond May 8, 2022, because Section 10010 requires the new neighborhood candidates to know the boundaries six months in advance to prepare their campaigns in the new districts for the November 8, 2022 election. If the CITY OF FOLSOM drew district maps by its relevant deadline,  the maps would be available to the registrar in time for implementation in 2022.

18.     The proposed draft resolution does not schedule hearings to be completed within the additional 90 days permitted by statute, *i.e.*, by March 14, 2021.  The resolution does not reflect or incorporate any written agreement with PLAINTIFFS "to provide to provide additional time to conduct public outreach, encourage public participation, and receive public input." Section 10010(e)(1)(C)(i) precludes any extension beyond March 14, 2021 without such a written agreement.

19.     Elections Code, Section 10010(e), precludes further precludes any agreement to extend the safe harbor that does not include the statutory requirement to establish the boundaries by May 8, 2022, even if PLAINTIFFS were willing to waive their constitutional right to participate and be represented in the hearing process, which they are not.  Without such an agreement, any other elector belonging to a protected class could file a court action and prejudice the ability of PLAINTIFFS to recover fees for work product already created.

## PARTIES

20.     PLAINTIFF HARI SHETTY is a registered voter who resides in the CITY OF FOLSOM.  He is of Asian-American heritage and therefore a member of a "protected class" within the meaning of Elections Code, Section 14026(d) and of a "language minority group" within the meaning of 52 U.S.C. §10310(d)(3).

21.     PLAINTIFF KAVITA SOOD is also a registered voter who resides in CITY OF FOLSOM.  She is also a member of a protected class, as a person of Asian American heritage.

- 5 -

COMPLAINT FOR VIOLATION OF THE CALIFORNIA VOTING RIGHTS ACT

1   22. NEIGHBORHOOD ELECTIONS NOW is an unincorporated association the

2 membership of which includes members of language minorities who are registered to vote within

3 CITY OF FOLSOM.

   23. Defendant CITY OF FOLSOM is a charter city subject to Article XI, Section 5 of the
4
 California Constitution and Government Code, Section 34000, *et seq.*, as well as a political
5
 subdivision within the meaning of Elections Code, Section 14026(c). CITY OF FOLSOM is
6
 governed by a five-member City Council elected at-large, pursuant to Government Code, Sections
7
 34000 and 36501(a). At all times relevant to this Complaint, CITY OF FOLSOM and its City
8
 Council are and have been subject to the California Voting Rights Act, Elections Code, Section

9 14026(c); as well as to the provisions regarding elections set forth in Government Code, Sections

10 34050, 34871, *et seq.*, and Elections Code, Section 10240. The City Council judges the qualifications

11 of its members, pursuant to Government Code, Section 36812.

12        JURISDICTION AND VENUE

   24. All parties hereto are within the unlimited jurisdiction of this Court. Elections Code,
13
 Section 14032 provides for enforcement of the California Voting Rights Act by civil action with
14
 venue in the Superior Court for the county in which the political subdivision is located.
15
   25. Elections Code, Section 10010 allows PLAINTIFFS to commence this action to
16
 enforce Section 14026, *et seq.*, 45 days after a political subdivision receives a notice of possible
17
 violation. PLAINTIFFS sent such a notice by certified mail on October 28, 2020, which CITY OF

18 FOLSOM received on October 30, 2020. If, during this 45-day period, CITY OF FOLSOM had

19 passed a resolution of intent scheduling map hearings, Section 10010 would have required

20 PLAINTIFFS (and other affected voters) to delay filing an action for 90 additional days, during

21 which time CITY OF FOLSOM could conduct public hearings. Since CITY OF FOLSOM did not

22 pass the resolution during the required period, this enforcement action became timely on December

23 14, 2018.

   26. CITY OF FOLSOM, through its attorney, has threatened to invoke Executive Order
24
 N-48-20 as an indefinite bar to judicial enforcement of the California Voting Rights Act. The
25
 exclusive purpose of EO N-48-20 is to avoid "forc[ing] Californians to choose between fully
26
 participating in their democratic process and safeguarding their own health and safety, as well as the
27
 health and safety of their own communities." As such it applies where members of the public would

28 be "forced" to leave their homes because the jurisdiction is unable to conduct hearings by

- 6 -

COMPLAINT FOR VIOLATION OF THE CALIFORNIA VOTING RIGHTS ACT

teleconference or to receive written testimony.  The proposed construction of EO N-48-20 is not authorized by statute or constitutional as applied to CITY OF FOLSOM.

27.    State Constitution, Article I, Section 3(b)(2) requires that any apparent restriction on the People's access to state courts be construed in order "to further the People's right of access." Any apparent restriction must also be construed to avoid state and federal constitutional issues.  The purpose of Section 10010 is to provide an alternative to judicial enforcement if a jurisdiction voluntarily complies with the California Voting Rights Act within 135 days.  By failing to pass a resolution of intent on or before November 14, 2020, CITY OF FOLSOM indicated that it had no intention of availing itself of the statute.

28.    The City Council is one of the few legislative bodies in Northern California to receive members of the public in its chambers for purposes of providing testimony and addressing the City Council, even when Sacramento County was in the "purple tier."  During the 45-day "safe harbor" period, the City Council met in five special and regular meetings (on November 10, December 7, and December 8, 2020) and conducted a public hearing.  In each case, witnesses and other members of the public were invited to "continue to participate in the meeting in person."  In addition, the agendas committed to read public testimony and written comments that were submitted before the meeting and to allow the public to present testimony and comments via telephone during each meeting.

29.    Therefore, if any Executive Order were to be construed to grant immunity from judicial actions to enforce minority voting rights for an indefinite period based on any alleged danger to the public health that would occur if the political subdivision to receive public testimony or to perform legislative acts that might lead to voluntary compliance, it would be unconstitutional as applied to CITY OF FOLSOM.

(a) In the event that CITY OF FOLSOM invokes Executive Order N-48-20 as a basis to bar jurisdiction over this action, as its attorney has threatened to do, this construction of the Order would not be authorized by Government Code, Section 8571.  The suspension of Section 10010 would allow PLAINTIFFS to seek judicial intervention without notice.  As interpreted by CITY OF FOLSOM, the effect of the so-called "suspension" is not only to rewrite the terms of the statute, but indirectly to reverse AB 2123 (2018), which prohibits extending the safe harbor more than 90 days and adds additional conditions on any extension.

(b) The proposed construction of EO N-48-20 would render it unconstitutional for multiple reasons.

- 7 -

COMPLAINT FOR VIOLATION OF THE CALIFORNIA VOTING RIGHTS ACT

(i)     Right to Access State Courts.  The order does not expressly indicate any intent to divest the state courts of jurisdiction over minority voter dilution.  The order does not include findings that would be necessary to satisfy California Constitution, Article I, Section 3(b)(2), if it were construed to provide an indefinite restriction on the right to access state courts.  Any construction that overrides legislation explicitly granting state court jurisdiction over claims of minority vote dilution denies access to the state courts in violation of Article I, Section 3(a).

(ii)     Separation of Legislative Power.  The proposed construction affirmatively revises statutory rights, duties, and immunities, in violation of California Constitution, Article IV, Sections 1 and 10(a).  In contrast to subsequent executive orders, EO N-48-20 does not allow for any modification or rejection by the Legislature.

(iii)     Privileges and Immunities.  Only the Legislature can revoke the PLAINTIFFS' privilege to access state courts or alter the limited immunity of 135 days granted to jurisdictions from enforcement of the California Voting Rights Act. California Constitution, Article I, Section 7(b).

(iv)     Separation of the Judicial Power.  To the extent that EO-N-48-20 resolves "uncertainty" regarding the application of Section 10010, the Order intrudes on the judicial powers of the State in violation of California Constitution, Article VI, Section 1.

(v)     Discrimination Against Protected Class.  The effect of the Order, so construed, would be to deny voters the means to vindicate their constitutional rights based on their race, color, or membership in a protected language minority, in violation of California Constitution, Article I, Section 7; the Voting Rights Act of 1965, 52 U.S.C. §10301(b); the Civil Rights Act of 1871, 42 U.S.C. §1983; and the Fourteenth and Fifteenth Amendments to the United States Constitution.

(vi)     Taking of Property Without Due Process of Law.  The construction impairs the right of PLAINTIFFS to obtain reimbursement no later than April 28, 2021 for work product already performed, consistent with Elections Code, Section 10010(f) and 14030, Code of Civil Procedure, Section 121.5, and Serrano v. Priest (1977) 20 Cal.3d 25, 48-49, in violation of California Constitution, Article I, Section 7, and the Fourteenth Amendment to the United States Constitution.

(vii)     Violation of equal protection.  For the City Council to refuse to conduct a hearing on district elections on the basis that it would expose the municipal corporation to criminal liability, while inviting witnesses on all other subjects to testify in person (notwithstanding the stay-at-home order) or to offer telephonic testimony lacks any rational basis, in violation of California Constitution, Article 1, Section 7, and the Fourteenth Amendment to the United States Constitution.

- 8 -

COMPLAINT FOR VIOLATION OF THE CALIFORNIA VOTING RIGHTS ACT

30. AB 2123 contains additional conditions, including the statutory written agreement with prospective plaintiffs, that must be met before the statutory bar on judicial enforcement of the CVRA can be extended for any period. The written agreement must include a requirement that the district boundaries be established no later by May 8, 2022. It must provide for additional public input. CITY OF FOLSOM, through its attorneys, did not accept these essential conditions.

## FACTS

31. The CITY OF FOLSOM contains approximately 78,447 persons, of which approximately 18% are Asian, 13% Latino, and 3% Black, according to 2018 census data.

32. Racially polarized voting occurs when members of a protected class as defined by the California Voting Rights Act, Elections Code, Section 14025(d), vote for candidates and electoral choices that are different from the rest of the electorate. The existence of racially polarized voting is sufficient to establish dilution of protected-class voters in violation of Section 14027.

33. The size of large electoral districts, including cities the size of CITY OF FOLSOM that elect at-large, increases the cost and complexity of campaigning, which suppresses candidates from minority neighborhoods who could compete in district elections. The absence of local campaigns reduces voter participation in minority neighborhoods, further diluting the influence of voters in the Asian and Latino protected classes.

34. The suppression of minority candidates has reduced minority voter participation. Only 38% of Latino citizens of voting age and only 38% of Asian citizens of voting age voted in the 2018 elections, compared to 64% of voters who are neither Latino nor Asian.

35. Prior to the February 2020 petition, the most influential slating organization, the Chamber of Commerce, had never endorsed a Latino or Asian candidate.

36. Prior to 2018, one Asian and no Latino had run for City Council in the history of CITY OF FOLSOM. The Asian candidate was not elected.

37. The barrier to neighborhood-based campaigns created by at-large elections has advantaged incumbents, entrenching them in office through periods of demographic change. Prior to the 2020 elections, a majority of the City Council members had served at least three terms. Each was white and Anglo, and their average age was 69 years.

38. Since 1980, CITY OF FOLSOM's population has grown eightfold. Over the same period, Asians have increased from ½% to 20% of total population. But overall growth increased the barrier to competition in City Council elections, further diluting the influence of new Asian and

- 9 -

COMPLAINT FOR VIOLATION OF THE CALIFORNIA VOTING RIGHTS ACT

Latino populations. In the 20th century, approximately 16 of 38 City Council members served only one term. During the 21st century, only one incumbent has ever been defeated (and only after being arrested for impersonating a police officer). None of these incumbents was Asian or Latino.

39.    Evidence of racially polarized voting can rely on a single election "where a minority group has begun to sponsor candidates just recently." Thornburg v. Gingles (1989) 470 U.S. 30, 58 & fn.25.

40.    The 2018 City Council election demonstrated polarization between Asian and non-Asian voters.

41.    The 2018 City Council election demonstrated polarization between a coalition of Asian and Latino voters and the rest of the electorate.

42.    In the 2018 election, YK Chalamcherla, the only Asian candidate since 2010, received approximately 68% of the Asian vote and only 5% of the non-Asian vote, according to an estimate generated by ecological regression. These estimates do not overlap at the 80% confidence level. The regression is shown in Figure 2.

43.    Additional contests for City Council and other offices, and votes for propositions and other ballot measures, provide evidence of racially polarized voting.

44.    The obstacles posed by the CITY OF FOLSOM's at-large method of election, together with racially polarized voting, impair the ability of people of certain races, color or language minority groups, such as Asian and Latino voters, to elect candidates of their choice or to influence the outcome of elections conducted in the CITY OF FOLSOM.

45.    District-based elections will provide an opportunity for the members of the protected classes as defined by the California Voting Rights Act to elect candidates of their choice or to influence the outcome of the CITY OF FOLSOM City Council elections.

### FIRST CAUSE OF ACTION
### (Violation of California Voting Rights Act)

46.    As a charter city within the State of California, Defendant CITY OF FOLSOM is a political subdivision as defined in Elections Code, Section 14026(c) and is subject to the CVRA.

47.    Defendant CITY OF FOLSOM employs an at-large method of election, where voters of its entire jurisdiction elect members to its City Council.

48.    Racially polarized voting has occurred in recent elections for members of the City Council for the CITY OF FOLSOM and in elections incorporating other electoral choices by voters

- 10 -

COMPLAINT FOR VIOLATION OF THE CALIFORNIA VOTING RIGHTS ACT

of the CITY OF FOLSOM, California. As a result, the CITY OF FOLSOM's at-large method of election is imposed in a manner that impairs the ability of protected classes as defined by the California Voting Rights Act to elect candidates of their choice or influence the outcome of elections.

49.     Single-member districts provide an opportunity for the members of a protected class (as defined by the California Voting Rights Act) to elect candidates of their choice or to influence the outcome of the CITY OF FOLSOM City Council elections.

50.     An actual controversy has arisen and exists between the parties relating to the legal rights and duties of PLAINTIFFS and CITY OF FOLSOM, for which PLAINTIFFS desires a declaration of rights.

51.     CITY OF FOLSOM's wrongful conduct has caused and, unless enjoined by this Court, will continue to cause, immediate and irreparable injury to PLAINTIFFS and all residents of the CITY OF FOLSOM.

52.     PLAINTIFFS and the residents of the CITY OF FOLSOM have no adequate remedy at law for the injuries they currently suffer and will otherwise continue to suffer.

53.     Civil Code, Section 3423(g) and Code of Civil Procedure, Section 526(b)(4) do not preclude this Court from issuing injunctive relief to prevent violations of the CVRA or as needed to fashion appropriate remedies. Jauregui v. City of Palmdale (2014) 226 Cal. App. 4th 781, 808.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS pray for judgment against Defendant:

1.     For a decree declaring that the CITY OF FOLSOM's current at-large method of election for the City Council violates the California Voting Rights Act;

2.     For preliminary and permanent injunctive relief enjoining the CITY OF FOLSOM from imposing or applying its current at-large method of election in any regular or special election;

4.     For injunctive relief mandating the CITY OF FOLSOM to implement district-based elections, as defined by the California Voting Rights Act, to remedy the CITY OF FOLSOM's violation of the California Voting Rights Act;

5.     For an order approving a map of districts that will equalize influence of voters who belong to protected classes;

6.     For an award of PLAINTIFFS attorneys' fees, costs, litigation expenses and pre-judgment interest pursuant to the Elections Code, 14030 and other applicable law; and

- 11 -

COMPLAINT FOR VIOLATION OF THE CALIFORNIA VOTING RIGHTS ACT

1    7.   For such further relief as the Court deems just and proper.

2    DATED: December 31, 2020

3                                          *Scott Rafferty*

4                                          SCOTT J. RAFFERTY
                                           Counsel for PLAINTIFFS

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 12 -

COMPLAINT FOR VIOLATION OF THE CALIFORNIA VOTING RIGHTS ACT

Figure 1.  Distribution of Voters Signing February 2020 Petition Compared to Distribution of Current and Former Incumbents and Unsuccessful Candidates



Figure 2.   Ecological Regression Estimate of Asian/non-Asian Vote for YK Chalamcherla in 2018



|  | lower 80% | upper 80% |
|---|---|---|
| Asian % | 4.6% | 5.6% |
| non-Asian % | 62.3% | 75.4% |

| | |
|---|---|
| R-squared | 0.889 |
| 1/P-value 1 in | 1,703,638,756,676 |

- 13 -

COMPLAINT FOR VIOLATION OF THE CALIFORNIA VOTING RIGHTS ACT

1

## VERIFICATION OF COMPLAINT

2  State of California

3  County of Sacramento

4  To wit:

5         HARI SHETTY, a PLAINTIFF named in the foregoing Complaint, <u>SHETTY et al. v. CITY</u>

6  <u>OF FOLSOM</u>, affirms under penalty of perjury that the facts and allegations contained therein are

7  true, except so far as they are therein stated to be on information or belief, and that, so far as they are

8  therein stated to be on information or belief, he believes them to be true. Much of the Complaint

9  consists of allegations regarding the legal elements of jurisdiction, legal, academic and historical

10 citations, the results of statistical analyses, and similar factual matters, which are based on

11 information provided by his attorney, which he believes to be true.  I have reviewed and understand

   the statistical analysis.

12

13

14 Affirmed this 31st day of December 2020

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 14 -

COMPLAINT FOR VIOLATION OF THE CALIFORNIA VOTING RIGHTS ACT

1

VERIFICATION OF COMPLAINT

2    State of California

3    County of Sacramento

4    To wit:

5          KAVITA SOOD, a PLAINTIFF named in the foregoing Complaint, SHETTY et al. v. CITY

6    OF FOLSOM, affirms under penalty of perjury that the facts and allegations contained therein are

     true, except so far as they are therein stated to be on information or belief, and that, so far as they are

7    therein stated to be on information or belief, she believes them to be true. Much of the Complaint

8    consists of allegations regarding the legal elements of jurisdiction, legal, academic and historical

9    citations, the results of statistical analyses, and similar factual matters, which are based on

10   information provided by her attorney, which she believes to be true.

11

12

13   Affirmed this 3\s\day of December 2020

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 15 -

COMPLAINT FOR VIOLATION OF THE CALIFORNIA VOTING RIGHTS ACT

1

## VERIFICATION OF COMPLAINT

2   State of California

3   County of Sacramento

4   To wit:

5       On behalf of NEIGHBORHOOD ELECTIONS NOW, a PLAINTIFF named in the foregoing

6   Complaint, SHETTY et al. v. CITY OF FOLSOM, Muriel Brounstein affirms under penalty of

    perjury that the facts and allegations contained therein are true, except so far as they are therein stated

7   to be on information or belief, and that, so far as they are therein stated to be on information or belief,

8   she believes them to be true. Much of the Complaint consists of allegations regarding the legal

9   elements of jurisdiction, legal, academic and historical citations, the results of statistical analyses, and

10  similar factual matters, which are based on information provided by her attorney, which she believes

11  to be true.

12  *Muriel Brounstein*

13

14  Affirmed this 3⟋ day of December 2020

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 16 -

COMPLAINT FOR VIOLATION OF THE CALIFORNIA VOTING RIGHTS ACT