# EXHIBIT E

1  STEVEN WANG, State Bar No. 191168
   City Attorney
2  SARI MYERS DIERKING, State Bar No. 226805
   Assistant City Attorney
3  City of Folsom
   50 Natoma Street
4  Folsom, CA 95630
   Telephone: (916) 461-6025
5  Facsimile: (916) 351-0536

6  Attorneys for Defendant
   CITY OF FOLSOM

**FILED/ENDORSED**

FEB 16 2021

By: _A. Macias_
    Deputy Clerk

*(Filing Fee Exempt: Gov. Code § 6103)*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SACRAMENTO

HARI SHETTY, KAVITA SOOD, and
NEIGHBORHOOD ELECTIONS NOW,

    Plaintiffs,

vs.

CITY OF FOLSOM, *et al.*,

    Defendants.

Case No. 34-2020-00291639

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CITY OF FOLSOM'S DEMURRER TO PLAINTIFFS' COMPLAINT**

Date: June 10, 2021
Time: 1:30 p.m.
Dept.: 53
Judge: Hon. David I. Brown

Reservation No.: 2550176

Complaint Filed: January 5, 2021

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. FACTS AND PROCEDURAL HISTORY ................................................................... 1

III. LEGAL STANDARD .................................................................................................. 2

IV. ARGUMENT ............................................................................................................... 3

    A. The Governor has Authority to Declare a State of Emergency and Issue Executive Orders to Protect the Health and Safety of the People of California ................................. 3

    B. Executive Order N-48-20 is Proper and Has the Force of Law ............................... 4

        *1. The March 4, 2020 Proclamation of State of Emergency was proper* ............... 4

        *2. Executive Order N-48-20 was properly issued, remains in effect, and compliance is mandatory* ........................................................................................................ 5

    C. Executive Order N-48-20 Suspends the Timelines at Issue ..................................... 6

    D. Executive Order N-48-20 Requires Dismissal ......................................................... 8

V. CONCLUSION ........................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Adelman v. Associated International Insurance Co.*, 90 Cal.App.4th 352 (2001) .................. 3, 10

*California Correctional Peace Officers Association v. Schwarzenegger*, 163 Cal.App.4th 802 (2008) ................................................................................................................................ 10

*Jacobson v. Massachusetts*, 197 U.S. 11 (1905) .................................................................... 15

*Macias v. State of California*, 10 Cal. 4th 844 (1995) ........................................... 10, 12, 13, 15

*Marshall v. United States*, 414 U.S. 417 (1974) ................................................................... 15

*Martin v. Municipal Court*, 148 Cal.App.3d 693 (1983) ................................................ passim

*McKenney v. Purepac Pharmaceutical Co.*, 167 Cal.App.4th 72 (2008) ................................... 3

*South Bay United Pentecostal Church v. Newsom*, 590 U.S. __, Case No. 19A1044 (2020) ........ 14

*South Bay United Pentecostal Church v. Newsom*, 592 U.S. __, Case No. 20A136 (20-746) (2021) ............................................................................................................... 10, 11, 12, 14

*Vacco v. Quill*, 521 U.S. 793 (1997) ..................................................................................... 11

**Statutes**

Code of Civil Procedure § 422.10. ........................................................................................... 2

Code of Civil Procedure § 430.10 ........................................................................................... 2

Code of Civil Procedure § 430.30 ........................................................................................... 2

Code of Civil Procedure § 430.41 ........................................................................................... 2

Code of Civil Procedure § 430.50 ........................................................................................... 2

Code of Civil Procedure § 430.60 ........................................................................................... 3

Elections Code § 10010 ................................................................................................. passim

Government Code § 8550 ...................................................................................................... 3

Government Code § 8558 ................................................................................................ 3, 4, 5

Government Code § 8565 ...................................................................................................... 3

Government Code § 8567 ................................................................................................... 3, 4

Government Code § 8571 .............................................................................................. passim

Government Code § 8625 ................................................................................................ 3, 4, 5

Government Code § 8627 .................................................................................................. 3, 13

Government Code § 8629 .................................................................................................... 4, 6

Government Code § 8665 .................................................................................................... 4, 6

**Other**

Executive Order N-29-20..................................................................................................12
Executive Order N-34-20..............................................................................................passim
Executive Order N-48-20..............................................................................................passim

# I. INTRODUCTION

Plaintiffs' complaint fails to state facts sufficient to constitute a cause of action and accordingly the City of Folsom's demurrer should be sustained. Plaintiffs allege that the City of Folsom failed to take action related to changing the method by which it elects City Councilmembers within the timeframes specified in the Elections Code. However, those very timeframes were specifically suspended by the Governor as a part of the State of California's effort to prevent and mitigate the effects of the COVID-19 pandemic. The Governor's Executive Order tolling the relevant timeframes was in effect prior to Plaintiffs' attorney sending a demand letter, prior to the filing of this lawsuit, and it remains in effect today. Due to the fact that the Governor's Executive Order suspended the time a public agency has to respond to a demand letter under the CVRA, and the Elections Code provides that no lawsuit may be filed until a certain amount of time has passed without such a response, the complaint fails to state a cause of action upon which relief may be granted. Accordingly, the demurrer should be sustained without leave to amend, and the complaint should be dismissed.

# II. FACTS AND PROCEDURAL HISTORY

On March 4, 2020, Governor Newsom declared a State of Emergency based on the COVID-19 pandemic. (Request for Judicial Notice in Support of City of Folsom's Demurrer to Plaintiffs' Complaint[1] ("RJN") Exhibit 1.) On March 20, 2020, the Governor signed Executive Order N-34-20. (Exhibit 2.) Paragraph 1 of that executive order suspended the timeframes set forth in Elections Code section 10010 for conducting hearings required when switching from an at-large method of election to district-based elections. (Exhibit 2, ¶ 1.) To clarify the scope of Executive Order N-34-20 without changing its effective date, on April 9, 2020, the Governor signed Executive Order N-48-20, which controls here. (Exhibit 3.) Paragraph 2 of Executive Order N-48-20 states, in pertinent part:

> The timeframes set forth in Elections Code section 10010, subdivisions (a) and (e), are suspended as to any political subdivision of the State. The purpose of this suspension is to protect public health and safety during the period when the State Public Health Officer

---

[1] All exhibits referenced hereafter are exhibits to the RJN, unless specifically stated otherwise.

1

and other public health officials have determined that it is necessary to engage in physical distancing to minimize the spread of COVID-19. This suspension shall be in effect until further notice.

This paragraph pauses the timeframes set forth in Elections Code section 10010, subdivisions (a) and (e), but does not restart them: this paragraph should be construed to toll those timeframes, such that days elapsed during the suspension set forth in this paragraph are not counted, but any days that elapsed prior to that suspension are still counted. (Exhibit 3, ¶ 2.)

On October 28, 2020, Plaintiffs sent the City Clerk a letter stating that the City of Folsom may be in violation of the Elections Code[2]. (Plaintiffs' Complaint ("Complaint"), ¶ 25.) Despite Executive Order N-48-20's suspension of the timeframes set forth in Elections Code section 10010 subdivision (e), Plaintiffs filed suit on January 5, 2021, alleging a failure to take action within the 45-day timeframe that typically applies in CVRA cases. (Complaint, ¶ 25.) However, at all relevant times, that 45-day timeframe was tolled by Executive Order N-48-20. (Exhibit 3.)

The City of Folsom wrote to Plaintiffs' counsel in an attempt to meet and confer before filing this demurrer, in compliance with Code of Civil Procedure section 430.41. (Declaration of Steven Wang in Support of City of Folsom's Demurrer to Complaint ("Wang Dec") at ¶¶ 2, 4.) The parties were not able to reach agreement, so the filing of this demurrer was necessary. (Wang Dec at ¶¶ 5-7.)

### III.   LEGAL STANDARD

A demurrer is a permissible pleading in civil actions. (Code of Civil Procedure (CCP) § 422.10.) A defendant may object to a complaint filed against him via demurrer so long as the grounds for the objection appear on the face of the complaint or are judicially noticeable. (CCP § 430.30(a).) A demurrer can be brought on any of several permissible grounds, including that the complaint does not state facts sufficient to constitute a cause of action. (CCP § 430.10(e).)

A demurrer may be taken to the entire complaint or to any of the causes of action contained therein. (CCP § 430.50.) The demurrer shall specifically state each of the grounds for

---

[2] The City of Folsom denies any such violation.

2

objection upon which it is based. (CCP § 430.60.)

Demurrers for failure to state a cause of action are commonly referred to as general demurrers. (*McKenney v. Purepac Pharmaceutical Co.* (2008) 167 Cal.App.4th 72, 77.) When evaluating such a demurrer, the Court must assume the truth of the material facts properly pled in the complaint. (*Adelman v. Associated International Insurance Co.* (2001) 90 Cal.App.4th 352, 359.) However, the Court does not consider any contentions, deductions, or conclusions of fact or law. (*Ibid.*)

## IV.   ARGUMENT

### A. The Governor has Authority to Declare a State of Emergency and Issue Executive Orders to Protect the Health and Safety of the People of California

The California Emergency Services Act, Government Code section 8550, et seq., gives the Governor broad power and authority with respect to states of emergency. As explained by the Legislature, "[t]he state has long recognized its responsibility to mitigate the effects of natural, manmade, or war-caused emergencies that result in conditions of disaster or in extreme peril to life ... and generally to protect the health and safety and preserve the lives and property of the people of the state." (Government Code § 8550.)

To that end, the Legislature empowered the Governor to proclaim a state of emergency in circumstances that include an epidemic. (Government Code §§ 8625, 8558(b).) During a state of emergency, the Governor has complete authority over all agencies of the state government and the right to exercise all police power vested in the state by the Constitution and laws of the State of California in order to effectuate the purposes of the California Emergency Services Act. (Government Code §§ 8627, 8565.)

In exercising that broad authority, the Governor shall promulgate, issue, and enforce such orders as he deems necessary. (Government Code §§ 8627, 8567(a).) During the state of emergency, the Governor's orders have the force and effect of law. (Government Code § 8567(a).)

The Legislature also specifically authorized the Governor to suspend any statute during a state of emergency where he determines that strict compliance would in any way

3

prevent, hinder, or delay the mitigation of the effects of the emergency. (Government Code § 8571.)

When the state of emergency has passed, the Governor must proclaim its termination at the earliest possible date that conditions warrant. (Government Code § 8629.) The extraordinary powers granted to the Governor with respect to a state of emergency terminate when the state of emergency itself has been terminated by proclamation of the Governor or by concurrent resolution of the Legislature declaring it at an end. (Government Code § 8629.) Until that time, the Governor's orders remain in effect and retain the force of law. (Government Code § 8567(a).)

Any person who refuses or willfully neglects to obey any lawful order promulgated or issued pursuant to the California Emergency Services Act is guilty of a misdemeanor. (Government Code § 8665.) This penalty has been upheld by the Courts. (*Martin v. Municipal Court* (1983) 148 Cal.App.3d 693.)

**B. Executive Order N-48-20 is Proper and Has the Force of Law**

*1. The March 4, 2020 Proclamation of State of Emergency was proper*

Governor Newsom declared a state of emergency with respect to the COVID-19 pandemic on March 4, 2020, after finding that the conditions of Government Code section 8558(b) relating to the declaration of a state of emergency had been met and that local authority was inadequate to cope with the emergency. (Exhibit 1.)

When analyzing claims that a previous Governor's declaration of a state of emergency was defective and improper, the Court of Appeal explained that specific findings are not required, but the Governor must state the circumstances of the emergency found to exist and that the emergency is found to be beyond local control measures. (*Martin, supra,* 148 Cal.App.3d at p. 698, citing Government Code §§ 8625, 8558.)

Here, the Governor's March 4, 2020 Proclamation of State of Emergency did both. Specifically, the Proclamation stated, in pertinent part:

"[A]s of March 4, 2020, across the globe, there are more than 94,000 confirmed cases of COVID-19, tragically resulting in more than 3,000 deaths worldwide;" and

4

> "[A]s of March 4, 2020, there are 129 confirmed cases of COVID-19 in the United States, including 53 in California, and more than 9,400 Californians across 49 counties are in home monitoring based on possible travel-based exposure to the virus, and officials expect the number of cases in California, the United States, and worldwide to increase;" and
>
> "[I]f COVID-19 spreads in California at a rate comparable to the rate of spread in other countries, the number of persons requiring medical care may exceed locally available resources, and controlling outbreaks minimizes the risk to the public, maintains the health and safety of the people of California, and limits the spread of infection in our communities and within the healthcare delivery system;" and
>
> "[L]ocal authority is inadequate to cope with the threat posed by COVID-19."

(Exhibit 1, pp. 1-2.)

The Governor's Proclamation of State of Emergency identified the circumstances of the emergency found to exist and found that the emergency was beyond local control measures. (Exhibit 1, pp. 1-2.) Accordingly, the Governor's action complied with Government Code sections 8625 and 8558 and was also consistent with the Court of Appeal's direction in *Martin, supra*. Therefore, the March 4, 2020 Proclamation of State of Emergency was proper.

### *2. Executive Order N-48-20 was properly issued, remains in effect, and compliance is mandatory*

As a part of the California Emergency Services Act, the Legislature granted the Governor the power to suspend any statute upon a determination that strict compliance would in any way delay, hinder, or prevent mitigation of the effects of a declared state of emergency. (Government Code § 8571.)

Executive Order N-34-20 suspends the timeframes in Elections Code section 10010. (Exhibit 2, ¶ 1.) Executive Order N-48-20, which controls here, clarifies the scope of Executive Order N-34-20 and further specifies the timeframes that are suspended until further notice. (Exhibit 3, ¶ 2.) Executive Order N-48-20 explains that the Governor suspended the statutory timeframes at issue because he determined that strict compliance would prevent, hinder, or delay

5

efforts to mitigate the effects of the COVID-19 pandemic. (Exhibit 3, p. 2.) Executive Order N-48-20 states, in pertinent part:

> [U]nder the provisions of Government Code section 8571, [the Governor] find[s] that strict compliance with various statutes specified in this order would prevent, hinder, or delay appropriate actions to prevent and mitigate the effects of the COVID-19 pandemic. (Exhibit 3, p. 2.)

Both Executive Order N-34-20 and Executive Order N-48-20 suspend the timeframes in relevant provisions of the Elections Code because the Governor determined that strict compliance with those timeframes would prevent, hinder, or delay the mitigation of the effects of the state of emergency caused by the COVID-19 pandemic. (Exhibit 3, p. 2; Exhibit 2, p. 2.) This action is specifically authorized by Government Code section 8571. Therefore, Executive Order N-48-20 was properly issued.

Executive Order N-48-20 states that it shall be in effect "until further notice". (Exhibit 3, ¶ 2.) As of the writing of this demurrer, there has been no notice that Executive Order N-48-20 is no longer in effect. (Declaration of Sari Myers Dierking in Support of City of Folsom's Demurrer to Complaint ("Dierking Dec"), ¶ 6; RJN, ¶ 4(b).) Without such notice, the process outlined in Government Code section 8629 applies. As of the writing of this demurrer, the State of Emergency originally proclaimed on March 4, 2020 remains in effect. (Dierking Dec, ¶ 5; RJN, ¶ 4(a).) No proclamation terminating the State of Emergency has been issued by the Governor and no resolution of the Legislature has declared it at an end. (*See* Government Code § 8629; Dierking Dec, ¶ 5; RJN ¶ 4(a).)   Accordingly, by its own terms and pursuant to Government Code section 8629, Executive Order N-48-20 remains in effect.

The failure to obey an executive order issued pursuant to the California Emergency Services Act is a misdemeanor. (Government Code § 8665.) This penalty has been upheld by the courts. (*Martin, supra* 148 Cal.App.3d 693.) Accordingly, compliance with Executive Order N-48-20 is mandatory.

C. **Executive Order N-48-20 Suspends the Timelines at Issue**

Plaintiffs' Complaint alleges that Elections Code section 10010 allows them to file

suit 45 days after giving notice of a possible violation. (Complaint, ¶ 25.) Plaintiffs allege they sent such a notice to the City of Folsom, which was received on October 30, 2020, making the Complaint timely as of December 14, 2020. (Complaint, ¶ 25.)

While Plaintiffs' allegations might state a claim under normal circumstances, they fail to do so here because Executive Order N-48-20 suspended the 45-day timeframe, rendering the Complaint fatally premature.

The plain language of the statute, read together with the executive order, supports the City's position. Specifically, Elections Code section 10010 subdivision (e)(2) prohibits filing a complaint until 45 days after notice of a possible violation. (Elections Code § 10010(e)(2); Complaint, ¶ 25.) Elections Code section 10010(e) states, in pertinent part:

> (1) Before commencing an action to enforce Sections 14027 and 14028, a prospective plaintiff shall send by certified mail a written notice to the clerk of the political subdivision against which the action would be brought asserting that the political subdivision's method of conducting elections may violate the California Voting Rights Act of 2001.
>
> (2) A prospective plaintiff shall not commence an action to enforce Sections 14027 and 14028 within 45 days of the political subdivision's receipt of the written notice described in paragraph (1). (Elections Code § 10010(e).)

Executive Order N-48-20 specifically suspends and tolls the post-notice 45-day timeframe that must pass before a CVRA complaint may be filed pursuant to Elections Code section 10010 subdivision (e)(2). (Exhibit 3, ¶ 2.) Paragraph 2 of Executive Order N-48-20 states, in pertinent part:

> The timeframes set forth in Elections Code section 10010, subdivisions (a) and (e), are suspended as to any political subdivision of the State. The purpose of this suspension is to protect public health and safety during the period when the State Public Health Officer and other public health officials have determined that it is necessary to engage in physical distancing to minimize the spread of COVID-19. This suspension shall be in effect until further notice.

7

This paragraph pauses the timeframes set forth in Elections Code section 10010, subdivisions (a) and (e), but does not restart them: this paragraph should be construed to toll those timeframes, such that days elapsed during the suspension set forth in this paragraph are not counted, but any days that elapsed prior to that suspension are still counted. (Exhibit 3, ¶ 2.)

Plaintiffs' Complaint relies upon Elections Code section 10010(e) as the basis for showing that the action was timely filed. (Complaint, ¶ 25.) However, Executive Order N-48-20 specifically suspends that statute and tolls its 45-day timeframe. (Exhibit 3, ¶ 2.) While Executive Order N-48-20 remains in place, the 45-day time period that must pass before a CVRA complaint may be legally filed remains tolled. (Exhibit 3, ¶ 2.) Accordingly, Plaintiffs have not met a necessary prerequisite to the filing of this CVRA lawsuit.

### D. Executive Order N-48-20 Requires Dismissal

Elections Code section 10010(e)(2) specifically prohibits a prospective plaintiff from filing a CVRA lawsuit within 45 days of the public agency receiving a written notice under section 10010(e)(1). (Elections Code § 10010(e)(2).) That 45-day timeframe was lawfully suspended by the Governor's Executive Order N-48-20. (Exhibit 3, ¶ 2.) In fact, since the executive order was in place before Plaintiffs served the written notice described above, the 45-day timeframe has not even started. (Exhibit 3, ¶ 2: "This paragraph pauses the timeframes set forth in Elections Code section 10010, subdivisions (a) and (e), but does not restart them: this paragraph should be construed to toll those timeframes, such that days elapsed during the suspension set forth in this paragraph are not counted, but any days that elapsed prior to that suspension are still counted.")

Simply put, Executive Order N-48-20 tolled the 45-day timeframe at issue. (Exhibit 3, ¶ 2.) Because the 45-day timeframe has not yet passed, no complaint may be filed. (Elections Code § 10010(e)(2).) As such, Plaintiffs' Complaint fails to state a cause of action on which relief may be granted.

Plaintiffs allege that Executive Order N-48-20 does not control, arguing that tolling the 45-day timeframe is not authorized by Government Code section 8571 and doing so is

8

unconstitutional for various reasons. While the Court must assume the truth of the material facts properly pled in Plaintiffs' Complaint, contentions, deductions, or conclusions like these are not entitled to the same weight. (*Adelman, supra,* 90 Cal.App.4th at p. 359.)

Relatively few published opinions from California Courts have considered challenges to the viability of executive orders issued during a state of emergency. But in those cases, arguments similar to those raised by Plaintiffs have been rejected. (*Martin, supra,* 148 Cal.App.3d 693; *Macias v. State of California* (1995) 10 Cal. 4th 844; *California Correctional Peace Officers Association v. Schwarzenegger* (2008) 163 Cal.App.4th 802.)

In response to the City of Folsom's attempt to meet and confer regarding its objections to the Complaint, Plaintiffs' counsel pointed to the United States Supreme Court's February 5, 2021 decision in *South Bay United Pentecostal Church v. Newsom,* 592 U.S. ___ (2021), Case No. 20A136 (20-746). The Supreme Court's short, 19-line decision in that case granted a temporary injunction against California's total ban on indoor worship services, but upheld the State's percentage capacity limitations and prohibition on singing and chanting in association with such services. (*Id.* at p. 1.)

The holding in *South Bay United Pentecostal Church* does not control here and it has little, if any, relevance to the issues to be decided in this demurrer. The facts in that case are very different from those at issue here. Unlike the total ban on indoor worship services at issue in *South Bay United Pentecostal Church,* there was – and is - no ban on voting in the City of Folsom. While Plaintiffs dislike the at-large method by which Folsom City Councilmembers are elected and serve, an election occurred shortly after Plaintiffs' October 28, 2020 demand letter[3]. (Exhibit 5, p. 2.) In addition, the next municipal election is not scheduled to occur until November 2022, so there is no imminent threat to be addressed here, unlike the ongoing prohibition on indoor worship services at issue in *South Bay United Pentecostal Church.* (*See* Exhibit 6, Folsom Charter, section 2.01(B)-(D).)

---

[3] Despite Plaintiffs' claims of discriminatory voting, one Asian candidate and one Latina candidate were elected to fill the two vacant seats on the Folsom City Council in the 2020 election. (*See* Exhibit 5, p. 2.)

9

Similarly, the body of law related to the First Amendment's protection of the free exercise of religion is vast and specific to cases involving religious issues. As stated by Justice Kagan in the dissenting opinion in *South Bay United Pentecostal Church*, "States must treat like cases alike but may treat unlike cases accordingly." (*South Bay United Pentecostal Church, supra, dissent* at p. 2, quoting *Vacco v. Quill*, 521 U.S. 793, 799 (1997).) A total ban on indoor religious services is categorically different from tolling the statutory timeframes that must pass before prospective plaintiffs may file suit in CVRA cases. Accordingly, *South Bay United Pentecostal Church* does not dictate the outcome in this case.

As explained by the California Supreme Court, "a public emergency is not a time for uncoordinated, haphazard, or antagonistic action." (*Macias, supra*, 10 Cal. 4th at p. 858.) The California Emergency Services Act "recognizes and responds to a fundamental role of government to provide broad state services in the event of emergencies resulting from conditions of disaster or of extreme peril to life, property, and the resources of the state. Its purpose is to protect and preserve health, safety, life, and property." (*Id.* at p. 854, citing *Martin, supra*, 148 Cal.App.3d at p. 696.) The Act "makes equally evident the overriding necessity of a broadly *coordinated* effort to deal with emergencies, and places the primary responsibility, and the means for carrying out such efforts, with the State." (*Macias, supra*, 10 Cal.4th at p. 854.)

If accepted, Plaintiffs' arguments would lead to an uncoordinated, haphazard, and inconsistent application of all executive orders issued pursuant to this ongoing state of emergency. With conditions changing rapidly, the applicability of executive orders would be unclear at any given time. The Courts would be flooded with lawsuits arguing over whether executive orders apply in a myriad of specific cases.

As relevant here, prospective plaintiffs, public agencies, and members of the public would not know in any given case whether Executive Order N-48-20 applies. Some jurisdictions might choose to hold public hearings to avoid potential CVRA-related penalties while risking the health and safety of their constituents and, by extension, the community at large. Other jurisdictions might wait to hold the hearings, relying on the plain language of the executive order

10

and wishing to protect the health of their residents and of the community, only to find themselves facing various penalties due to their unique facts and circumstances.

The Governor foresaw – and specifically preempted – this kind of confusion. Just a few days after issuing Executive Order N-34-20, the Governor clarified its scope and confirmed its broad, statewide application in Executive Order N-48-20.

Executive Order N-34-20 contained certain qualifications and limitations. Specifically, Executive Order N-34-20 stated, in pertinent part:

> The timeframes for conducting the hearings required when a political subdivision changes from an at-large method of election to a district-based election, as set forth in Elections Code section 10010, *are suspended for any subdivision, until such time as neither state nor local public health officials recommend or impose social distancing measures in the relevant subdivision.* Following that time, the relevant subdivision shall hold the required hearings in a manner that ensures the public is provided advance notice and is afforded an opportunity to participate in the postponed hearings… (Exhibit 2, ¶ 1, emphasis added.)

Less than one month after issuing Executive Order N-34-20, the Governor realized that such a location-specific order would not be in the best interests of the people of California, threatening public health and safety by resulting in uncertainty regarding whether the timeframes in Elections Code section 10010 would apply in any given jurisdiction at any given time. (Exhibit 3, pp. 1-2 and ¶ 2.) What if a jurisdiction were to hold one or more public hearings pursuant to the CVRA only to find that conditions changed before the next scheduled hearing such that social distancing was again required?[4] Would the redistricting process proceed? Would the timelines be tolled again? Once social distancing was no longer required, would the process start over from the beginning or pick up where it left off? Do the same rules apply to every jurisdiction in a given County? These types of questions exemplify the kind of uncoordinated, haphazard action the California Supreme Court warned against in *Macias, supra*.

---

[4] This is not purely hypothetical, as many areas in California experienced what has been referred to as a "spike" in COVID-19 cases late last year that resulted in a re-institution of the regional stay at home order. (Exhibit 7.)

11

As a result, the Governor issued Executive Order N-48-20 with the express purpose of "clarify[ing] the scope of Paragraph 1 of Executive Order N-34-20..." such that "[t]he timeframes set forth in Elections Code section 10010, subdivisions (a) and (e), *are suspended as to any political subdivision of the State. The purpose of this suspension is to protect public health and safety* during the period when the State Public Health Officer and other public health officials have determined that it is necessary to engage in physical distancing to minimize the spread of COVID-19...." (Exhibit 3, ¶ 2, emphasis added.) Accordingly, the Governor determined that broad, statewide tolling of the timeframes at issue here was in the best interests of the public in order to prevent the spread of COVID-19.

The Governor was aware that alternative means of public participation existed when Executive Order N-48-20 was issued. Specifically, Executive Order N-29-20, issued on March 17, 2020, authorized local legislative bodies to hold public meetings via teleconferencing and to make public meetings accessible telephonically or otherwise electronically to all members of the public seeking to observe and address the body. (Exhibit 4, ¶ 3.) The Governor could easily have limited the applicability of paragraph 2 of Executive Order N-48-20 or framed it differently based on such alternative means of public participation. However, he declined to do so, determining instead that broad, statewide tolling of the timeframes at issue here was in the best interests of the public in order to prevent the spread of COVID-19. (Exhibit 3, ¶ 2.)

That determination is entitled to significant deference from the Courts. (*South Bay United Pentecostal Church, supra,* at p. 2, Chief Justice Roberts concurring.) In fact, "[o]ur Constitution principally entrusts 'the safety and the health of the people' to the politically accountable officials of the States 'to guard and protect.'" (*South Bay United Pentecostal Church v. Newsom,* 590 U.S. __ (2020), Case No. 19A1044, at p. 2, Chief Justice Roberts concurring, quoting *Jacobson v. Massachusetts,* 197 U.S. 11, 38 (1905).) "When those officials 'undertake to act in areas fraught with medical and scientific uncertainties,' their latitude 'must be especially broad'." (*Ibid.*, quoting *Marshall v. United States*, 414 U.S. 417, 427 (1974).)

Accordingly, Governor Newsom's determination that the timeframes in Elections Code section 10010, subdivision (e) should be tolled on a statewide basis until further notice in

order to protect the public health and safety should not be second guessed now. If it is, the kind of uncoordinated, haphazard, and antagonistic action cautioned against by the California Supreme Court in *Macias, supra,* will be the result. (See, *Macias, supra,* 10 Cal. 4th at p. 858.)

The Legislature also foresaw and preempted the kind of confusion that would result if Plaintiffs' arguments are accepted. The Legislature granted the Governor the authority to determine, in any given state of emergency, the proper scope and geographic applicability of any executive order, including one to suspend a statute. (Government Code §§ 8627, 8571.) Government Code section 8571 gives the Governor authority to suspend any statute if strict compliance would prevent, hinder, or delay mitigation of the state of emergency. (Government Code § 8571.) The Legislature did not impose limits on that power due to case-specific facts or jurisdictional differences. On the contrary, it granted the Governor broad statewide authority and the right to exercise all police power vested in the state by the Constitution and laws of the State of California in order to protect the public from the effects of the state of emergency. (Government Code § 8627.)

California is a state with 58 counties, hundreds of cities, and approximately 39 million residents. In a state this big, there will always be some differences in how things are done from place to place. However, the California Emergency Services Act allows the State to coordinate efforts to mitigate states of emergency and it gives the Governor broad authority to issue executive orders applicable statewide to do just that. By design, executive orders issued pursuant to a statewide state of emergency are not enforced haphazardly, but consistently. Plaintiffs' arguments should be rejected because they are contrary to the clear and unambiguous statutes in the California Emergency Services Act, and the plain language of Governor Newsom's Executive Order N-48-20.

Plaintiffs are specifically prohibited from commencing this CVRA lawsuit by the plain language in Elections Code section 10010(e)(2) and Executive Order N-48-20. Since the 45-day timeframe at issue has been tolled and has not yet commenced, Plaintiffs' filing of their lawsuit is not legally permissible and the Complaint fails to allege a single cause of action upon which relief could be granted.

13

## V.  CONCLUSION

Executive Order N-48-20 specifically suspended the timelines in Elections Code section 10010 subdivision (e), the statute relied upon by Plaintiffs to file suit in this case. While those timelines are tolled, prospective plaintiffs may not legally commence an action of the kind at issue here. Accordingly, the complaint fails to state a cause of action and demurrer is proper.

Therefore, and for the foregoing reasons, the City of Folsom respectfully requests that its demurrer be sustained without leave to amend, and Plaintiffs' complaint be dismissed.

Dated: February 12, 2021

_____
SARI MYERS DIERKING
Assistant City Attorney
Attorney for Defendant, CITY OF FOLSOM

14