# EXHIBIT O



RECEIVED
LAW AND MOTION DROP BOX

2021 MAR -3 PH 4: 06

GDSSC COURTHOUSE
SUPERIOR COURT
OF CALIFORNIA
COUNTY

**FILED/ENDORSED**

MAR - 3 2021

By: _____ A. Macias _____
Deputy Clerk

1  Scott Rafferty, Esq (SBN 224389)
   1913 Whitecliff Court
2  Walnut Creek CA 94596
   202-380-5525
3  rafferty@gmail.com

4
5  Attorney for Plaintiffs

6

7            SUPERIOR COURT FOR THE STATE OF CALIFORNIA

8                        COUNTY OF SACRAMENTO

9  HARI SHETTY, KAVITA SOOD, AND          Case No.: 34-2020-00291639

10 NEIGHBORHOOD ELECTIONS NOW             PLAINTIFFS' REQUEST FOR JUDICIAL
                                          NOTICE , DECLARATION AND
11                                        MEMORANDUM OF POINTS AND
             Plaintiffs,                  AUTHORITIES IN SUPPORT THEREOF
12                                        [Code Civ. Proc. §§ 430.40]
   vs.                                    Hearing Date: March 17, 2021
13                                        Complaint Filed: December 31, 2020
   CITY OF FOLSOM,                        Judge: Hon. Shama H. Misawali
14
             Defendant
15

16           TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

17

18 PLEASE TAKE NOTICE that on March 17, 2021 at 9:00AM or as soon thereafter as the matter

19 may be heard in Department 53 of the Superior Court for Sacramento County, plaintiffs will

20 request the Court to take judicial notice of the documents listed stated herein.  The request is

21 limited to the existence of the documents and their authenticity as records of statements and legal

22 arguments made by and/or to government officials.  Plaintiffs do not seek judicial notice of the

23 truth of any fact asserted therein.

24

25         Plaintiff's RJN Exhibit 1 is the letter from SJUSD and FCUSD attorneys to Governor

26 Gavin Newsom, dated March 27, 2020.  The letter is also a file submitted to a government entity.

27 Judicial notice of such documents has been taken in <u>Washington v. Contra Costa County</u> (1995)

28 PAGE 1
   PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE

45 Cal.Rptr.2d 646, 650, apparently pursuant to Evidence Code, Section 452(c). Judicial notice is not sought as to the accuracy of the facts asserted therein, but only to demonstrate that SJUSD made various representations to the Governor and submitted proposed language for an executive order.

Plaintiffs' RJN Exhibit 2 is the transcript of the Folsom City Council meeting of January 12, 2021, downloaded from the city's website.

Plaintiffs' RJN Exhibit 3 is the draft resolution presented to the City Council, which was tabled.

Plaintiffs' RJN Exhibit 4 is Executive Order N-67-20.

Plaintiffs' RJN Exhibit 5 is an excerpt from the Petition for Writ of Mandamus in Newsom v. Superior Court for Sutter County, C093006, before the Third Appellate District. In view of its length, I have included the table of contents and the entire section entitled "EO N-67-20 is supported by the plain text of the Emergency Services Act."

Plaintiffs' RJN Exhibit 6 is an excerpt from the reply in support of this petition.

Plaintiffs' RJN Exhibit 7 is an excerpt from the amicus brief in support of this petition filed by the California State Association of Counties and the League of California Cities. I enclose the table of contents and Part II in its entirety, as well as the table of authorities, which indicates that Part I does not discuss specific executive orders.

Authenticity

The undersigned affirms under penalty of perjury the following:

1) Exhibit 1 was obtained through a public records request to San Juan Unified School District (SJUSD).

2) Exhibit 2 and 3 were downloaded from the City of Folsom website. Exhibit 2 was formatted in Excel and Word and highlighting was added.

PAGE 2
PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE

3) Exhibit 4 was downloaded from the website https://www.gov.ca.gov/

4) Exhibit 5 was downloaded from https://blog.electkevinkiley.com/briefs-filed-with-the-court-of-appeals/  Mr. Kiley is a member of the State Assembly.  Each bears a legend indicating receipt by the court of appeal.  I acknowledge that the method of downloading from this site does not preserve the metadata of the original document that would provide additional proof of authenticity.

Each of these documents is a file submitted to a government entity. *See* Washington v. Contra Costa County (1995) 45 Cal.Rptr.2d 646, 650; Evidence Code, Section 452(c).  Except for Exhibit 7, each is a publication of either City of Folsom or the Governor.   Serrano v. Priest (1971) 5 Cal.3d 584, 591; 1 Witkin, CALIFORNIA EVIDENCE 4TH (2000) Judicial Notices, § 19, p. 113.

In the course of preparing this request, plaintiffs counsel recognized that two matters on page 9 – the statement of a Folsom Cordova USD trustee and that a dispute exists between NEN and SJUSD regarding the accuracy of statements made by Exhibit 1 – are alleged in the complaint against SJUSD, but not yet alleged in the complaint involving City of Folsom.   As counsel to plaintiffs in both cases, I would be prepared to refer to these documents (and allege the facts asserted) in an amended complaint.

Folsom requested to be consolidated with the hearing of the demurrer in this case, and I have provided the Folsom City Attorney the complaint, demurrer and proposed exhibits related to that case.  These demonstrate that a dispute exists between NEN and SJUSD.  If requested by opposing counsel, I will attempt to obtain a transcript of the Folsom Cordova USD meeting at which the statement was made.  The video is available on FCUSD's official YouTube channel: https://www.youtube.com/results?search_query=Folsom+Cordova+Unified+School+District&sp=EiG4A QHCARtDaElKZTJGdmJoTGi̇tb0FSZW83M1FiUVMzeUU%253D

PAGE 3
PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE

This Request for Judicial Notice has been served with the opposition papers and, therefore, notice and opportunity to be heard on this matter has been provided as required by Evidence Code, §453. Defendant respectfully request that this Court grant its Request for Judicial Notice of the items listed above.

I affirm the representations made herein under penalty of perjury:

Attorney for Plaintiffs Shetty, Sood, and NEN

Dated: March 3, 2021

PAGE 4
PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE

1

2   Dated this 2nd day of March 2021          Respectfully submitted,

3

4          *Scott Rafferty*

5

6          Scott J. Rafferty

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   PAGE 5
     PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE

# PLAINTIFFS'

# EXHIBIT 1

SJUSD Letter to Governor

   

  

March 27, 2020

**By U.S. Mail & Email: stateinformation@state.ca.gov**

Governor Gavin Newsom
1303 10th Street, Suite 1173
Sacramento, CA 95814

Re:    Request for Clarification of Executive Order N-34-20 as it Relates to the
        California Voting Rights Act

Dear Governor Newsom:

We are writing on behalf of the **San Juan** Unified School District, the **Folsom Cordova** Unified
School District, the California Association of School Business Officials (**CASBO**), the
California School Boards Association (**CSBA**), and the Association of California School
Administrators (**ACSA**) to respectfully request critical and time sensitive clarification on your
Executive Order N-34-20, as it relates to the California Voting Rights Act ("CVRA"). [1]

Executive Order N-34-20 currently suspends the timelines for "conducting the hearings required
when a political subdivision changes from an at-large method of election to a district election, as
set forth in Elections Code section 10010." As explained below, we request clarification for this
particular order to ensure that the Governor's intent is appropriately implemented, and to allow
these public agencies to focus on the current COVID-19 crisis rather than diverting resources to
the process of adjusting election boundaries.

1. **Election Code section 10010 provides the substantive steps and procedural timelines
   that public agencies must follow to transition from at-large to by-trustee area elections.**

Section 10010 contains two key components:

   *1)  Public Hearing Timelines: The CVRA Process*

In order to transition from at-large to by-trustee area elections, public agencies must hold a
number of public hearings.  Prior to the creation of any draft trustee-area maps, the public agency
must hold two hearings "at which the public is invited to provide input regarding the
composition of the districts." [2]  Once draft trustee area maps have been created, the public agency
must hold two hearings at which the public is invited to provide input regarding the content of

---

[1] Elec. Code, § 14025
[2] Elec. Code, § 10010, subd. (a)(1)

Governor Gavin Newsom
March 27, 2020
Page 2

the draft map . . ." [3]  The first two hearings must be held within thirty (30) days of each other, and the second two hearings must be held within forty-five (45) days of each other. *For the sake of clarity in this letter, we will call these 30 day and 45 day timelines "Public Hearing Timelines."*

### 2) *Safe Harbor Timelines: Protections to Public Agencies*

Elections Code section 10010 also provides public agencies substantive protections that follow the above steps by prohibiting plaintiff attorneys from filing a lawsuit against the public agency if certain steps are taken within specified time periods, commonly referred to as "safe-harbor" periods. Specifically:

- *Safe Harbor Period 1.* A plaintiff must send the public agency a written notice of intent to sue before filing a CVRA lawsuit. The plaintiff is then prohibited from filing a lawsuit for 45 days from the date of the demand letter.[4]

- *Safe Harbor Period 2.* If within that 45 days the public agency adopts a resolution signaling its intent to transition to by-trustee areas, the plaintiff is then prohibited from filing a lawsuit for an additional 90 days. This 90 days is intended to provide the public agency time to conduct the above public hearing process provided above.[5]

*For the sake of clarity in this letter, we will call these timelines "Safe Harbor Timelines."* If the public agency completes the process within the safe harbor periods, the plaintiff is prohibited from filing a CVRA lawsuit. The plaintiff may then entitled to reimbursement of up to $30,000, plus inflation factors, for his/her efforts in preparing the written notice.[6]

### 2. Executive Order N-34-20 expressly suspends the Public Hearing Timelines but not the Safe Harbor Timelines

The Executive Order suspended the relevant CVRA timelines as "incongruent with public health officials' guidance regarding social distancing." The Order states:

> The timeframes for conducting the hearings required when a political subdivision changes from an at-large method of election to a district-based election, as set forth in Elections Code section 10010, are suspended for any subdivision, until such time as neither state nor local public health officials recommend or impose social distancing measures in the relevant subdivision. Following that time, the relevant subdivision shall hold the required hearings in a manner that ensures the public is provided advance notice and is afforded an opportunity to participate in the postponed hearings; subdivisions are urged to ensure that this process includes effective outreach to individuals with disabilities, individuals who primarily speak

---

[3] Elec. Code § 10010, subd. (a)(2)

[4] Elec. Code, § 10010, subd. (c)(2)

[5] Elec. Code, § 10010, subd. (c)(3)(B)

[6] Elec. Code, § 10010, subd. (f)(3)

Governor Gavin Newsom
March 27, 2020
Page 3

> languages other than English, and other individuals who may have particularized needs.

We believe that your intent in issuing Executive Order N-34-20 was to assist public agencies during these difficult times by suspending *both* the Public Hearing Timelines and the Safe Harbor Timelines. However, because of the complicated nature of the statute, and additional looming deadlines for public agencies (see below), school districts and other impacted public agencies are requesting clarification to ensure that the intent of your Executive Order is clear and effectuated.

3. **Public agencies cannot complete the transition process to by-trustee area elections in time for the 2020 election, due to the school closures, public safety concerns, and the upcoming July 1, 2020 Registrar of Voters' deadline.**

The Elections Code provides that changes from at-large to by-trustee area elections must occur not less than 125 days before that election.[7] In other words, a public agency's entire transition process *must be completed no later than July 1, 2020* in order to be implemented in the November 2020 election. The intent of this deadline is to provide the registrar of voters with sufficient time to implement by-trustee area elections. If the COVID-19 pandemic continues its current trend, public agencies will be unable to meet this July 1, 2020 deadline.

Consider the San Juan Unified School District's current timeline. On February 6, 2020, San Juan received a letter from an attorney demanding that the District transition to by-trustee area elections under threat of CVRA litigation. On March 10, 2020, San Juan's Board of Education voted unanimously to adopt a Resolution expressing its intent to transition to by-trustee area elections. Due to the COVID-19 pandemic, the District ordered the closure of all of its schools beginning on March 16, 2020. In response to their immediate need to focus attention on educating students during these difficult times, San Juan reached out to the demanding attorney to request postponing the transition until the next election cycle. The attorney refused, demanding that the District implement the election changes even in the midst of this public health crisis. The Folsom Cordova Unified School District also requested an agreement from the same attorney extending the time lines to allow for implementation for the 2022 election and that request was similarly rejected.

For the sake of this example, if one estimates that public health officials lift the social distancing measures at the end of May, and the San Juan School District is able to safely begin conducting public hearings beginning on June 1, this would give the District only 30 days to complete the following tasks:

- Conduct two public hearings to gather community input on prospective maps

- Develop draft maps

- Publish the draft maps at least 7 days prior to consideration at a public hearing

---

[7] Elections Code section 12262

Governor Gavin Newsom
March 27, 2020
Page 4

- Conduct two public hearings to gather community input on the prospective maps

- Conduct a public hearing at which the Board will adopt a draft map, to send to the County Committee on School District Organization

- The County Committee will require time to review and analyze the proposal[8]

- The County Committee must then conduct a public hearing to gather input on the prospective map, before voting to approve the proposed map

Needless to say, this is improbable. The legislature provided public agencies with 90 days of safe harbor to conduct these tasks, understanding that they take significant time and careful contemplation. If the District and County Committee were to complete these tasks within 30 days, it would be so rushed and hurried as to prohibit meaningful public participation in the process, defeating the legislative purpose behind the multiple public hearings. Further complicating matters, Registrar of Voters offices across the state have indicated that they will need more than the 125 day lead time to adjust all maps as required for the elections, meaning that the 30 day period in this example would be constrained even further.

A brief canvass across the state shows a number of public agencies facing these improbable time lines, including but not limited to San Juan Unified School District, Folsom-Cordova Unified School District, Chico Unified School District, Gilroy Unified School District, Wilsona School District, City of Palm Desert, City of Santa Clarita, and the City of Oroville.

**4. Unless the Executive Order is amended, Public Agencies will be forced to adopt trustee area maps that will never be used (because they utilize 2010 census data), or face lawsuits if they wait to use 2020 census data to develop election maps for the 2022 election.**

More likely than not, the District's process to transition to by-trustee areas would run far beyond the July 1, 2020 deadline. This places the District (and many other similarly situated public agencies) in a difficult situation. Once the July 1, 2020 deadline passes, public agencies who adopt by-trustee area elections will see the new elections implemented for the *2022* election.[9] While trustee area maps developed for the 2020 election are based on older 2010 census data, trustee areas developed for the 2022 elections must be based on the yet-to-be released 2020 census data. The 2020 census data is not expected *to be released until the spring of 2021*.[10] Therefore, public agencies whose trustee area elections will not be implemented until 2022, are likely forced to create trustee areas *that will never be used* (because they use 2010 census data), in order to complete the process within the Safe Harbor Timelines. These maps will never be

---

[8] The Education Code imposes an additional "step" in the process for school districts. In order to effectuate a transition to by-trustee election areas, the County Committee on School District Organization ("County Committee") must approve the proposed change. Therefore, the District Board will forward its proposed transition to the County Committee for consideration. (Ed. Code, § 5019, subd. (c).)

[9] Elec. Code, § 12262

[10] 13 U.S.C. § 141, subd. (a)

Governor Gavin Newsom
March 27, 2020
Page 5

used, and the public agency will then be required to redraw new trustee areas again when the new 2020 census data is released. This is clearly an absurd result.

In short, unless the Safe Harbor Timelines are extended through the spring of 2021, public agencies will be faced with the unfortunate reality of needing to go through the lengthy and expensive hearing and public outreach process to adopt a map that will never be used. During this public health crisis it is clear that resources can be better allocated to serve our communities.

## 5.  Suggested Clarification Language

We respectfully request the Governor's Office issue the following language as clarification:

> *The timeframes required when a political subdivision changes from an at-large method of election to a district-based election, as set forth in Elections Code section 10010 subdivisions (a)(1-2) and (e)(1-3), are suspended until such time as neither state nor local public health officials recommend or impose social distancing measures in the relevant subdivision due to the COVID-19 pandemic. Following that time, the relevant subdivision shall hold the required hearings in a manner that ensures the public is provided advance notice and is afforded an opportunity to participate in the postponed hearings; subdivisions are urged to ensure that this process includes effective outreach to individuals with disabilities, individuals who primarily speak languages other than English, and other individuals who may have particularized needs.*

> *If state and local social distancing measures in the relevant jurisdiction extend past April 1, 2020, the timeframes set forth in Elections Code section 10010, subdivisions (a)(1-2) and (e)(1-3), are suspended until April 1, 2021, to allow for the release of the 2020 Census data. This shall not prejudice any rights under Elections Code section 10010, subdivision (f)(1), for a prospective plaintiff to seek reimbursement from a political subdivision for a written notice sent before April 1, 2020.*

School districts and other public agencies are currently scheduled to begin the first required public hearings immediately. These agencies would like to comply with your Executive Order and not face a CVRA lawsuit for postponing the process in the name of public safety.

During these uncertain times, we believe the primary focus of schools and other public agencies should be on ensuring our students, employees and community remain safe and healthy, while also ensuring our students continue to receive a meaningful education during the school closures. We believe that your clarification will allow public agencies to continue using its time, energy and resources on these crucial *immediate and pressing* issues during these trying times.

Governor Gavin Newsom
March 27, 2020
Page 6

Thank you for your attention and guidance during this difficult period. Please feel free to reach out to us via email, or by phone using the contact information set forth below.

Michael E. Smith, Partner, Lozano Smith (559) 431-5600
Email: msmith@lozanosmith.com

Paul R. Gant, Partner, Kingsley Bogard (916) 932-2599
Email: pgant@kblegal.us

Vernon M. Billy, CEO & Executive Director, CSBA (800) 266-3382
Email: vbilly@csba.org

Dr. Wesley Smith, Executive Director, ACSA (916) 329-3806
Email: wsmith@acsa.org

Molly McGee Hewitt, Ph.D., CAE – CEO & Executive Director, CASBO (916) 447-3783
Email: molly@casbo.org

Kent Kern, Superintendent, San Juan Unified School District (916) 971-7104
Email: kkern@sanjuan.edu

Sarah Koligian, Ed.D., Superintendent, Folsom Cordova Unified School District (916) 294-9001
Email: skoligian@fcusd.org

Sincerely,

LOZANO SMITH

Michael E. Smith

J:\WDOCS\99999\001\ltr\00730819.DOCX

# PLAINTIFFS'

# EXHIBIT 2

Transcript, Folsom City Council meeting
January 12, 2021

| | | | |
|---|---|---|---|
| 0:11 | >> JANUARY 12, 2021. | 27:14:00 | THE PROPOSAL IS TO TRANSITION TO |
| 0:12 | TWILL CLERK PLEASE CALL THE | 27:16:00 | A DISTRICT-BASED ELECTION SYSTEM |
| 0:12 | ROLL. | 27:18:00 | WHERE ONLY REGISTERED VOTERS |
| 0:15 | >> COUNCIL MEMBER AQUINO. | 27:19:00 | RESIDING IN A DISTRICT ARE |
| 0:16 | >> HERE. | 27:23:00 | ELIGIBLE TO RUN AND TO BE |
| 0:18 | >> CHALAMCHERLA. | 27:24:00 | COUNCIL MEMBER FOR THAT |
| 0:18 | >> HERE. | 27:25:00 | DISTRICT. |
| 0:19 | >> HOWELL. | 27:27:00 | ONLY REGISTERED VOTERS RESIDING |
| 0:19 | >> HERE. | 27:29:00 | IN CANDIDATE'S DISTRICT CAN VOTE |
| 0:22 | >> RODRIGUEZ. | 27:31:00 | FOR CANDIDATE, EACH TERM REMAINS |
| 0:24 | >> HERE. | 27:33:00 | FOUR YEARS, NO COUNCIL MEMBERS |
| 0:24 | >> KOZLOWSKI. | 27:36:00 | TERM WILL BE CUT SHORT DUE TO |
| 0:25 | >> HERE. | 27:37:00 | TRANSITION. |
| 0:27 | >> STAND AND JOIN ME FOR THE | 27:39:00 | AND THIS IS ALL DUE TO |
| 0:29 | PLEDGE OF ALLEGIANCE. | 27:42:00 | CALIFORNIA VOTING RIGHTS ACT |
| 26:13:00 | >> TAKES US TO ITEM 10, | 27:43:00 | WHICH PROHIBITS AT LARGE |
| 26:14:00 | RESOLUTION 10575 RESOLUTION OF | 27:45:00 | ELECTION SYSTEM IF SYSTEM INTERS |
| 26:17:00 | CITY COUNCIL OF CITY OF FOLSOM | 27:47:00 | ABILITY OF THE (INAUDIBLE) TO |
| 26:18:00 | DECLARING INTENT TO INITIATE | 27:50:00 | ELECT CANDIDATES OF THEIR CHOICE |
| 26:19:00 | PROCEDRES TO TRANSITION FROM AT | 27:55:00 | OR TO INFLUENCE THE OUTCOME OF |
| 26:21:00 | LARGE ELECTIONS TO | 27:57:00 | ELECTION. |
| 26:22:00 | DISTRICT-BASED ELECTIONS | 27:59:00 | (INAUDIBLE) ON (INAUDIBLE) RACE |
| 26:26:00 | PURSUANT TO CALIFORNIA ELECTIONS | 28:02:00 | COLOR OR LANGUAGE MINORITY GROUP |
| 26:28:00 | CODE SECTION 10010 AND AUTHORIZE | 28:06:00 | (INAUDIBLE) MINORITY VOTERS. |
| 26:29:00 | RELATED ACTIONS. | 28:08:00 | CALIFORNIA LEGISLATURE HAS SET A |
| 26:31:00 | >> GOOD EVENING MR. MAYOR AND | 28:12:00 | VERY LOW THRESHOLD FOR |
| 26:36:00 | MEMBERS OF CITY COUNCIL MR. WONG | 28:14:00 | PLAINTIFFS TO (INAUDIBLE) SUE |
| 26:37:00 | CITY ATTORNEY. | 28:14:00 | AND (INAUDIBLE) LAWSUIT ALL THEY |
| 26:38:00 | ALL FIVE MEMBERS OF CITY COUNCIL | 28:19:00 | HAVE TO DEMONSTRATE THAT |
| 26:41:00 | ARE ELECTED BY VOTERS OF CITY AT | 28:23:00 | RACIALLY POLARIZED VOTING |
| 26:42:00 | LARGE. | 28:26:00 | EXISTS, NO NEED TO SHOW CRIMINAL |
| 26:43:00 | IT DOESN'T MATTER WHERE THE | 28:27:00 | INTENT OR NO NEED TO SHOW |
| 26:44:00 | COUNCIL MEMBERS RESIDE OR WHERE | 28:29:00 | HISTORY OF PAST DISCRIMINATION |
| 26:47:00 | THE VOTERS RESIDE, EACH VOTER | 28:31:00 | BECAUSE OF LOW THRESHOLD. |
| 26:50:00 | CAN VOTE FOR ANY CANDIDATE THEY | 28:32:00 | NO CITY PREVAILED IN DEFENDING |
| 26:51:00 | WISH TO VOTE IN THE CITY. | 28:39:00 | AT LARGE ELECTION SYSTEM SINCE |
| 26:56:00 | COUNCIL MEMBERS SERVE A FOUR | 28:42:00 | INCEPTION OF CVRA LEGISLATION 20 |
| 26:58:00 | YEAR TERM, (INAUDIBLE) AND THEN | 28:43:00 | YEARS AGO. |
| 27:00:00 | FOLLOWING ELECTION TWO YEARS | 28:45:00 | RACIALLY POLARIZED VOTING MEANS |
| 27:01:00 | AFTER, THREE COUNCIL MEMBERS | 28:47:00 | DIFFERENCE IN CHOICE OF |
| 27:05:00 | WILL BE UP FOR ELECTION FOR | 28:48:00 | CANDIDATES PREFERRED BY MINORITY |
| 27:07:00 | ANOTHER FOUR YEAR TERM ONCE | 28:50:00 | VOTERS AND CHOICE OF CANDIDATES |
| 27:10:00 | ELECTED COUNCIL MEMBER | 28:54:00 | PREFERRED BY THE REST OF THE |
| 27:10:00 | REPRESENTS ALL CITNS | 28:56:00 | ELECTORATE. |
| 27:11:00 | THROUGHOUT THE CITY. | 28:58:00 | IF THE PLAINTIFF WINS THE CITY |

| | | | |
|---|---|---|---|
| 29:01:00 | HAS TO PAY THE PLAINTIFF | 30:53:00 | FOLSOM VOTERS ELECTED COUNCIL |
| 29:05:00 | ATTORNEY ES, FEES FOR COSTS, | 30:53:00 | MEMBERS. |
| 29:07:00 | DEFENSE COSTS AND THE COURT GETS | 30:56:00 | THE DECISION TO TRANSITION TO |
| 29:12:00 | TO DRAW DISTRICT BOUNDARIES WITH | 30:57:00 | DISTRICT-BASED ELECTIONS IS |
| 29:13:00 | THE (INAUDIBLE) ATTORNEY LEADIN% | 31:00:00 | PRIMARILY BASED ON FINANCIAL |
| 29:14:00 | TO LOSS OF TOTAL CONTROL OVER | 31:01:00 | CONSIDERATION TO PROTECT |
| 29:17:00 | DISTRICT BOUNDARIES AND HOW THEY | 31:04:00 | TAXPAYERS RESOURCES TO SAFE |
| 29:17:00 | ARE DRAWN. | 31:06:00 | GUARD CITY FINANCIAL FUTURE AND |
| 29:24:00 | ALL CITIES ATTEMPT TO DEFEND | 31:08:00 | MORE IMPORTANTLY, TO RETAIN |
| 29:25:00 | CITY (INAUDIBLE) CITIES LOST | 31:13:00 | CONTROL OVER HOW OUR DISTRICTS |
| 29:27:00 | SOME PAID MILLIONS OF TAXPAYERS | 31:14:00 | ARE DRAWN WITHOUT INTERFERENCE |
| 29:31:00 | MONEY AND HAVE TO SWITCH TO | 31:19:00 | BY THE COURT OR THE (INAUDIBLE) |
| 29:33:00 | DISTRICT-BASED ELECTION. | 31:20:00 | WITH THAT HAPPY TO ANSWER ANY |
| 29:35:00 | OVER 126 CITIES SWITCHED THUS | 31:21:00 | QUESTIONS YOU MAY HAVE. |
| 29:38:00 | FAR TO DISTRICT ELECTION DUE TO | 31:22:00 | >> THANK YOU. |
| 29:44:00 | THREAT OF CVRA LAWSUIT INCLUDING | 31:24:00 | JUST BEFORE WE GET INTO |
| 29:45:00 | CITRUS HEIGHTS, ROSEDALE, ELK | 31:28:00 | QUESTIONS, I WOULD LIKE TO JUST |
| 29:48:00 | GROVE AND FOLSOM CORDOVA UNIFIED | 31:30:00 | FOR THE REN FIT OF THE AUDIENCE |
| 29:49:00 | SCHOOL DISTRICTS. | 31:32:00 | AND REMINDER TO MY COLLEAGUES. |
| 29:51:00 | SCHOOL DISTRICTS AND SPECIAL | 31:36:00 | QUESTIONS ONLY AT THIS POINT |
| 29:56:00 | DISTRICTS ARE NOT EXEMPT FROM | 31:36:00 | REGARDING THIS PRESENTATION OR |
| 30:00:00 | CVRA CHALLENGE. | 31:39:00 | THE INTRICACIES OF CVRA |
| 30:01:00 | PROCESS TO SWITCH TO THE | 31:39:00 | POTENTIALLY. |
| 30:03:00 | DISTRICT ELECTION TAKES FIVE | 31:41:00 | WE WILL HAVE PLENTY OF |
| 30:06:00 | PUBLIC HEARINGS, TWO TO RECEIVE | 31:43:00 | OPPORTUNITY TO OPINE ON THIS |
| 30:09:00 | PUBLIC INPUT AND DISCUSS | 31:45:00 | AFTER WE RECEIVE INPUT FROM THE |
| 30:12:00 | FOLLOWED BY TWO PUBLIC HEARINGS | 31:46:00 | PUBLIC. |
| 30:14:00 | TO RECEIVE PUBLIC INPUT ON | 31:47:00 | QUESTIONS FROM ANY? |
| 30:15:00 | PROPOSED DISTRICT MAPS AND | 31:51:00 | >> I HAVE A QUESTION. |
| 30:16:00 | FINALLY A PUBLIC HEARING TO | 31:52:00 | CITRUS HEIGHTS, ROSEVILLE AND |
| 30:22:00 | INTRODUCE ORDINANCE THAT | 31:54:00 | ELK GROVE, DID THEY FILE |
| 30:26:00 | ESTABLISHES FORMALLY | 31:56:00 | LAWSUITS AND LOSE OR JUST MOVED |
| 30:28:00 | DISTRICT-BASED ELECTIONS. | 31:57:00 | FORWARD WITH THE? |
| 30:30:00 | TIME LINES FOR PUBLIC HEARINGS | 31:59:00 | >> THEY MOVED FORWARD AFTER |
| 30:32:00 | CAN NOT BE DETERMINED BECAUSE | 32:02:00 | RECEIVING DEMAND LETTER FROM |
| 30:34:00 | THE (INAUDIBLE) IS NOT AVAILABLE | 32:02:00 | DIFFERENT ATTORNEY |
| 30:35:00 | AND PROBABLY WILL NOT BE | 32:06:00 | IT IS NOT COMMON FOR A CITY TO |
| 30:36:00 | AVAILABLE UNTIL AFTER MARCH OR | 32:10:00 | DEFEND A (INAUDIBLE) LAWSUIT |
| 30:38:00 | JUNE OF THIS YEAR, TIME LINE | 32:12:00 | BECAUSE OF THE (INAUDIBLE) |
| 30:40:00 | WILL BE DETERMINED AND ANNOUNCED | 32:15:00 | STATISTICALLY ZERO SUCCESS RATE |
| 30:44:00 | ONCE THE CENSUS DATA IS | 32:17:00 | BY ANYONE WHO SPEND MONEY TO |
| 30:45:00 | AVAILABLE. | 32:19:00 | DEFEND LAWSUITS AND HENCE MOST |
| 30:47:00 | TO RECAP NO HISTORY OF | 32:21:00 | OF THE CITIES AND SPECIAL |
| 30:51:00 | DISCRIMINATION, NO EVIDENCE OF | 32:24:00 | DISTRICTS AND AGENCIES WAS |
| 30:52:00 | DISCRIMINATORY INTENT ON HOW | 32:26:00 | RECEIVED DEMAND LETTER |

| | |
|---|---|
| 32:27:00 | VOLUNTARILY TRANSITION TO |
| 32:29:00 | DISTRICT ELECTION TO PRESERVE |
| 32:37:00 | THEIR TAXPAYER RESOURCES. |
| 32:37:00 | >> STEVE -- |
| 32:37:00 | ONE. |
| 32:38:00 | >> GO AHEAD. |
| 32:39:00 | >> ONE QUICK COMMENT. |
| 32:41:00 | MY UNDERSTANDING IS THAT THE |
| 32:44:00 | CITY OF SANTA MONICA SPENT I |
| 32:46:00 | DON'T KNOW, ABOUT 8 MILLION IN |
| 32:50:00 | ATTEMPTING TO DEFEND AT-LARGE |
| 32:50:00 | ELECTIONS. |
| 32:52:00 | THEY LOST INITIALLY, THEN THEY |
| 32:55:00 | WON ON APPEAL. |
| 32:56:00 | AND MY UNDERSTANDING IS THAT MAY |
| 32:59:00 | OR MAY NOT BE HEADED TO SUPREME |
| 33:00:00 | COURT. |
| 33:03:00 | DO WE KNOW WHAT THE STATUS IS? |
| 33:04:00 | >> THANK YOU. |
| 33:07:00 | THEY DID LOSE AT TRIAL COURT, |
| 33:09:00 | THEY SURPRISINGLY PREVAILED AT |
| 33:13:00 | APPELLATE COURT LEVEL. |
| 33:15:00 | AND AS PREDICTED BECAUSE THAT |
| 33:17:00 | WAS THE FIRST WIN EVER IN 20 |
| 33:21:00 | YEARS OF THIS LEGISLATION, IT |
| 33:22:00 | GOT APPEALED TO SUPREME COURT. |
| 33:23:00 | BEFORE CALIFORNIA SUPREME COURT |
| 33:25:00 | TOOK UP APPEAL, SUPREME COURT |
| 33:28:00 | TAKES VERY, VERY FEW CASES EACH |
| 33:28:00 | YEAR. |
| 33:31:00 | VERY, VERY FEW CASES, BEFORE THE |
| 33:36:00 | COURT TOOK UP THE APPEAL SORT |
| 33:38:00 | DECERTIFIED DISTRICT COURT |
| 33:39:00 | DECISION WHICH MEANS THAT |
| 33:42:00 | DECISION CANNOT BE RELIED ON BY |
| 33:42:00 | ANYONE. |
| 33:43:00 | >> WAS THAT THE ORIGINAL |
| 33:44:00 | DECISION OR COURT OF APPEAL |
| 33:45:00 | DECISION. |
| 33:47:00 | >> COURT OF APPEAL DECISION. |
| 33:49:00 | BECAUSE COURT OF APPEAL GIVE THE |
| 33:51:00 | CITY A WIN AND THAT DECISION NOW |
| 33:53:00 | TAKEN AWAY BY SUPREME COURT. |
| 33:54:00 | >> WHAT -- |
| 34:00:00 | WAS THE APPELLATE -- |
| 34:04:00 | BASED ON SOME PROCEDURAL ISSUE |
| 34:06:00 | WITH THE ORIGINAL COURT |
| 34:07:00 | PROCEEDINGS OR WAS IT BASED ON |
| 34:10:00 | SOME FINDING OF FACT. |
| 34:11:00 | >> NEITHER. |
| 34:13:00 | IT WAS BASED UPON LEGAL ARGUMENT |
| 34:17:00 | THAT THE PLAINTIFF DID NOT SHOW |
| 34:19:00 | VOTER (INAUDIBLE) EVEN THOUGH |
| 34:21:00 | THEY DEMONSTRATED RACIALLY |
| 34:24:00 | POLARIZED VOTING MINORITY VOTERS |
| 34:27:00 | NO MATTER HOW (INAUDIBLE) THEY |
| 34:30:00 | WERE ABLE TO VOTE THEY DID NOT |
| 34:32:00 | VOTE FOR EVERYBODY (INAUDIBLE) |
| 34:36:00 | THEY WERE SHOWN TO VOTE FOR ONE |
| 34:36:00 | PARTY -- |
| 34:37:00 | SHOWN TO PREFER A PARTICULAR |
| 34:38:00 | CANDIDATE. |
| 34:43:00 | OPPOSED TO VOTERS ELSEWHERE. |
| 34:45:00 | (INAUDIBLE) REST OF ELECTORATE. |
| 34:47:00 | THE PLAINTIFFS WERE ABLE TO SHOW |
| 34:50:00 | THE EXISTENCE OF RACIALLY |
| 34:52:00 | POLARIZED VOTING PHENOMENA WHICH |
| 34:55:00 | IS ABLE TO BE SHOWN IN THOSE |
| 34:56:00 | LAWSUITS, THEY WERE NOT ABLE |
| 34:57:00 | TO -- |
| 34:58:00 | DID NOT SHOW BECAUSE IT IS NOT |
| 35:01:00 | PART OF THE ELEMENT TO PROVE A |
| 35:02:00 | CVRA VIOLATION. |
| 35:06:00 | THEY DID NOT SHOW THAT THE |
| 35:14:00 | OUTCOME WAS MINORITY VOTES WAS |
| 35:15:00 | (INAUDIBLE) BECAUSE OF THIS |
| 35:21:00 | ELECTION SYSTEM. |
| 35:23:00 | SECOND DISTRICT COURT OF APPEAL |
| 35:25:00 | THINKS IT IS AN ELEMENT AND |
| 35:26:00 | REVERSED TRIAL COURT DECISION |
| 35:29:00 | AND SUPREME COURT TOOK UP |
| 35:29:00 | APPEAL. |
| 35:31:00 | >> WHEN DO WE THINK WE WILL HEAR |
| 35:32:00 | SOMETHING ON THAT? |
| 35:37:00 | >> IN TWO YEARS. |
| 35:38:00 | >> OKAY. |
| 35:39:00 | TWO QUESTIONS. |
| 35:41:00 | THE NEXT FOLSOM CITY COUNCIL |
| 35:45:00 | ELECTION WOULD BE NOVEMBER 2022. |
| 35:45:00 | >> YES, MA'AM. |

| | | | |
|---|---|---|---|
| 35:48:00 | >> WE ARE EXPECTING THE 2020 | 37:16:00 | TRANSITION. |
| 35:50:00 | CENSUS DATA TO BE RELEASED IN | 37:17:00 | TRANSITION DOES NOT HAPPEN |
| 35:51:00 | THE NEXT FEW MONTHS. | 37:18:00 | OVERNIGHT. |
| 35:52:00 | >> YES, MA'AM. | 37:19:00 | THERE IS A PUBLIC OUTREACH, |
| 35:54:00 | >> IS IT POSSIBLE FOR US TO | 37:22:00 | PUBLIC HEARING, PUBLIC MEETING |
| 35:58:00 | DELAY OUR DECISION UNTIL AFTER | 37:23:00 | PROCESS, BY STATUTE WE HAVE TO |
| 36:00:00 | CENSUS DATA IS RECEIVED AND WHAT | 37:24:00 | GO THROUGH. |
| 36:01:00 | IS RISK IN DOING SO. | 37:27:00 | AND PUBLIC WILL BE NOT JUST BE |
| 36:03:00 | >> YOU CAN CERTAINLY DELAY, | 37:29:00 | ABLE TO PARTICIPATE, BUT WILL BE |
| 36:03:00 | ABSOLUTELY. | 37:32:00 | ENCOURAGED TO PARTICIPATE |
| 36:05:00 | THIS IS THE COUNCIL'S DECISION. | 37:33:00 | BECAUSE IT PERTAINS TO THEIR |
| 36:08:00 | YOU WILL NOT BE GETTING ANY | 37:35:00 | NEIGHBORHOOD, THEIR DISTRICT. |
| 36:09:00 | ADVANTAGE IN DELAYING. | 37:38:00 | TAKING THE ACTION TONIGHT WILL |
| 36:12:00 | YOU ARE ALSO NOT (INAUDIBLE) ANY | 37:39:00 | ALSO HEDGE AGAINST HIM WINNING |
| 36:14:00 | OF YOUR I DON'T WANT TO GET INTO | 37:42:00 | ON THE GOVERNOR'S ORDER ISSUE. |
| 36:16:00 | LEGAL DEFENSE, WILL NOT LOSE | 37:46:00 | BECAUSE IF HE DOES WIN, IN THIS |
| 36:20:00 | YOUR LEGAL DEFENSE IF YOU DELAY. | 37:48:00 | DISTRICT CASE WE ARE WAY OUTSIDE |
| 36:23:00 | IT IS IF YOU DO NOT ACT ON THE | 37:49:00 | SAFE HARBOR TIMEFRAME. |
| 36:25:00 | RESOLUTION AS PRESENTED TO YOU | 37:51:00 | WE ARE WAY OUTSIDE. |
| 36:27:00 | TONIGHT, THERE IS NOTHING | 37:54:00 | WE ARE NOT ABLE TO (INAUDIBLE) |
| 36:28:00 | PREVENTING THE PLAINTIFF FROM | 37:56:00 | AVAIL OURSELVES TO THE 30,000 |
| 36:28:00 | SUING. | 37:58:00 | CAP THEN THE SKY IS THE LIMIT. |
| 36:30:00 | ONCE LAWSUIT IS FILED WE HAVE TO | 37:58:00 | >> OKAY. |
| 36:31:00 | DEAL WITH LAWSUIT. | 38:01:00 | THE SECOND QUESTION IS IF WE DO |
| 36:33:00 | ONCE LAWSUIT IS FILED IT IS | 38:03:00 | ADOPT THIS RESOLUTION TONIGHT, |
| 36:35:00 | VERY, VERY DIFFICULT TO RETRACT | 38:05:00 | AND THEN LET'S SAY IN THE NEXT |
| 36:39:00 | AND BE DISMISSED. | 38:07:00 | COUPLE OF MONTHS THE PLANETS |
| 36:40:00 | AND ALSO THIS PARTICULAR | 38:09:00 | ALIGN, SUPREME COURT TAKES UP |
| 36:41:00 | (INAUDIBLE) IS TAKING POSITION | 38:13:00 | SANTA MONICA CASE, UPHOLD |
| 36:43:00 | THAT GOVERNOR'S EXECUTIVE ORDER | 38:15:00 | APPELLATE DECISION SANTA MONICA |
| 36:46:00 | SUSPENDING CVRA TIMELINE IS | 38:18:00 | GETS TO CONTINUE WITH SATURDAY |
| 36:48:00 | CONSTITUTIONAL AND HE IS | 38:19:00 | LARGE ELECTION CAN WE SAY OOPS |
| 36:52:00 | FIGHTING THAT PARTICULAR ISSUE | 38:21:00 | WE WANT TO STOP PROCESS AND GO |
| 36:53:00 | WITH (INAUDIBLE). | 38:21:00 | BACK. |
| 36:55:00 | >> THAT IT IS UNCONSTITUTIONAL. | 38:23:00 | IF WE ADOPT THIS TONIGHT THERE |
| 36:56:00 | >> UNCONSTITUTIONAL APOLOGIZE. | 38:25:00 | IS NO TURNING BACK. |
| 36:58:00 | THAT IS CORRECT. | 38:27:00 | >> IT DEPENDS ON WHAT THE COURT |
| 37:00:00 | SO WE ARE HEDGING AGAINST HIM | 38:31:00 | DECISION SAYS OF COURSE. |
| 37:02:00 | WINNING THAT ARGUMENT BY TAKING, | 38:32:00 | MY VERY PRELIMINARY RESPONSE IS |
| 37:04:00 | BY ASKING COUNCIL TO TAKE ACTION | 38:34:00 | ABSOLUTELY WE CAN GO BACK. |
| 37:04:00 | TONIGHT. | 38:36:00 | I WOULD SUSPECT A LOT OF CITIES |
| 37:08:00 | IF THE COUNCIL ADOPT THIS | 38:37:00 | WOULD DO THE SAME. |
| 37:09:00 | RESOLUTION TONIGHT THERE IS NO | 38:42:00 | >> ALL OF THE QUESTIONS I HAVE. |
| 37:12:00 | NEED FOR ANY PLAINTIFF TO SUE. | 38:42:00 | THANKS. |
| 37:15:00 | IT IS COUNCIL'S DECISION TO MAKE | 38:47:00 | >> I KNOW RECENTLY OUR NEIGHBOR |

| | | | |
|---|---|---|---|
| 38:49:00 | SWITCHED TO (INAUDIBLE) IS JUST | 40:31:00 | ANYMORE THAT MONEY IS GONE. |
| 38:51:00 | PEOPLE (INAUDIBLE) HOW HAPPY | 40:35:00 | >> JUST SO THAT YOU KNOW, I HAVE |
| 38:54:00 | THEY ARE AND THE ONE (INAUDIBLE) | 40:36:00 | SPOKEN TO COUNCIL MEMBERS, I |
| 38:59:00 | WILL PROBABLY BE SLIPPED INTO | 40:37:00 | HAVE NOT NECESSARILY DISCUSSED |
| 39:01:00 | (INAUDIBLE), ONE (INAUDIBLE). | 40:39:00 | THIS WITH ANYBODY ON THE SCHOOL |
| 39:03:00 | THEN PROBABLY DEFENDING THE | 40:41:00 | BOARD, BUT SPOKEN TO COUNCIL |
| 39:05:00 | (INAUDIBLE) OTHER THAN TALKING | 40:42:00 | MEMBERS THROUGHOUT THE REGION |
| 39:08:00 | (INAUDIBLE) CHALLENGES, THINGS | 40:44:00 | THAT MADE TRANSITION TO |
| 39:10:00 | LIKE THOSE ARE MATERIAL OR | 40:46:00 | DISTRICTS NO ONE DID IT BECAUSE |
| 39:13:00 | INFORMATION AVAILABLE TO HAPPY, | 40:48:00 | THEY WANTED TO DO IT. |
| 39:13:00 | UNHAPPY? | 40:49:00 | NO ONE IS HAPPY THAT THEY WERE |
| 39:16:00 | WHY WE (INAUDIBLE) TO SAVE THE | 40:52:00 | FORCED TO DO IT, THEY HAD NO |
| 39:16:00 | MONEY? | 40:52:00 | CHOICE. |
| 39:20:00 | >> GOOD QUESTION COUNCIL MEMBER | 40:55:00 | >> THAT IS WHY I WAS ASKING. |
| 39:21:00 | CHALAMCHERLA. | 40:57:00 | THE QUESTION ABOUT CITIZENS. |
| 39:22:00 | WE DON'T HAVE EXACT DATA ALL WE | 41:00:00 | YOU KNOW, WHAT THEY HEARD IS |
| 39:25:00 | CAN SHARE IS WHAT WE HEAR FROM | 41:01:00 | FOLSOM RESIDENTS, FOLSOM |
| 39:27:00 | OTHER COLLEAGUES IN OTHER | 41:05:00 | CITIZENS AND ASKING FOR THIS, |
| 39:28:00 | CITIES. | 41:07:00 | BUT AT LARGE, WHAT HAPPENED |
| 39:30:00 | OF 126 THAT MADE TRANSITION I | 41:09:00 | (INAUDIBLE) CITIZENS WERE BY AND |
| 39:32:00 | HAVE NOT HEARD ONE THAT SAYS WE | 41:09:00 | LARGE NOT HAPPY. |
| 39:38:00 | ARE BETTER TODAY THAN YESTERDAY. | 41:11:00 | THOSE ARE THE THINGS I'M LOOKING |
| 39:40:00 | THIS IS NOT SOMETHING WE LIKE. | 41:14:00 | FOR BUT THANK YOU. |
| 39:42:00 | MY FEELING ASIDE THIS IS WHAT | 41:16:00 | >> ANY OTHER QUESTIONS FROM |
| 39:44:00 | SOME VOTERS WANT. | 41:17:00 | COUNCIL? |
| 39:45:00 | THEY PETITIONED CITY COUNCIL TO | 41:18:00 | OPEN PUBLIC COMMENT PLEASE. |
| 39:50:00 | MAKE TRANSITION. | 41:19:00 | >> OKAY. |
| 39:51:00 | RETAINED ATTORNEY TO HELP TO | 41:20:00 | RIGHT NOW WE HAVE FOUR MEMBERS |
| 39:52:00 | (INAUDIBLE) MAKE TRANSITION BUT | 41:22:00 | OF PUBLIC IN THE AUDIENCE WHO |
| 39:56:00 | IT IS DIFFERENT DYNAMIC ONCE YOU | 41:23:00 | WOULD LIKE TO SPEAK. |
| 40:00:00 | HAVE DIFFERENT DISTRICTS AT | 41:26:00 | AND I WILL CALL YOU IN ORDER. |
| 40:01:00 | PLAY. | 41:29:00 | FIRST AND I SHOULD SAY AND THEN |
| 40:03:00 | >> MOST OF THEM WERE SWITCH | 41:30:00 | 26 eMAILS. |
| 40:05:00 | BECAUSE OF FEAR DON'T WANT TO | 41:33:00 | I WILL READ THOSE INTO THE |
| 40:09:00 | MISSPEND FOR SOMEBODY ELSE | 41:33:00 | RECORD. |
| 40:14:00 | MILLIONS OF DOLLARS HARD-EARNED | 41:35:00 | START WITH AUDIENCE MEMBERS |
| 40:15:00 | TAXPAYERS MONEY. | 41:37:00 | FIRST SPEAKER BRUCE KLEIN. |
| 40:16:00 | >> (INAUDIBLE) IF YOU GET WHAT | 41:41:00 | BRUCE WILL BE FOLLOWED BY KEVIN |
| 40:18:00 | YOU WHAT. | 41:47:00 | DUAL. |
| 40:19:00 | CASES WHERE PEOPLE SPENT THE | 41:53:00 | >> GOOD EVENING, MEMBERS OF CITY |
| 40:22:00 | MONEY THEY ENDED UP HAVING TO | 41:57:00 | COUNCIL AND CITY ATTORNEY. |
| 40:23:00 | MAKE THE SWITCH ANYWAY BUT THE | 42:00:00 | TALK ABOUT (INAUDIBLE) IS BAD |
| 40:24:00 | MONEY IS GONE. | 42:00:00 | IDEA. |
| 40:28:00 | YOU CAN NOT USE 4.7 MILLION OR | 42:02:00 | STAFF STAFF REPORT IDENTIFIES IT |
| 40:29:00 | 5 MILLION FOR FIRE STATION | 42:04:00 | AS BAD IDEA NONETHELESS WE HAVE |

| | | | |
|---|---|---|---|
| 42:05:00 | TO GO FORWARD. | 44:03:00 | DISTRICT ELECTIONS. |
| 42:07:00 | HAVE TO GO FORWARD IN TERMS OF | 44:05:00 | ULTIMATELY WILL WE END UP THAT |
| 42:08:00 | THIS DISCUSSION. | 44:07:00 | WAY MAYBE SO, UNFORTUNATELY, |
| 42:09:00 | REALISH SUE NOTICE TO PUBLIC ON | 44:10:00 | BECAUSE OF THE ECONOMICS OF THE |
| 42:11:00 | THIS ISSUE. | 44:11:00 | CITY ATTORNEY HAS DESCRIBED. |
| 42:17:00 | SSO FAR A CLOSED SESSION ITEM | 44:16:00 | BUT TO ME THE CITY COUNCIL OUGHT |
| 42:21:00 | OCCURRED DECEMBER 8. | 44:18:00 | TO DO IT HAS DONE A LOT OF |
| 42:24:00 | FIRST MEETING THAT (INAUDIBLE) | 44:19:00 | IMPORTANT ISSUES. |
| 42:25:00 | ATTENDANCE. | 44:22:00 | THIS IS HUGE. |
| 42:27:00 | I CAN IMAGINE HOW WIDE-EYED THEY | 44:23:00 | CHARTER AMENDMENT, CHANGING |
| 42:29:00 | MIGHT HAVE BEEN IN CLOSED | 44:25:00 | CHARTER ADOPTED IN 1990 IN |
| 42:30:00 | SESSION TO HEAR ISSUE. | 44:26:00 | EXISTENCE FOR 30 YEARS V THE |
| 42:31:00 | ALSO SIGNIFICANTLY FIRST TIME WE | 44:28:00 | ABILITY TO GO TO DISTRICT |
| 42:34:00 | HAVE HAD TWO DIVERSE CANDIDATES | 44:31:00 | ELECTIONS BY ORDINANCE WHICH IS |
| 42:36:00 | ELECTED IN A LONG, LONG TIME AND | 44:34:00 | UNUSUAL BUT INSTEAD MOVING IT |
| 42:38:00 | ELECTED BY HARD, HARD WORK. | 44:36:00 | FORWARD STARTING PROCESS NOW. |
| 42:40:00 | NOBODY WORKED HARDER THAN THOSE | 44:38:00 | RESOLUTION SAYS THIS IS WHERE WE |
| 42:45:00 | TWO TO GET ELECTED. | 44:40:00 | ARE GOING AND SO VICE-MAYOR |
| 42:56:00 | HATS OFF TO COUNCIL MEMBERS AND | 44:42:00 | AQUINO TO YOUR POINT CAN WE STOP |
| 42:56:00 | THEY WESTBOUND BYGRASSROOTS | 44:44:00 | IT YES, BUT MADE DECISION TO GO |
| 42:59:00 | EFFORT AND THEY BEAT OUT | 44:45:00 | THAT WAY. |
| 43:01:00 | INSTITUTION YALE SUPPORTED | 44:46:00 | MY VIEW IS THAT THERE IS NOT AN |
| 43:02:00 | CANDIDATES WHICH PETITION | 44:52:00 | URGENCY TO MOVE FORWARD ON THIS, |
| 43:03:00 | REVIEWED IN CLOSED SESSION. | 44:55:00 | THE COVID ORDER FROM THE |
| 43:06:00 | SO MY ISSUE IS WHY IS THE CITY | 44:57:00 | GOVERNOR SUSPENDS HOLDS STATUTES |
| 43:09:00 | MOVING FORWARD ON THIS ITEM NOW | 44:58:00 | OF LIMITATION ONTHIS ISSUE. |
| 43:11:00 | WHEN THEY HAVE NEVER EVEN VETTED | 45:00:00 | WHAT THAT MEANS IS THIS LAWYER |
| 43:12:00 | IT WITH THE PUBLIC YET. | 45:02:00 | CAN NOT SUE ON THIS AT THIS |
| 43:16:00 | WE HAVE NOT HAD ONE SOCIAL MEDIA | 45:02:00 | POINT. |
| 43:21:00 | POST BY ANYONE, AND WE HAVE HAD | 45:05:00 | NOW HE MAY ARGUE DIFFERENTLY, |
| 43:23:00 | NO NOTICES THAT GO OUT TO PUBLIC | 45:08:00 | BUT I'M NOT SURE WHERE THAT |
| 43:26:00 | ON NEWSLETTERS HAWMARK OF CITY | 45:10:00 | GOES. |
| 43:30:00 | OF FOLSOM THOUGHTFUL, PUT | 45:14:00 | PERHAPS IN HIS WRIT PETITION OR |
| 43:32:00 | INFORMATION OUT, ROBUST ABOUT | 45:15:00 | PRELIMINARY INJUNCTION IN SAN |
| 43:35:00 | GETTING INPUT FROM RESIDENTS. | 45:16:00 | JUAN SCHOOL DISTRICT CASE WE |
| 43:37:00 | THIS ISSUE WAS RAISED DURING THE | 45:18:00 | WILL LEARN ALL RIGHT, DID THE |
| 43:40:00 | LAST ELECTION AND FIRST REAL | 45:22:00 | ORDER FALL OR NOT. |
| 43:42:00 | MEETING THAT THESE TWO NEW CITY | 45:24:00 | SANTA MONICA CASE IS PENDING. |
| 43:43:00 | COUNCIL MEMBERS ATTEND THEY ARE | 45:27:00 | SUPREME COURT WILL ADDRESS VOTER |
| 43:51:00 | ASKED TO VOTE ON THIS ITEM. | 45:30:00 | DILUTION ISSUE AT SOME POINT. |
| 43:54:00 | THEY HEARD IT IN CLOSED SESSION, | 45:31:00 | BRIEFING WILL OCCUR IN THE NEXT |
| 43:58:00 | CAN NOT DISCUSS WHAT OCCURRED IN | 45:33:00 | FEW MONTHS AS I UNDERSTAND IT. |
| 43:59:00 | CLOSED SESSION. | 45:36:00 | WE DON'T HAVE ANY CENSUS |
| 44:00:00 | WE GET TO THIS POINT AND NOW | 45:39:00 | REPORTS, RESULTS YET. |
| 44:02:00 | ASKED TO MOVE FORWARD WITH | 45:41:00 | AND I QUESTION OR WONDER WHETHER |

| | |
|---|---|
| 45:44:00 | WE HAVE THE ELECTION |
| 45:46:00 | DEMOGRAPHICS, ELECTION JUST |
| 45:48:00 | OCCURRED TO HAVE BEEN ANALYZED. |
| 45:51:00 | DO WE KNOW WHAT THE REAL |
| 45:52:00 | DEFENSES ARE. |
| 46:00:00 | FACT-BASED CASES ULTIMATELY. |
| 46:02:00 | HAVE WE DONE ALL OF IT. |
| 46:06:00 | MY REAL ISSUE, FROM A RESIDENT |
| 46:07:00 | STANDPOINT, IT FEELS LIKE THERE |
| 46:10:00 | WAS A CLOSED SESSION, THERE WAS |
| 46:11:00 | DISCUSSION AND NOW BOOM HERE IT |
| 46:12:00 | IS. |
| 46:15:00 | WE DID NOT GET AN OPPORTUNITY TO |
| 46:17:00 | HEAR AND HAVE A ROBUST |
| 46:19:00 | DISCUSSION ABOUT THIS ITEM. |
| 46:21:00 | IT FEELS LIKE IT WAS HANDLED |
| 46:23:00 | SOMEWHERE ELSE, CLOSED SESSION |
| 46:26:00 | AGENDA ITEMS FROM THE 8th HAD |
| 46:28:00 | LETTERS THAT ARTICULATED |
| 46:29:00 | CONVERSATIONS THAT AGREEMENTS |
| 46:32:00 | THAT WERE GOING ON, RIGHTFULLY |
| 46:34:00 | SO THAT IS WAY PROCESS WORKS AND |
| 46:36:00 | NOW BOOM HERE WE ARE TO |
| 46:41:00 | RESIDENTS NOT ONE TELEGRAPH |
| 46:41:00 | ARTICLE. |
| 46:42:00 | WE JUST HAD. |
| 46:42:00 | >> CAN YOU SUM UP? |
| 46:44:00 | >> THANK YOU. |
| 46:46:00 | WE HAD A NEWSLETTER GO OUT TWO |
| 46:48:00 | OR THREE DAYS AGO, NOT ONE WORD |
| 46:50:00 | ABOUT IT. |
| 46:53:00 | I WOULD URGE COUNCIL TO CONTINUE |
| 46:54:00 | ITEM. |
| 46:56:00 | AND KICK IT OUT FOR A MONTH AND |
| 46:57:00 | PUT INFORMATION OUT TO PUBLIC |
| 47:00:00 | AND LET THE PUBLIC WEIGH IN ON |
| 47:00:00 | IT. |
| 47:02:00 | YOU MAY GET TO SAME DECISION BUT |
| 47:05:00 | MAYBE THEN PUBLIC WOULD SAY OKAY |
| 47:16:00 | WE UNDERSTAND THE RATIONALE AND |
| 47:17:00 | COUNCIL HAS TO DO WHAT THEY HAVE |
| 47:21:00 | TO DO TO PROTECT CITY COFFERS. |
| 47:21:00 | >> THANKS. |
| 47:23:00 | >> NEXT SPEAKER IS KEVIN AND |
| 47:24:00 | KEVIN FOLLOWED BY BOB |

| | |
|---|---|
| 47:25:00 | (INAUDIBLE). |
| 47:27:00 | >> GOOD EVENING AND MAYOR |
| 47:29:00 | COUNCIL MEMBERS. |
| 47:30:00 | CITY ATTORNEY CITY MANAGER. |
| 47:32:00 | I WANTED TO SPEAK ABOUT |
| 47:36:00 | CALIFORNIA VOTER RIGHTS ACT CITY |
| 47:38:00 | ATTORNEY IS CORRECT THAT THE |
| 47:40:00 | DECISION WAS DECERTIFIED WHAT |
| 47:45:00 | THAT MEANS IS THAT TRIAL LEVEL |
| 47:46:00 | COURTS ACROSS THE STATE |
| 47:47:00 | INCLUDING SUPERIOR COURT OF |
| 47:50:00 | SACRAMENTO COUNTY, WHERE ANY |
| 47:52:00 | CLAIM RELATED TO THE CITY OF |
| 47:55:00 | FOLSOM WOULD BE HEARD CANNOT |
| 47:57:00 | CITE TO APPELLATE DECISION IN |
| 47:59:00 | SANTA MONICA CASE FOR LEGAL |
| 48:02:00 | AUTHORITY HOWEVER I RESPECTFULLY |
| 48:04:00 | DISAGREE WITH THE CITY |
| 48:07:00 | ATTORNEY'S POSITION THAT THIS |
| 48:09:00 | PRECLUDES US FROM DISCUSSING THE |
| 48:10:00 | FACTS IN SANTA MONICA CASE AS |
| 48:12:00 | WELL AS LEGAL ARGUMENTS. |
| 48:15:00 | AS BROUGHT UP BY THE PREVIOUS |
| 48:15:00 | SPEAKER. |
| 48:17:00 | THE SUPREME COURT WE DON'T KNOW |
| 48:20:00 | HOW SUPREME COURT WILL COME |
| 48:21:00 | DOWN. |
| 48:24:00 | TO BE CANDID, TYPICALLY LOWER |
| 48:27:00 | POSITION IS NOT GOOD SIGN BUT WE |
| 48:29:00 | DON'T KNOW WHAT NUANCES OF THAT |
| 48:30:00 | LEGAL RULE WILL BE FROM SUPREME |
| 48:32:00 | COURT AND WHETHER THEY WILL |
| 48:35:00 | CLARIFY ISSUES THAT ARE BELOW. |
| 48:37:00 | BRIEF POINT ABOUT CALIFORNIA |
| 48:40:00 | VOTER RIGHTS ACT IT CORRECTLY |
| 48:42:00 | IDENTIFIES TO PROTECT MINORITY |
| 48:44:00 | INTERESTS, MINORITY RIGHTS TO |
| 48:45:00 | ENFRANCHISE MINORITY GROUPS. |
| 48:48:00 | THE ISSUE IN THE SANTA MONICA |
| 48:53:00 | CASE AND ARGUMENT THAT PREVAILED |
| 48:58:00 | WAS THAT THE PLAINTIFF NEEDED TO |
| 49:00:00 | SHOW THAT IT MADE DIFFERENCE, |
| 49:03:00 | THE POLARIZATION MADE DIFFERENCE |
| 49:05:00 | IN HELPED TO EFFECTUATING THE |
| 49:07:00 | CALIFORNIA VOTER RIGHTS ACT. |

| | |
|---|---|
| 49:10:00 | THE PURPOSE OF IS ACT IS NOT TO |
| 49:12:00 | PUNISH CITIES WITH RACIALLY |
| 49:13:00 | POLARIZED VOTING WHEN IT HAS NO |
| 49:16:00 | IMPACT ON MINORITY RIGHTS. |
| 49:19:00 | NAS SANTA MONICA I THINK A MORE |
| 49:20:00 | EXTENSIVE EXAMINATION HERE IN |
| 49:22:00 | CITY OF FOLSOM WOULD SHOW HERE |
| 49:25:00 | THAT LIKE IN SANTA MONICA |
| 49:27:00 | DISTRICT-BASED ELECTIONS WOULD |
| 49:29:00 | NOT HELP TO ENFRANCHISE MINORITY |
| 49:31:00 | GROUPS IN FACT DUE TO |
| 49:35:00 | DISTRIBUTION, YOU KNOW, EQUAL |
| 49:36:00 | DISTRIBUTION OF MINORITIES |
| 49:39:00 | ACROSS FOLSOM IT MIGHT RESULT IN |
| 49:40:00 | DISENFRANCHISEMENT OF MINORITY |
| 49:42:00 | GROUPS TO SAY CURRENTLY, |
| 49:43:00 | MINORITY BLOCK COULD VOTE |
| 49:45:00 | TOGETHER TO ELECT MINORITY |
| 49:47:00 | CANDIDATE TO CITY COUNCIL IF YOU |
| 49:52:00 | DO NOT ALLOW MINORITY FROM ONE |
| 49:54:00 | BLOCK ACROSS THE CITY TO VOTE |
| 49:58:00 | FOR AN AT LARGE MEMBER TO FIND |
| 49:59:00 | PRESSURE ALITY IN ANY ONE |
| 50:01:00 | DISTRICT THERE MAY NOT BE ONE. |
| 50:03:00 | THAT IS ILLUSTRATION OF ONE WAY |
| 50:07:00 | THAT SANTA MONICA -- |
| 50:09:00 | ARGUMENTS IN SANTA MONICA COULD |
| 50:12:00 | BE PLAYED OUT HERE TO OUR |
| 50:12:00 | BENEFIT. |
| 50:16:00 | CHALLENGE WE ARE IN, THAT |
| 50:17:00 | SUPREME COURT WOULD COME DOWN |
| 50:18:00 | WITH A TERRIBLE DECISION AND SAY |
| 50:20:00 | THAT CONSEQUENCES DON'T MATTER, |
| 50:23:00 | COME TO CONCLUSION THAT THE |
| 50:24:00 | PURPOSE IS JUST -- |
| 50:26:00 | BUT I DON'T BELIEVE THEY WILL, I |
| 50:27:00 | THINK THEY WILL COME UP WITH A |
| 50:29:00 | NUANCED DECISION, TAKE |
| 50:31:00 | GOVERNOR'S EXECUTIVE ORDER WHEN |
| 50:33:00 | WE HAVE THE TIME AND (INAUDIBLE) |
| 50:33:00 | THANK YOU. |
| 50:37:00 | >> THANK YOU. |
| 50:41:00 | >> NEXT MR. (INAUDIBLE) AND HE |
| 50:45:00 | WILL BE FOLLOWED BY MR. SILVA. |
| 50:48:00 | >> APPEARING ON MY OWN BEHALF. |

| | |
|---|---|
| 50:49:00 | I UNDERSTAND THAT THIS IS A |
| 50:51:00 | SERIOUS MATTER OCCURRING IN |
| 50:52:00 | SERIOUS TIMES. |
| 50:54:00 | IT IS KIND OF RELIEF BE THE HERE |
| 50:55:00 | AT CITY COUNCIL INSTEAD OF AT |
| 51:04:00 | HOME WATCHING THE LATEST |
| 51:07:00 | EGREGIOUS EVENTS GOING ON. |
| 51:08:00 | I HAVE GRAVE CONCERNS ABOUT |
| 51:09:00 | MATTER. |
| 51:10:00 | RECOMMEND THAT YOU CONTINUE |
| 51:11:00 | MATTER OFF CALENDAR. |
| 51:14:00 | FIRST CONCERN IS THIS PROPOSAL, |
| 51:16:00 | IF YOU ADOPT THIS RESOLUTION YOU |
| 51:18:00 | ARE TELLING YOUR VOTERS THAT YOU |
| 51:20:00 | ARE PREPARED TO CREATE A |
| 51:23:00 | DIMINUTION IN THEIR FRANCHISE. |
| 51:24:00 | TO REDUCE THEIR ABILITY TO VOTE |
| 51:29:00 | FOR CITY COUNCIL BY 80%. |
| 51:31:00 | TODAY EVERY VOTER CAN VOTE FOR |
| 51:34:00 | ALL FIVE OF YOU. |
| 51:35:00 | UNDER THIS PROPOSAL EACH VOTER |
| 51:36:00 | ONLY VOTES FOR ONE. |
| 51:43:00 | THAT IS AN 80% REDUCTION BY MY |
| 51:43:00 | MATH. |
| 51:44:00 | KERRI IS AN ENGINEER, PROBABLY |
| 51:46:00 | TELL ME IT IS SOME OTHER NUMBER, |
| 51:47:00 | YOU GET THE POINT. |
| 51:49:00 | SECONDLY AND MAYBE EVEN MORE |
| 51:52:00 | IMPORTANT, GIVEN WHERE WE ARE |
| 51:55:00 | TODAY, IT DEPRECIATES THE |
| 51:59:00 | VICTORY THAT YK AND ROSARIO HAD |
| 52:02:00 | IN THE LAST ELECTION IT IMPLIES |
| 52:04:00 | THAT SOMEHOW THEY WERE ELECTED |
| 52:06:00 | IN RACIALLY POLARIZED COMMUNITY |
| 52:07:00 | WHICH ACCORDING TO LAWYER WHO |
| 52:08:00 | FILED THE PAPERWORK WITH THE |
| 52:10:00 | CITY WAS CHANCE OF ONE IN A |
| 52:13:00 | MILLION IS WHAT HE SAID WAS THE |
| 52:16:00 | CHANCE THAT YK WOULD HAVE GOTTEN |
| 52:19:00 | ELECTED IN 20108 BECAUSE OF |
| 52:21:00 | RACIAL POLARIZATION OF OUR |
| 52:21:00 | COMMUNITY. |
| 52:24:00 | GUESS WHAT WE NOT ONLY BEAT |
| 52:25:00 | THOSE ODDS WE BEAT IT TWICE AND |
| 52:27:00 | WE DID IT WE DID NOT NEED |

| 52:29:00 | SOMEBODY FROM THE NANNY STATE TO |
| 52:30:00 | TELL US HOW TO VOTE. |
| 52:34:00 | WE DID NOT NEED A LAWYER FROM |
| 52:35:00 | WALNUT CREEK TO TELL US HOW TO |
| 52:36:00 | VOTE. |
| 52:39:00 | WE WE NEEDED ENERGETIC |
| 52:40:00 | CANDIDATES WHO RAN HARD AND |
| 52:42:00 | EFFECTIVE IN GETTING THEIR |
| 52:45:00 | MESSAGE OUT AND WE HAVE THEM AND |
| 52:47:00 | CONGRATULATIONS TO BOTH OF YOU. |
| 52:49:00 | I THINK THAT THIS MATTER SHOULD |
| 52:50:00 | BE DEALT AS FOLLOW ITSELF. |
| 52:56:00 | IT SHOULD BE STAYED AS I SAID, |
| 52:58:00 | NOT NOT ADOPTED AND SET OFF, |
| 53:01:00 | STAYED OFF CALENDAR UNTIL GET |
| 53:04:00 | CENSUS DATA THAT YOU KNOW, WHAT |
| 53:07:00 | THE CENSUS STATUS IS, THAT MAY |
| 53:10:00 | ENHANCE ARGUMENT OF DISTRICT, I |
| 53:12:00 | DON'T CARE WHETHER IT DOES OR |
| 53:14:00 | DOES NOT. |
| 53:16:00 | IT GIVES YOU A WAY TO EXPLAIN TO |
| 53:18:00 | VOTERS WHAT PREDICAMENT IS YOU |
| 53:19:00 | ARE FACING. |
| 53:21:00 | TAKE ADVANTAGE OF GOVERNOR'S |
| 53:23:00 | (INAUDIBLE) I HAVE NO FEAR ABOUT |
| 53:25:00 | LAWYER THREATENING TO SUE |
| 53:26:00 | SOMEBODY TO BREAK DOWN THE |
| 53:26:00 | STATE. |
| 53:31:00 | HE HAS TO SHOW IRRELEVANT |
| 53:31:00 | REPAIRLE HARM, THERE IS NO |
| 53:33:00 | ELECTION IN FOLSOM FOR 22 |
| 53:35:00 | MONTHS. |
| 53:37:00 | THIRDLY, THE SUPREME COURT |
| 53:38:00 | DECISION AWAIT SUPREME COURT |
| 53:39:00 | DECISION. |
| 53:40:00 | DISAGREE WITH YOUR COUNCIL ON |
| 53:40:00 | THE TIMING. |
| 53:42:00 | THOSE BRIEFS ARE DUE THIS |
| 53:42:00 | SPRING. |
| 53:46:00 | THEY WILL BE DECIDED IN THE NEXT |
| 53:47:00 | YEAR WHICH WILL START? |
| 53:47:00 | THE FALL. |
| 53:49:00 | THEY WILL BE DECIDED I WOULD SAY |
| 53:52:00 | WITHIN A YEAR TO 18 MONTHS. |
| 53:54:00 | BUT TO ADDRESS THAT ISSUE, |
| 53:55:00 | COUNCIL SHOULD AGREE TO STAND |
| 53:57:00 | STILL AGREEMENT. |
| 53:58:00 | LAWYERS IN LITIGATION DO THIS |
| 53:59:00 | ALL THE TIME. |
| 54:02:00 | I HAVE ONLY LITIGATED FOR ABOUT |
| 54:03:00 | 50 YEARS BUT THIS IS A VERY |
| 54:05:00 | COMMON THING THAT LAWYERS DO |
| 54:08:00 | WHEN THEY ANTICIPATE THAT SOME |
| 54:10:00 | FUTURE EVENT THAT THEY DON'T |
| 54:12:00 | CONTROL MAY IMPACT RESULT OF |
| 54:12:00 | LITIGATION. |
| 54:14:00 | THEY SIGN A STAND STILL |
| 54:16:00 | AGREEMENT WHEREBY THEY AGREE |
| 54:24:00 | THEY WILL AWAIT THAT DECISION. |
| 54:27:00 | IN MY FORMER LIFE I WAS |
| 54:28:00 | APPELLATE LAWYER FOR TWO YEARS. |
| 54:31:00 | THE FACT THAT THAT CASE IS |
| 54:32:00 | DEPUBLISHED MEANS NOTHING FROM |
| 54:33:00 | YOUR POINT OF VIEW. |
| 54:34:00 | THAT IS A LAWYER'S ISSUE. |
| 54:37:00 | I WAS AN APPELLATE LAWYER WE |
| 54:38:00 | USED ALL MEANS AVAILABLE US TO |
| 54:41:00 | TO GET AROUND THE FACT THAT OUR |
| 54:43:00 | FAVORITE CASE WAS JUST |
| 54:45:00 | DEPUBLISHED AND WE FOLLOWED THE |
| 54:47:00 | COURSE THAT KEVIN OUTLINED. |
| 54:48:00 | THAT IS WHAT YOU DO, |
| 54:50:00 | DEPUBLICATION MEANS NOTHING. |
| 54:51:00 | WHAT DOES MEAN SOMETHING IS THAT |
| 54:53:00 | THE SUPREME COURT WILL CLARIFY |
| 54:54:00 | THIS LAW AND WE NEED TO HAVE |
| 54:55:00 | THEM DO THAT. |
| 54:56:00 | THANKS VERY MUCH MAYOR. |
| 55:01:00 | >> THANK YOU, SIR. |
| 55:03:00 | >> NEXT WILL BE AARON SILVA. |
| 55:04:00 | >> GOOD EVENING COUNCIL. |
| 55:07:00 | I WANT TO ELABORATE ON THE LEGAL |
| 55:08:00 | POSTURE OF THE CASE AND THE |
| 55:09:00 | SANTA MONICA CASE. |
| 55:11:00 | YOU ARE IN A DIFFICULT POSITION |
| 55:12:00 | BECAUSE YOU DON'T NECESSARILY |
| 55:13:00 | KNOW WHAT THE RULES ARE FOR |
| 55:15:00 | VIOLATION OF CALIFORNIA VOTING |
| 55:16:00 | RIGHTS ACT. |
| 55:18:00 | THAT IS WHAT THE SANTA MONICA |

| | | | |
|---|---|---|---|
| 55:19:00 | CASE IS ALL ABOUT. | 56:36:00 | HAS FIVE REPRESENTATIVES ON THE |
| 55:21:00 | ALL OF THE OTHER SPEAKERS SAID | 56:37:00 | CITY COUNCIL. |
| 55:23:00 | THAT, YOU WILL PROBABLY NOT GET | 56:39:00 | WITH A DISTRICT SYSTEM THAT WILL |
| 55:26:00 | A DECISION UNTIL 2022 ARE | 56:40:00 | NOT BE THE CASE. |
| 55:26:00 | CORRECT. | 56:41:00 | THEY WILL HAVE BUT ONE. |
| 55:28:00 | THAT IS THE CASE THAT WILL LAY | 56:45:00 | THAT IS NOT ENHANCING |
| 55:29:00 | OUT STANDARD THAT YOU APPLY TO | 56:46:00 | REPRESENTATION. |
| 55:31:00 | DETERMINE STRENGTH OR WEAKNESSES | 56:48:00 | THAT IS DIMINISHING IT TO THE |
| 55:32:00 | OF WHERE YOU ARE AT. | 56:49:00 | DETRIMENT OF THE PEOPLE OF THIS |
| 55:34:00 | YOU DON'T KNOW THAT NOW. | 56:49:00 | CITY. |
| 55:36:00 | YOU HAVE NO IDEA WHAT THE RULES | 56:51:00 | LOTS OF OTHER THINGS THAT GO ON |
| 55:37:00 | ARE AND NO IDEA WHAT YOUR | 56:53:00 | WITH DISTRICT ELECTIONS THAT I'M |
| 55:38:00 | STRENGTH AND WEAKNESSES ARE. | 56:55:00 | SURE MOST OF YOU ARE AWARE OF IN |
| 55:43:00 | I WANT TO COMMENT ABOUT AS FAR | 56:58:00 | DISTRICT BASED SYSTEM, SEEN WITH |
| 55:43:00 | AS DEPUBLICATION. | 56:59:00 | THE LEGISLATURE AND SEEN WITH |
| 55:45:00 | KEEP IN MIND SANTA MONICA WON AT | 57:01:00 | HOUSE OF REPRESENTATIVES WE MAY |
| 55:47:00 | APPELLATE LEVEL. | 57:03:00 | NOT HAVE A CITY COUNCIL IN |
| 55:49:00 | IF STANDARDS OF APPELLATE COURT | 57:04:00 | DISTRICT SYSTEM IS CONCERNED |
| 55:51:00 | ARE APPLIED BY SUPREME COURT AND | 57:06:00 | ABOUT THE COLLECTIVE CITY THEY |
| 55:53:00 | ADOPTED BY THEM THIS PUTS NEW A | 57:07:00 | ARE CONCERNED ABOUT WHAT IS GOOD |
| 55:54:00 | GOOD POSITION. | 57:08:00 | FOR THEIR DISTRICT. |
| 55:56:00 | JUST BECAUSE CASE IS DEPUBLISHED | 57:10:00 | YOU GET SITUATIONS, UNFORTUNATE |
| 55:57:00 | THE RULES IN CALIFORNIA ARE | 57:12:00 | SITUATIONS WHERE, I WANT MONEY |
| 55:57:00 | EXPRESS. | 57:15:00 | IN MY DISTRICT TO MY TRAILS, TO |
| 56:00:00 | THAT IS NOT TO MEAN THAT | 57:17:00 | MY PARKS, TO MY AMENITIES AND |
| 56:02:00 | CALIFORNIA SUPREME COURT IS | 57:18:00 | NOT NECESSARILY CONCERNED WITH |
| 56:04:00 | DISAPPROVING OR APPROVING THAT | 57:20:00 | WHAT IS HAPPENING IN ANOTHER |
| 56:05:00 | CASE. | 57:20:00 | DISTRICT. |
| 56:06:00 | THEY WILL GET THE OPPORTUNITY TO | 57:22:00 | THAT IS NOT GOOD GOVERNMENT. |
| 56:07:00 | SPEAK, GIVE YOU STANDARDS YOU | 57:23:00 | THAT IS BAD GOVERNMENT. |
| 56:08:00 | DON'T KNOW THE RULES OF THE | 57:25:00 | I UNDERSTAND THE CITY'S |
| 56:09:00 | GAME. | 57:27:00 | FINANCIAL CONCERNS AS EVERYONE |
| 56:10:00 | IT IS UNKNOWN RIGHT NOW. | 57:32:00 | KNOWS AND IN THE PRESENTATION, |
| 56:12:00 | SOMETHING ELSE THAT IS NOT | 57:35:00 | NO INDICATION THAT CITY OF |
| 56:13:00 | UNKNOWN AND SUSPECT THAT ALL OF | 57:36:00 | FOLSOM DID ANYTHING ILLEGAL, IT |
| 56:19:00 | THE COUNCIL MEMBERS ARE AWARE IS | 57:38:00 | IS FINANCIAL ISSUE I'M LITIGATOR |
| 56:20:00 | (INAUDIBLE) ALL FIVE OF YOU | 57:43:00 | I KNOW HOW EXPENSIVE THAT |
| 56:22:00 | REPRESENT ME, MY FAMILY, MY | 57:45:00 | PROCESS THE ANDISH SUE POLITICAL |
| 56:24:00 | NEIGHBORHOOD, MY COMMUNITY, YOU | 57:46:00 | PHILOSOPHY PROBABLY NOT AN ISSUE |
| 56:26:00 | REPRESENT EVERY CITIZEN IN THE | 57:48:00 | YOU DEAL WITH A LOT IN YOUR |
| 56:27:00 | CITY OF FOLSOM. | 57:49:00 | POLITICAL CAREER. |
| 56:29:00 | WHAT WE KNOW IS THAT IF WE TO GO | 57:51:00 | HOW MUCH REPRESENTATION SHOULD |
| 56:31:00 | A DISTRICT-BASED SIS PEOPLE, | 57:54:00 | MY CONSTITUENTS HAVE AND I THINK |
| 56:33:00 | THAT WILL NO LONGER BE THE CASE. | 57:55:00 | THAT ISSUE WORTH FIGHTING FOR |
| 56:35:00 | EVERY PERSON IN FOLSOM RIGHT NOW | 57:56:00 | SINCE WE DON'T KNOW THE RULES |

| Time | Text |
|---|---|
| 57:59:00 | AND WON'T KNOW THE RULES UNTIL |
| 58:00:00 | SANTA MONICA COMES UP. |
| 58:02:00 | FINAL THING OUT OF ALL OF THIS |
| 58:04:00 | THE MOST TROUBLING ASPECT FOR ME |
| 58:05:00 | IS THAT IT IS POSSIBLE THAT WITH |
| 58:08:00 | A SINGLE LETTER THAT IS TETHERED |
| 58:10:00 | TO ABSOLUTELY NO OBJECTIVE |
| 58:14:00 | EVIDENCE OF ANY WRONG DOING OR |
| 58:17:00 | ILLEGALITY ON BEHALF OF THE CITY |
| 58:19:00 | IT IS POSSIBLE THAT THE PEOPLE |
| 58:20:00 | OF THIS CITY WILL HAVE |
| 58:24:00 | REPRESENTATION RIGHTS DIMINISHED |
| 58:26:00 | BECAUSE OF THE ENHANCED |
| 58:28:00 | LITIGATION COSTS TH GO ALONG. |
| 58:30:00 | NOT AN INDICTMENT OF CITY OR ANY |
| 58:31:00 | OF YOU. |
| 58:32:00 | INDICTMENT OF THIS STATE AND |
| 58:35:00 | POLITICAL PROCESS AND LEGAL |
| 58:38:00 | (INAUDIBLE) AND THAT IS |
| 58:39:00 | INCREDIBLY UNFORTUNATE THANK Y |
| 58:39:00 | YOU. |
| 58:41:00 | >> THANK YOU MR. SILVA. |
| 58:42:00 | >> ONE MORE REQUEST TO SPEAK |
| 58:44:00 | FROM AUDIENCE MARCO. |
| 58:56:00 | COME ON DOWN. |
| 58:57:00 | >> CONGRATULATE YOU FOR |
| 59:00:00 | PRONOUNCING MY LAST NAME |
| 59:01:00 | CORRECTLY. |
| 59:03:00 | WE ARE HERE TONIGHT BECAUSE OUT |
| 59:08:00 | OF FEAR, OUT OF FEAR, FEAR OF |
| 59:08:00 | LAWSUIT. |
| 59:10:00 | ALSO DEMONSTRATED IN THIS |
| 59:11:00 | PRESENTATION NO RECORD OF |
| 59:13:00 | DISCRIMINATION AS POINTED OUT BY |
| 59:15:00 | PREVIOUS SPEAKERS IT IS |
| 59:17:00 | EVIDENCED BY WHO IS SERVING US |
| 59:18:00 | TODAY. |
| 59:21:00 | I WOULD ASK FIRST LATINA AND |
| 59:22:00 | INDIAN, MORE WOMEN ON CITY |
| 59:23:00 | COUNCIL THAN MEN. |
| 59:26:00 | GOOD THING THAT IS PROGRESS. |
| 59:29:00 | TO UNDERSCORE KEVIN'S POINT |
| 59:30:00 | WHICH I HAVE NOT FULLY |
| 59:31:00 | APPRECIATED AND THANK YOU KEVIN, |
| 59:34:00 | I HAVE LOOKED AT THE ANALYSIS |
| 59:38:00 | AND SHOWS THAT ROSARIO AND YK |
| 59:40:00 | CARRIED EVERY PRECINCT BY LARGE |
| 59:40:00 | VOLUMES. |
| 59:44:00 | THERE WAS IN ROSARIO DISTRICT |
| 59:45:00 | WHERE UNDERPERFORMED IN OTHER |
| 59:48:00 | AREAS SAME THING APPLIED TO YK. |
| 59:49:00 | MESSAGE APPEALED TO BROADER AND |
| 59:51:00 | THE ENTIRE COMMUNITY. |
| 59:53:00 | TO KEVIN'S POINT, IF THIS |
| 59:56:00 | COMMUNITY WAS DIVIDED UP IN |
| 59:57:00 | DISTRICTS THEY MAY NOT BE |
| 59:58:00 | REPRESENTING US HERE TODAY AND |
| 60:03:00 | THAT SHOULD BE FACTORED IN. |
| 60:05:00 | (INAUDIBLE) LAWSUIT OR AS WE GO |
| 60:06:00 | FORWARD. |
| 60:08:00 | TO PROVE THIS POINT THERE HAS |
| 60:09:00 | NOT BEEN ANY DISCUSSION ABOUT |
| 60:11:00 | THIS IN THE BROADER COMMUNITY. |
| 60:13:00 | THEY NEED TO EXAMINE BENEFITS OF |
| 60:14:00 | BEING REPRESENTED BY FIVE |
| 60:18:00 | COUNCIL MEMBERS VERSUS ONE AND |
| 60:20:00 | (INAUDIBLE) ALLUDED TO A LOT OF |
| 60:21:00 | THAT. |
| 60:23:00 | BE REAL ABOUT THIS, ESSENTIALLY, |
| 60:25:00 | IF THERE ARE FIVE DISTRICTS YOU |
| 60:30:00 | WILL NO LONGER HAVE THE ABILITY |
| 60:32:00 | TO WORK AS PRODUCTIVELY AS YOU |
| 60:35:00 | WILL TODAY. |
| 60:36:00 | WE WILL DEVOLVE INTO TRIBES AND |
| 60:38:00 | FIEFDOMS COMPETE FOR LIMITED |
| 60:40:00 | RESOURCES FOR PARKS, ROAD |
| 60:41:00 | IMPROVEMENTS AND WEAKEST AMONG |
| 60:43:00 | YOU WILL NOT PREVAIL AND |
| 60:44:00 | CONSEQUENCE YOUR CONSTITUENTS |
| 60:45:00 | WILL SUFFER. |
| 60:47:00 | TODAY EVERY ONE OF YOU IS |
| 60:48:00 | ACCOUNTABLE TO ALL OF US. |
| 60:50:00 | IMAGINE A CITY COUNCIL CHAMBER |
| 60:52:00 | IN THE FUTURE WHERE WE SITE OUR |
| 60:58:00 | NAME AND ADDRESS AND FOUR FIFTH |
| 60:59:00 | OF YOU DON'T HAVE TO PAY |
| 61:00:00 | ATTENTION. |
| 61:01:00 | THAT IS WRONG. |
| 61:02:00 | WE HAVE A SYSTEM HERE THAT |
| 61:04:00 | SERVED OUR COMMUNITY WELL. |

- 303 -

| Time | Text |
|---|---|
| 61:06:00 | IT ENSURED THAT OUR COMMUNITY |
| 61:10:00 | HAS BEEN DIVERSE AND ELECTION |
| 61:12:00 | DIVERSE PEOPLE TO REPRESENT THEM |
| 61:13:00 | AS LEADERS. |
| 61:15:00 | SYSTEM IS NOT BROKEN ONLY BEING |
| 61:16:00 | THREATENED FROM THE OUTSIDE. |
| 61:18:00 | I WILL CLOSE WITH A POINT NOT |
| 61:21:00 | DISCUSSE TONIGHT AND THAT IS |
| 61:23:00 | SPECIAL INTEREST GROUPS. |
| 61:25:00 | PROPONENTS ARGUE THAT THIS WILL |
| 61:28:00 | EMPOWER CITY COUNCIL MEMBERS, |
| 61:29:00 | THEIR NEIGHBORHOODS AGAINST |
| 61:31:00 | SPECIAL INTEREST GROUPS. |
| 61:31:00 | QUITE THE OPPOSITE. |
| 61:33:00 | ANY SPECIAL INTEREST GROUP NOW |
| 61:35:00 | HAS TO SPEND RESOURCES CITY-WIDE |
| 61:38:00 | TO INFLUENCE OUTCOME OF THIS |
| 61:38:00 | ELECTION. |
| 61:41:00 | IN THE FUTURE, TWO DISTRICTS AT |
| 61:42:00 | A TIME OR THREE. |
| 61:44:00 | THAT IS NOT A GOOD SYSTEM, WHEN |
| 61:47:00 | THIS CITY HAS THE LOWEST |
| 61:48:00 | CONTRIBUTION CAP PROBABLIN THE |
| 61:50:00 | REGION WHICH QUITE FRANKLY PUTS |
| 61:57:00 | ALL OF YOU AT A DISADVANTAGE AND |
| 61:58:00 | (INAUDIBLE) CLOSE ON THE FACT |
| 62:01:00 | DISTRICT SYSTEM AS PROPOSED |
| 62:03:00 | RESEMBLES CONGRESS, POLITICIANS |
| 62:05:00 | PUT DISTRICTS AND PARTIES FIRST |
| 62:07:00 | BEFORE AMERICA AND AS YOU |
| 62:08:00 | CLOSELY EXAMINE WHAT IS BEFORE |
| 62:13:00 | YOU TODAY, I ASK YOU TO PUT |
| 62:14:00 | PEOPLE FIRST. |
| 62:20:00 | >> THANKS SIR. |
| 62:22:00 | >> NO OTHER SPEAKER CARDS. |
| 62:35:00 | >> PLEASE COME TO THE MIC. |
| 62:36:00 | >> MR. MAYOR COUNCIL MEMBERS |
| 62:38:00 | CITY MANAGER AND (INAUDIBLE) |
| 62:38:00 | THANKS FOR THIS OPPORTUNITY TO |
| 62:40:00 | SPEAK HERE. |
| 62:44:00 | I HAVE BEEN WORKING ON BY |
| 62:45:00 | DISTRICT (INAUDIBLE) TO PUSH |
| 62:48:00 | CITY COUNCIL TO GO BY DISTRICT |
| 62:50:00 | FOR LAST COUPLE OF YEARS. |
| 62:54:00 | WE HAVE COLLECTED SIGNATURES FOR |
| 62:57:00 | ALMOST 350 SIGNATURES WE HAVE |
| 62:58:00 | COLLECTED. |
| 63:00:00 | S THERE ARE THE POINTS THAT ARE |
| 63:03:00 | MADE HERE ARE GOOD POINTS HERE |
| 63:06:00 | FOR AND AGAINST. |
| 63:08:00 | (INAUDIBLE) BUT (INAUDIBLE) SO I |
| 63:11:00 | WILL MAKE (INAUDIBLE) MAIN POINT |
| 63:13:00 | IS THAT GRASSROOTS LEVEL |
| 63:15:00 | DEMOCRACY. |
| 63:19:00 | WE ARE HERE THESE ARE DEMOCRATIC |
| 63:19:00 | COUNTRY. |
| 63:20:00 | GRASS ROOTS LEVL DEMOCRACY, |
| 63:23:00 | WHEN HAVING A FEELING THAT I |
| 63:25:00 | HAVE A COUNCIL MEMBER TO |
| 63:27:00 | REPRESENT ME THAT CAN UNDERSTAND |
| 63:30:00 | MY PROBLEMS, MY NEIGHBORHOOD |
| 63:32:00 | PROBLEMS IS GOOD. |
| 63:35:00 | THAT IS NOT COMPARABLE TO ANY |
| 63:37:00 | OTHER THING LIKE I HAVE PRIOR |
| 63:39:00 | (INAUDIBLE) MEMBERS TO REPRESENT |
| 63:39:00 | ME. |
| 63:42:00 | I HAVE (INAUDIBLE) I HAVE |
| 63:44:00 | (INAUDIBLE) YOU KNOW (INAUDIBLE) |
| 63:47:00 | TO REPRESENT ME, REPRESENT ME, |
| 63:50:00 | THAT IS NOT GOING TO HELP. |
| 63:55:00 | SO HAVING NEIGHBORHOOD ELECTION, |
| 63:58:00 | HAVING A PERSON REPRESENTING ME, |
| 63:59:00 | MY PROBLEMS IS GOOD THING. |
| 64:02:00 | THAT IS WHAT BY DISTRICT |
| 64:03:00 | REPRESENTS. |
| 64:06:00 | AND SECOND THING, SECOND POINT I |
| 64:08:00 | WANT TO MAKE IT HAS BECOME TOO |
| 64:12:00 | EXPENSIVE O RUN FOR CITY |
| 64:12:00 | COUNCIL. |
| 64:13:00 | SO YOU MIGHT THINK THAT HEY I |
| 64:14:00 | CAN MAKE DIFFERENCE. |
| 64:15:00 | I CAN HELP. |
| 64:19:00 | I WOULD LIKE TO HAVE GREAT IDEAS |
| 64:23:00 | FOR THE CITY, CITY WIDE WI-FI |
| 64:25:00 | THINGS LIKE THAT. |
| 64:28:00 | I HAVE TO HAVE SUPPORT OF |
| 64:28:00 | INSTITUTION. |
| 64:32:00 | SO THERE IS THIS, YOU KNOW, |
| 64:34:00 | SPECIAL INTEREST INSTITUTION |
| 64:39:00 | THESE ARE CRIPPLING THE PEOPLE |

| | |
|---|---|
| 64:44:00 | AMBITIONS TO BE TO GO OUT TO |
| 64:46:00 | MAKE CITY BETTER THAT IS SECOND |
| 64:58:00 | POINT AND THIRD POINT IS THAT |
| 64:59:00 | THE THING IS HAPPENING BECAUSE |
| 65:02:00 | OF THE CITY AREA AND WE ARE |
| 65:03:00 | DISCUSSING THIS AND THIS IS A |
| 65:04:00 | (INAUDIBLE) BECAUSE OF THE |
| 65:06:00 | FINANCIAL THREAT. |
| 65:10:00 | THE THREAT OF THE LAWSUIT FROM |
| 65:12:00 | THE LAWYER FOR (INAUDIBLE) THAT |
| 65:15:00 | IS UNFORTUNATE. |
| 65:19:00 | SO IT IS LIKE A GOOD THING IS |
| 65:21:00 | HAPPENING BECAUSE OF (INAUDIBLE) |
| 65:22:00 | BAD WAY. |
| 65:24:00 | SO I MEAN, YOU KNOW, YOU |
| 65:27:00 | PROBABLY NOW ALL OF THE, YOU |
| 65:29:00 | KNOW, THE (INAUDIBLE) HAPPENED |
| 65:30:00 | IN UNITED STATES HISTORY, BUT |
| 65:33:00 | SINCE (INAUDILE) HAS TO DO SOME |
| 65:41:00 | (INAUDIBLE) TO GET HIS |
| 65:42:00 | EMANCIPATION -- |
| 65:44:00 | (INAUDIBLE) ANYWAY THE POINT OF |
| 65:46:00 | THAT IS THAT CVRA SAYS THAT |
| 65:51:00 | THERE IS NOT ENOUGH (INAUDIBLE) |
| 65:53:00 | I NEVER COMPLETELY BELIEVED |
| 65:55:00 | THAT, BECAUSE I ALWAYS SAW THAT |
| 65:57:00 | THERE HAS NOT BEEN |
| 66:03:00 | DISCRIMINATION, I AGREE TO HAVE |
| 66:03:00 | THIS (INAUDIBLE) (INAUDIBLE) |
| 66:05:00 | THAT THERE HAS NOT BEEN INTENT |
| 66:09:00 | OF DISCRIMINATION, HAS NOT BEEN |
| 66:10:00 | DISCRIMINATION BUT BY DISTRICT |
| 66:16:00 | HAS TO HAPPEN, BECAUSE FOR |
| 66:18:00 | DEMOCRACY; BECAUSE REPRESENT THE |
| 66:19:00 | PEOPLE BETTER. |
| 66:22:00 | THAT IS THE POINT I WANTED TO |
| 66:27:00 | MAKE AND THANK YOU AGAIN FOR |
| 66:27:00 | (INAUDIBLE). |
| 66:29:00 | >> THANK YOU SIR. |
| 66:30:00 | >> ANYBODY ELSE IN THE AUDIENCE |
| 66:31:00 | WHO WOULD LIKE TO ADDRESS |
| 66:33:00 | COUNCIL BEFORE WE TO GO THE |
| 66:38:00 | SUBMITTED eMAILS? |
| 66:41:00 | I WILL GO THROUGH THESE ONE BY |
| 66:41:00 | ONE. |

| | |
|---|---|
| 66:43:00 | AND THESE ARE IN THE ORDER THAT |
| 66:45:00 | THEY WERE RECEIVED. |
| 66:49:00 | FIRST IS FROM MR. HUSSEIN DEAR |
| 66:51:00 | MAYOR KOZLOWSKI AND MEMBERS OF |
| 66:52:00 | FOLSOM CITY COUNCIL. |
| 66:54:00 | RESIDENT OF BROADSTONE AND I |
| 66:56:00 | SUPPORT BY DISTRICT ELECTIONS IN |
| 66:57:00 | ADDITION TO BRINGING FOLSOM IN |
| 66:59:00 | COMPLIANCE WITH THE CALIFORNIA |
| 67:02:00 | VOTING RIGHTS ACT DISTRICT |
| 67:03:00 | ELECTIONS MEAN GRASS ROOT |
| 67:04:00 | CANDIDATES CAN WIN ELECTIONS BY |
| 67:06:00 | SPEAKING WITH THEIR NEIGHBORS. |
| 67:07:00 | RUN AND WIN WITHOUT THE |
| 67:08:00 | FINANCIAL SUPPORT FROM SPECIAL |
| 67:10:00 | INTEREST OFTEN NEEDED TO |
| 67:11:00 | CAMPAIGN CITY WIDE. |
| 67:13:00 | ALL CITIZENS IN EVERY PART OF |
| 67:14:00 | THE CITY WILL HAVE A COUNCIL |
| 67:17:00 | MEMBER WHO LIVES NEAR THEM AND |
| 67:18:00 | KNOWS ISSUES. |
| 67:20:00 | CITY COSTS OF CONDUCTING |
| 67:23:00 | ELECTIONS IS CUT BY 50% SAVING |
| 67:24:00 | TAXPAYER DOLLARS. |
| 67:27:00 | CITY OF FOLSOM CONTINUING TO |
| | GROW MORE IMPORTANT THAN EVER |
| 67:28:00 | TO |
| 67:30:00 | HAVE COUNCIL MEMBERS LIVE IN |
| 67:31:00 | NEIGHBORHOODS THEY REPRESENT TO |
| 67:33:00 | DEAL WITH CRITICAL ISSUES AS |
| 67:34:00 | INFRASTRUCTURE AND CITY SERVICES |
| 67:35:00 | ET CETERA, PLEASE INCLUDE MY |
| 67:37:00 | SUPPORT IN YOUR COUNCIL MEETING |
| 67:39:00 | ON THIS ITEM AND PLEASE VOTE TO |
| 67:41:00 | MOVE FOLSOM TO DISTRICT |
| 67:46:00 | ELECTIONS PUT RESIDENTS ABOVE |
| 67:48:00 | SPECIAL INTERESTS, SINCERELY |
| 67:49:00 | MR. HUSSEIN. |
| 67:52:00 | NEXT eMAIL FROM MURIEL. |
| 67:53:00 | DEAR MAYOR AND MEMBERS OF THE |
| 67:56:00 | CITY COUNCIL I LIVE IN NATOMA |
| 67:58:00 | STATION AND SUPPORT BY DISTRICT |
| 68:00:00 | ELECTIONS TO BRING FOLSOM INTO |
| 68:03:00 | COMPLIANCE WITH CALIFORNIA |
| 68:05:00 | VOTING RIGHTS ACT AND ALL PARTS |

| Time | Text |
|---|---|
| 68:10:00 | OF FOLSOM WILL BE REPRESENTED ON |
| 68:11:00 | COUNCIL. |
| 68:12:00 | I URGE YOU TO MAKE IRON CLAD |
| 68:14:00 | COMMITMENT TO BY DISTRICT |
| 68:17:00 | ELECTIONS FOR 2022 ELECTIONS. |
| 68:18:00 | MAKING THIS IS THE RIGHT THING |
| 68:23:00 | TO DO AND SAVES THE CITY FURTHER |
| 68:24:00 | EXPENSE. |
| 68:27:00 | NEXT IS FROM CLARENCE |
| 68:28:00 | MacASACK. |
| 68:32:00 | HE WRITES DEAR MAYOR KOZLOWSKI |
| 68:35:00 | AND MEMBERS OF THE CITY COUNCIL. |
| 68:37:00 | IN ADDITION TO BRINGING FOLSOM |
| 68:40:00 | IN COMPLIANCE WITH CALIFORNIA |
| 68:43:00 | VOTING RIGHTS ACT DISTRICT |
| 68:44:00 | ELECTIONS MEAN GRASSROOTS |
| 68:46:00 | CANDIDATES CAN WIN ELECTIONS BY |
| 68:49:00 | SPEAKING WITH NEIGHBORS, RUN AND |
| 68:51:00 | WIN WITHOUT SUPPORT FROM SPECIAL |
| 68:53:00 | INTEREST OFTEN NEEDED TO |
| 68:54:00 | CAMPAIGN CITY WIDE. |
| 68:55:00 | THERE WILL BE COUNSEL MEMBERS |
| 68:57:00 | LIVING IN ALL SECTIONS. |
| 68:59:00 | COST OF CONDUCTING ELECTIONS IS |
| 69:01:00 | CUT BY 50% SAVING TAXPAYER |
| 69:01:00 | DOLLARS. |
| 69:03:00 | WITH THE CITY OF FOLSOM |
| 69:04:00 | CONTINUING TO GROW IT IS MORE |
| 69:05:00 | IMPORTANT THAN EVER TO HAVE |
| 69:07:00 | COUNCIL MEMBER WHOSE LIVE IN THE |
| 69:08:00 | NEIGHBORHOODS THEY REPRESENT TO |
| 69:13:00 | DEAL WITH CRITICAL ISSUES AS |
| 69:14:00 | INFRASTRUCTURE, CITY SERVICES ET |
| 69:16:00 | CETERA, INCLUDE MY SUPPORT IN |
| 69:19:00 | COUNCIL MEETING ON THIS ITEM AND |
| 69:23:00 | MOVE TO VOTE FOLSOM TO DISTRICT |
| 69:25:00 | ELECTIONS, SINCERELY CLARENCE. |
| 69:28:00 | THE NEXT eMAIL FROM LYDIA |
| 69:30:00 | WOLF-CLARK WHO WRITES DEAR MAYOR |
| 69:32:00 | KOZLOWSKI AND MEMBERS OF FOLSOM |
| 69:33:00 | CITY COUNCIL. |
| 69:34:00 | RESIDENT OF PARK WAY AND I |
| 69:36:00 | SUPPORT BY-DISTRICT ELECTIONS. |
| 69:40:00 | IN ADDITION TO BRINGING FOLSOM |
| 69:41:00 | IN COMPLIANCE WITH VOTING RIGHTS |
| 69:44:00 | ACT THIS MEANS GRASS ROOT |
| 69:45:00 | CANDIDATES WITH WIN ELECTIONS BY |
| 69:47:00 | SPEAKING WITH NEIGHBORS, RUN AND |
| 69:49:00 | WIN WITHOUT FINANCIAL SUPPORT |
| 69:50:00 | FROM SPECIAL INTEREST OFTEN |
| 69:51:00 | NEEDED TO CAMPAIGN CITY WIDE. |
| 69:53:00 | ALL CITIZENS IN EVERY PART OF |
| 69:55:00 | CITY WILL HAVE A COUNCIL MEMBER |
| 69:57:00 | WHO LIVES NEAR HEM THEM AND |
| 69:58:00 | KNOWS ISSUES. |
| 70:00:00 | THE COST OF CONDUCTING ELECTIONS |
| 70:03:00 | CUT BY 50% SAVING TAXPAYER |
| 70:03:00 | DOLLARS. |
| 70:06:00 | WITH CITY OF FOLSOM GROWING IT |
| 70:08:00 | IS IMPORTANT TO HAVE COUNCIL |
| 70:11:00 | MEMBERS LIVING IN NEIGHBORHOOD |
| 70:12:00 | THEY REPRESENTS TO DEAL WITH |
| 70:13:00 | INFRASRUCTURE CITY SERVICES ET |
| 70:13:00 | CETERA. |
| 70:14:00 | PLEASE INCLUDE MY SUPPORT IN |
| 70:16:00 | YOUR COUNCIL MEETING ON THIS |
| 70:17:00 | ITEM AND VOTE TO MOVE FOLSOM TO |
| 70:20:00 | DISTRICT ELECTIONS, PUT |
| 70:23:00 | RESIDENTS ABOVE SPECIAL |
| 70:25:00 | INTERESTS, LYDIA WOLF CLARK. |
| 70:29:00 | NEXT eMAIL FROM CHRISTINA WHO |
| 70:30:00 | WRITES DEAR MAYOR AND MEMBERS OF |
| 70:32:00 | FOLSOM CITY COUNCIL. |
| 70:35:00 | I'M RESIDENT OF WILLOW CREEK |
| 70:36:00 | NEIGHBORHOOD AND SUPPORT BY |
| 70:37:00 | DISTRICT ELECTION. |
| 70:39:00 | IN ADDITION TO BRING FOLSOM IN |
| 70:40:00 | COMPLIANCE TO CALIFORNIA VOTING |
| 70:43:00 | RIGHTS ACT DISTRICT ELECTIONS |
| 70:45:00 | MEAN GRASS ROOT CANDIDATES CAN |
| 70:46:00 | MIN WIN ELECTIONS BY SPEAKING |
| 70:47:00 | WITH NEIGHBORS, RUN AND WIN |
| 70:49:00 | WITHOUT THE FINANCIAL SUPPORT |
| 70:50:00 | FROM SPECIAL INTEREST OFTEN |
| 70:52:00 | NEEDED TO CAMPAIGN CITY WIDE. |
| 70:54:00 | ALL CITIZENS IN EVERY PART OF |
| 70:55:00 | THE CITY WILL HAVE A COUNCIL |
| 70:57:00 | MEMBER WHO LIVES NEAR THEM AND |
| 70:58:00 | KNOWS ISSUES. |
| 71:01:00 | COST OF CONDUCTING ELECTIONS IS |

| | | | |
|---|---|---|---|
| 71:04:00 | CUT BY 50% SAVING TAXPAYER | 72:27:00 | WITH THE CITY OF FOLSOM |
| 71:04:00 | DOLLARS. | 72:28:00 | CONTINUING TO GROW IT IS |
| 71:07:00 | WITH CITY OF FOLSOM CONTINUING | 72:29:00 | IMPORTANT TO HAVE COUNCIL |
| | TO GROW MORE IMPORTANT THAN | 72:32:00 | MEMBERS WHO LIVE IN |
| 71:09:00 | EVER | 72:32:00 | NEIGHBORHOODS THEY REPRESENT |
| 71:10:00 | TO HAVE COUNCIL MEMBERS WHO LIVE | 72:35:00 | INCLUDE MY SUPPORT ON THIS ITEM |
| 71:12:00 | IN THE NEIGHBORHOODS THEY | 72:44:00 | AND MOVE TO PUT DISTRICT |
| 71:15:00 | REPRESENT TO DEAL WITH CRITICAL | 72:44:00 | ELECTIONS. |
| 71:16:00 | INFRASTRUCTURE CITY SERVICES ET | 72:47:00 | NEXT FROM MS. SUD. |
| 71:16:00 | CETERA. | 72:49:00 | WRITES I'M RESIDENT OF PARKWAY |
| 71:19:00 | INCLUDE MY SUPPORT IN COUNCIL | 72:51:00 | AND I SUPPORT BY DISTRICT |
| 71:26:00 | MEETING ON THE ITEM. | 72:51:00 | ELECTIONS. |
| 71:28:00 | >> YOUR NEXT eMAIL JUDY | 72:53:00 | IN ADDITION TO BRINGING FOLSOM |
| 71:30:00 | LEVESQUE WHO WRITES DEAR MAYOR | 72:55:00 | IN COMPLIANCE WITH CALIFORNIA |
| 71:31:00 | AND MEMBERS OF FOLSOM CITY | 72:58:00 | VOTING RIGHTS ACT DISTRICT |
| 71:32:00 | COUNCIL. | 73:00:00 | ELECTION MEAN GRASS ROOT |
| 71:35:00 | RESIDENT OF FOLSOM EMPIRE RANCH | 73:01:00 | CANDIDATES CAN WIN ELECTIONS BY |
| 71:36:00 | I ONCE AGAIN SEND eMAIL TO | 73:03:00 | SPEAKING WITH NEIGHBORS, RUN AND |
| 71:39:00 | SHOW MY SUPPORT FOR BY DISTRICT | 73:05:00 | WIN WITHOUT FINANCIAL SUPPORT |
| 71:39:00 | ELECTIONS. | 73:06:00 | FROM SPECIAL INTERESTS OFTEN |
| 71:41:00 | PLEASE INCLUDE MY SUPPORT IN | 73:07:00 | NEEDED TO CAMPAIGN CITY WIDE. |
| 71:43:00 | YOUR COUNCIL MEETING ON THIS | 73:09:00 | CITIZENS IN EVERY PART OF CITY |
| 71:46:00 | ITEM AND VOTE TO MOVE FOLSOM TO | 73:11:00 | WILL HAVE COUNCIL MEMBER WHO |
| 71:47:00 | DISTRICT ELECTION THANK YOU | 73:12:00 | LIVES NEAR THEM AND KNOWS |
| 71:51:00 | SIGNED JUDY LEVESQUE. | 73:13:00 | ISSUES. |
| 71:54:00 | NEXT IS FROM ANDREA WHO WRITES | 73:15:00 | THE COST OF CONDUCTING ELECTIONS |
| | DEAR MAYOR KOZLOWSKI AND | 73:19:00 | IS CUT BY 50% SAVING TAXPAYER |
| 71:57:00 | MEMBERS | 73:20:00 | DOLLARS. |
| 71:59:00 | OF THE CITY COUNCIL RESIDENT OF | 73:22:00 | CITY OF FOLSOM CONTINUING TO |
| 72:01:00 | FOLSOM PRAIRIE OAKS SUBDIVISION | 73:23:00 | GROW IT IS MORE IMPORTANT THAN |
| 72:02:00 | AND THANK YOU FOR YOUR | 73:25:00 | EVER TO HAVE COUNCIL MEMBERS WHO |
| 72:03:00 | CONSIDERATION OF DISTRICT | 73:26:00 | LIVE IN NEIGHBORHOODS THEY |
| 72:05:00 | ELECTIONS AT THE NEXT COUNCIL | 73:28:00 | REPRESENT TO DEAL WITH |
| 72:05:00 | MEETING. | 73:30:00 | INFRASTRUCTURE SERVICES ET |
| 72:08:00 | ADDITION IN BRINGING FOLSOM INTO | 73:31:00 | CETERA. |
| 72:09:00 | COMPLIANCE WITH CALIFORNIA | 73:31:00 | PLESS PLEASE INCLUDE MY SUPPORT |
| 72:12:00 | VOTING RIGHTS ACT THIS WILL SAVE | 73:34:00 | IN YOUR COUNCIL MEETING ON THE |
| 72:13:00 | TAXPAYER DOLLARS BY DECREASING | 73:36:00 | ITEM AND PUT RESIDENTS ABOVE |
| 72:15:00 | COST OF CONDUCTING CITY | 73:39:00 | SPECIAL INTEREST. |
| 72:16:00 | ELECTIONS. | 73:46:00 | SINCERELY CAV VITA SUD. |
| 72:18:00 | DISTRICT ELECTIONS ENSURE THAT | 73:49:00 | >> NEXT FROM EJ (INAUDIBLE) BUT |
| 72:20:00 | FOLSOM RESIDENTS IN EVERY PART | 73:50:00 | I BELIEVE HE SPOKE. |
| 72:21:00 | OF THE CITY WILL HAVE COUNCIL | 73:50:00 | THANK YOU. |
| 72:23:00 | MEMBER WHO LIVES NEAR THEM AND | 73:54:00 | NEXT IS FROM CHRIS WHO WRITES |
| 72:24:00 | KNOWS ISSUES. | | |

| | | | |
|---|---|---|---|
| | DEAR MAYOR KOZLOWSKI AND | 75:43:00 | DEVELOPMENT COMMUNITY STATING |
| 73:55:00 | MEMBERS | 75:47:00 | COUNCIL HAS DIVERSITY WITH |
| 74:01:00 | OF THE FOLSOM CITY COUNCIL. | 75:50:00 | ELECTION OF COUNCIL MEMBER ROZ |
| 74:03:00 | RESIDENT OF A FOLSOM COMMUNITY | 75:51:00 | REGS AND COUNCIL MEMBER HOWELL |
| 74:05:00 | AND SUPPORT BY DISTRICT | 75:52:00 | REMARKED THAT WE HAD A BLACK |
| 74:06:00 | ELECTIONS. | 75:54:00 | COUNCIL MEMBER. |
| 74:08:00 | IN ADDITION BRING FOLSOM IN | 75:57:00 | I FIND ARGUMENTS OFFENSIVE THERE |
| 74:09:00 | COMPLIANCE WITH THE CALIFORNIA | 76:00:00 | THIS IS NOT ABOUT TOKENISM BUT |
| 74:12:00 | VOTING RIGHTS ACT ELECTIONS MEAN | 76:05:00 | ABOUT COMMUNITY REPRESENTATION. |
| 74:14:00 | GRASS ROOT CANDIDATES CAN WIN | 76:09:00 | THE COMMUNITY THAT COUNCIL |
| 74:15:00 | ELECTIONS BY SPEAKING WITH | 76:11:00 | MEMBER ROD REGULAR GEEZ |
| 74:17:00 | NEIGHBORS RUN AND WIN WITHOUT | 76:12:00 | REPRESENTS IN AN AREA IN WHICH |
| 74:19:00 | FINANCIAL SUPPORT FROM SPECIAL | 76:14:00 | SHE HAS A PERSONAL INVESTMENT. |
| 74:20:00 | INTERESTS OFTEN NEEDED TO | 76:16:00 | I SUPPORT HER IDEAS, NOWHERE IN |
| 74:22:00 | CAMPAIGN CITY WIDE CITIZENS WILL | 76:18:00 | HER TALKS WAS THERE MENTION OF |
| 74:24:00 | HAVE A COUNCIL MEMBER WHO LIVES | 76:20:00 | IMPACTS AND/OR MITIGATIONS OF |
| 74:27:00 | NEAR THEM AND KNOWS ISSUES. | 76:22:00 | NOISE CAR AND FOOT TRAFFIC HER |
| 74:30:00 | COST OF ELECTION ARE CUT BY 50% | 76:23:00 | PROPOSALS WOULD HAVE ON |
| 74:31:00 | SAVING TAXPAYER DOLLARS. | 76:28:00 | RESIDENTS ONE BLOCK UP. |
| 74:33:00 | CITY OF FOLSOM IS GROWING AND | 76:29:00 | DON'T GET ME WRONG I LOVE |
| 74:35:00 | MORE IMPORTANT THAN EVER TO HAVE | 76:31:00 | HISTORIC FOLSOM. |
| 74:36:00 | COUNCIL MEMBERS WHO LIVE IN | 76:33:00 | MY FAVORITE STREET WE TAKE |
| 74:38:00 | NEIGHBORHOODS THEY REPRESENT TO | 76:34:00 | GRANDKIDS THERE FOR ICE CREAM TO |
| 74:42:00 | DEAL WITH INFRASTRUCTURE CITY | 76:35:00 | GO FARMERS MARKET REGULARLY AND |
| 74:46:00 | SERVICE ET CETERA INCLUDE MY | 76:37:00 | DID OUR CHRISTMAS SHOPPER AT THE |
| 74:49:00 | SUPPORT ON THIS ITEM AND PUT | 76:39:00 | SHOPS TO SUPPORT OUR LOCAL |
| 74:51:00 | RESIDENTS ABOVE SPECIAL | 76:39:00 | BUSINESSES. |
| 75:03:00 | INTERESTS SINCERELY CHRIS. | 76:42:00 | IT IS JUST TIME THAT LOCAL |
| 75:05:00 | DEAR MAYOR AND CITY COUNCIL. | 76:43:00 | RESIDENTS HAVE AS MUCH VOICE |
| 75:07:00 | I SUPPORT BY DISTRICT ELECTION. | 76:45:00 | THROUGH DISTRICT LEVEL ELECTED |
| 75:11:00 | ALL CITIZENS WILL HAVE A COUNCIL | 76:46:00 | COUNCIL MEMBER AS SPECIAL |
| 75:12:00 | MEMBER WHO LIVES NEAR THEM AND | 76:49:00 | INTEREST TO FINANCE CITY WIDE |
| 75:13:00 | KNOWS ISSUES. | 76:49:00 | CAMPAIGNS. |
| 75:14:00 | INCLUDE MY SUPPORT ON THIS ITEM | 76:51:00 | TIME TO BRING FOLSOM IN |
| 75:18:00 | AND VOTE TO MOVE FOLSOM TO | 76:53:00 | COMPLIANCE WITH THE CALIFORNIA |
| 75:23:00 | DISTRICT ELECTIONS PUT RESIDENTS | 76:55:00 | VOTING RIGHTS ACT BECAUSE |
| 75:29:00 | ABOVE SPECIAL INTERESTS. | 76:57:00 | DISTRICT ELECTIONS MEAN GRASS |
| 75:30:00 | LORRAINE FAIR. | 76:59:00 | ROOT CANDIDATES CAN MINI |
| 75:31:00 | CHERYL DAVIS WRITES DEAR MAYOR | 76:59:00 | LOCATIONS BY SPEAKING WITH |
| 75:33:00 | AND MEMBERS OF CITY COUNCIL. | 77:00:00 | NEIGHBORS. |
| 75:36:00 | I'M RESIDENT OF EMPIRE RANCH AND | 77:02:00 | RUN AND WIN WITHOUT SUPPORT FROM |
| 75:38:00 | SUPPORT BY DISTRICT ELECTIONS. | 77:04:00 | SPECIAL INTEREST OFTEN NEEDED TO |
| 75:39:00 | I UNDERSTAND THAT THERE IS | 77:05:00 | CAMPAIGN CITY WIDE. |
| 75:41:00 | OPPOSITION TO THIS BY SOME | 77:07:00 | CITIZENS IN EVERY PART OF CITY |
| 75:42:00 | MEMBERS OF BUSINESS AND | 77:10:00 | WILL HAVE A COUNCIL MEMBER WHO |

| | |
|---|---|
| 77:11:00 | LIVES NEAR HEM AND KNOWS ISSUES. |
| 77:13:00 | THE COST OF CONDUCTING ELECTIONS |
| 77:15:00 | CUT BY 50% SAVING TAXPAYER |
| 77:15:00 | DOLLARS. |
| 77:17:00 | WITH THE CITY OF FOLSOM |
| 77:18:00 | CONTINUING TO GROW IT IS MORE |
| 77:20:00 | IMPORTANT THAN EVER TO HAVE |
| 77:21:00 | COUNCIL MEMBERS WHO LIVE IN |
| 77:22:00 | NEIGHBORHOODS THEY REPRESENT TO |
| 77:24:00 | DEAL WITH CRITICAL ISSUES AS |
| 77:26:00 | INFRASTRUCTURE, CITY SERVICES ET |
| 77:26:00 | CETERA. |
| 77:27:00 | PLEASE INCLUDE MY SUPPORT IN |
| 77:29:00 | YOUR COUNCIL MEETING ON THIS |
| 77:31:00 | ITEM AND PLEASE VOTE TO MOVE |
| 77:34:00 | FOLSOM TO DISTRICT ELECTIONS PUT |
| 77:38:00 | RESIDENTS ABOVE SPECIAL |
| 77:39:00 | INTERESTS SINCERELY CHERYL |
| 77:39:00 | DAVIS. |
| 77:41:00 | NEXT WILLIAM DAVIS WHO WRITES |
| | DEAR MAYOR KOZLOWSKI AND |
| 77:42:00 | MEMBERS |
| 77:45:00 | OF FOLSOM CITY COUNCIL. |
| 77:46:00 | I'M REST DEPARTMENT OF EMPIRE |
| 77:47:00 | RANK AND I SUPPORT BY DISTRICT |
| 77:48:00 | ELECTIONS. |
| 77:50:00 | IT IS TIME THAT LOCAL RESIDENTS |
| 77:52:00 | HAVE AS MUCH VOICE THROUGH |
| 77:53:00 | DISTRICT LEVEL ELECTED COUNCIL |
| 77:55:00 | MEMBER AS SPECIAL INTEREST TO |
| 77:57:00 | FINANCE CITY WIDE CAMPAIGNS. |
| 77:59:00 | PLEASE BRING FOLSOM IN |
| 78:01:00 | COMPLIANCE WITH CALIFORNIA |
| 78:02:00 | VOTING RIGHTS ACT BECAUSE |
| 78:05:00 | DISTRICT ELECTIONS MEAN GRASS |
| 78:06:00 | ROOT CANDIDATES CAN WIN |
| 78:08:00 | ELECTIONS BY SPEAKING WITH |
| 78:09:00 | NEIGHBORS. |
| 78:11:00 | RUN AND WIN WITHOUT FINANCIAL |
| 78:12:00 | SUPPOT OFTEN NEEDED TO CAMPAIGN |
| 78:13:00 | CITY WIDE. |
| 78:15:00 | CITIZENS IN EVERY PART OF THE |
| 78:17:00 | CITY WILL HAVE A COUNCIL MEMBER |
| 78:20:00 | WHO LIVES NEAR THEM AND KNOWS |
| 78:21:00 | ISSUES. |

| | |
|---|---|
| 78:22:00 | COST OF CONDUCTING ELECTIONS IS |
| 78:26:00 | CUT BY 50% SAVING TAXPAYER |
| 78:26:00 | DOLLARS. |
| 78:28:00 | IT IS MORE IMPORTANT THAN EVER |
| 78:29:00 | TO HAVE COUNCIL MEMBERS TO LIVE |
| 78:31:00 | IN NEIGHBORHOOD THEY REPRESENT |
| 78:32:00 | TO DEAL WITH INFRASTRUCTURE CITY |
| 78:34:00 | SERVICES ET CETERA. |
| 78:35:00 | PLEASE INCLUDE MY SUPPORT IN |
| 78:37:00 | YOUR COUNCIL MEETING ON THIS |
| 78:39:00 | ITEM AND PLEASE VOTE TO MOVE |
| 78:42:00 | FOLSOM TO DISTRICT ELECTIONS PUT |
| 78:44:00 | RESIDENTS ABOVE SPECIAL |
| 78:50:00 | INTERESTS WILLIAM DAVIS. |
| 78:52:00 | THERESA GARCIA WRITES DEAR MAYOR |
| 78:53:00 | AND MEMBERS OF CITY COUNCIL. |
| 78:57:00 | I'M RESIDENT OF LAKEVIEW OAKS |
| 78:58:00 | COMMUNITY IN FOLSOM I SUPPORT BY |
| 78:59:00 | DISTRICT ELECTIONS. |
| 79:01:00 | IN ADDITION TO BRINGING FOLSOM |
| 79:03:00 | IN COMPLIANCE WITH CALIFORNIA |
| 79:06:00 | VOTING RIGHTS ACT DISTRICT |
| 79:07:00 | ELECTIONS MEAN GRASS ROOT |
| 79:09:00 | CANDIDATES WITH WIN ELECTIONS BY |
| 79:11:00 | SPEAKING WITH NEIGHBORS, RUN AND |
| 79:13:00 | WIN WITHOUT FINANCIAL SUPPORT |
| 79:14:00 | FROM SPECIAL INTERESTS OFTEN |
| 79:16:00 | NEEDED TO CAMPAIGN CITY WIDE. |
| 79:17:00 | CITIZENS IN EVERY PART OF THE |
| 79:20:00 | CITY WILL HAVE A COUNCIL MEMBER |
| 79:23:00 | WHO LIVES NEAR THEM AND KNOWS |
| 79:24:00 | ISSUES. |
| 79:28:00 | COST IS CUT BY 50% SAVING |
| 79:29:00 | TAXPAYER DOLLARS. |
| 79:30:00 | IT IS MORE IMPORTANT THAN EVER |
| 79:31:00 | T HAVE COUNCIL MEMBER WHOSE |
| 79:32:00 | LIVE IN NEIGHBORHOODS THEY |
| 79:34:00 | REPRESENT TO DEAL WITH CRITICAL |
| 79:36:00 | ISSUES SUCH AS INFRASTRUCTURE, |
| 79:37:00 | CITY SERVICES ET CETERA. |
| 79:39:00 | INCLUDE MY SUPPORT IN YOUR |
| 79:41:00 | MEETING ON THIS ITEM AND VOTE TO |
| 79:43:00 | MOVE FOLSOM TO DISTRICT |
| 79:52:00 | ELECTIONS SIGNED THERESA GARCIA. |
| 79:53:00 | NEXT FROM KAREN DEAR MAYOR AND |

| Time | Text |
|---|---|
| 79:54:00 | MEMBERSOF THE FOLSOM CITY |
| 79:56:00 | COUNCIL. |
| 79:59:00 | RESIDENT OF WILLOW CREEK |
| 80:00:00 | NEIGHBORHOOD AND SUPPORT BY |
| 80:27:00 | DISTRICT ELECTIONS. |
| 80:28:00 | SUPPORT BY DISTRICT ELECTIONS IN |
| 80:28:00 | ADDITION TO BRINNG FOLSOM IN |
| 80:29:00 | COMPLIANCE WITH THE CALIFORNIA |
| 80:30:00 | VOTING RITS ACT DISTRICT |
| 80:30:00 | ELECTIONS MEAN RASS ROOT |
| 80:31:00 | CANDIDATES CAN WIN ELECTIONS BY |
| 80:31:00 | SPEAKING WITH THEIR NEIGHBORS. |
| 80:32:00 | RUN AND WIN WITHOUT THE |
| 80:32:00 | FINAIAL SUPPORT FROM SPECIAL |
| 80:33:00 | INTEREST OFTEN NEEDED TO |
| 80:33:00 | CAMPAIGN CITY WIDE. |
| 80:34:00 | ALL CITIZENS IN EVERY PART OF |
| 80:35:00 | THE CITY WILL HAVE A COUNCIL |
| 80:35:00 | MEMBER WHO LIVES NEAR TEM AND |
| 80:36:00 | KNOWS ISSUES. |
| 80:36:00 | CITY COSTS OF CONDUCTING |
| 80:37:00 | ELECTIONS IS CUT BY 50% SAVING |
| 80:37:00 | TAXPAYER DOLLARS. |
| 80:38:00 | CITY OF FOLSOM CONTINUING TO |
| | GROW MORE IMPORTANT THAN EVER |
| 80:38:00 | TO |
| 80:39:00 | HAVE COUNCIL MEMBERS LIVE IN |
| 80:40:00 | NEIGHBORHOODS THEY REPRESENT TO |
| 80:40:00 | EAL WITH CRITICAL ISSUES AS |
| 80:41:00 | INFRASTRUCTURE AND CITY SERVICES |
| 80:41:00 | ET CETERA, PLEASE INCLUDE MY |
| 80:42:00 | SUPG |
| 80:43:00 | ON THIS ITEM AND PLEASE VOTTO |
| 80:43:00 | MOVE FOLSOM TO DISTRICT |
| 80:48:00 | ELECTIONS PUT RESIDENTS ABOV |
| 80:49:00 | SPECIAL INTERESTS, KAREN. |
| 80:51:00 | NEXT eMAIL FROM TONY OLIVER |
| 80:54:00 | AND CHRISTINE MORELAND WRITE |
| | DEAR MAYOR AND MEMBERS OF |
| 80:55:00 | FOLSOM |
| 80:56:00 | CITY COUNCIL. |
| 80:58:00 | WE ARE RESIDENTS OF THE PARKWAY |
| 80:59:00 | AND SUPPORT BY DISTRICT |
| 81:00:00 | ELECTIONS. |
| 81:02:00 | IN ADDITION TO BRINGING FOLSOM |
| 81:03:00 | IN COMPLIANCE WITH THE |
| 81:05:00 | CALIFORNIA VOTING RIGHTS ACT |
| 81:08:00 | DISTRICT ELECTIONS MEAN GRASS |
| 81:09:00 | ROOT CANDIDATES CAN WIN |
| 81:11:00 | ELECTIONS BY SPEAKING WITH THEIR |
| 81:11:00 | NEIGHBORS. |
| 81:14:00 | RUN AND WIN WITHOUT THE FANGS |
| 81:15:00 | SUPPORT FROM SPECIAL INTERESTS |
| 81:17:00 | OFTEN NEEDED TO CAMPAIGN CITY |
| 81:17:00 | WIDE. |
| 81:18:00 | CITIZENS IN EVERY PART OF THE |
| 81:20:00 | CITY WILL HAVE A COUNCIL MEMBER |
| 81:22:00 | WHO LIVES NEAR THEM AND KNOWS |
| 81:22:00 | ISSUES. |
| 81:25:00 | COST OF CONDUCTING ELECTIONS CUT |
| 81:28:00 | BY 50% SAVING TAXPAYER DOLLARS. |
| 81:32:00 | CITY OF FOLSOM GROWING IT IS |
| | MORE TO HAVE COUNCIL MEMBERS |
| 81:33:00 | WHO |
| 81:35:00 | LIVE IN NEIGHBORHOODS THEY |
| 81:36:00 | REPRESENT TO DEAL WITH |
| 81:37:00 | INFRASTRUCTURE, CITY SERVICES, |
| 81:38:00 | ET CETERA. |
| 81:40:00 | INCLUDE OUR SUPPORT IN YOUR |
| 81:43:00 | COUNCIL MEETING ON THIS ITEM AND |
| 81:46:00 | VOTE TO MOVE FOLSOM TO DISTRICT |
| 81:48:00 | ELECTIONS AND SINCERELY TONY |
| 81:52:00 | OLIVER AND CHRISTINE MORELAND. |
| 81:54:00 | NEXT FROM JOHN WRIGHT. |
| 81:56:00 | HE WRITES I'M WRITING TO EXPRESS |
| 82:00:00 | MY SUPPORT FOR RESOLUTION 10575. |
| 82:02:00 | THE WAY THAT WE CURRENTLY VOTE |
| 82:05:00 | FOR COUNCIL MEMBERS IS NOT AS |
| 82:06:00 | REPRESENTATIVE AS IT SHOULD BE. |
| 82:08:00 | THIS RESOLUTION WILL, WHEN |
| 82:10:00 | APPROVED, SHOW OUR INTENT TO |
| 82:11:00 | INITIATE PROCEDURES TO MOVE FROM |
| 82:13:00 | AT LARGE ELECTIONS TO |
| 82:15:00 | DISTRICT-BASED ELECTIONS. |
| 82:18:00 | ONCE FINALIZED THE NEW ELECTION |
| 82:20:00 | PROCESS WILL ENABLE BETTER |
| 82:20:00 | REPRESENTATION. |
| 82:22:00 | NOT ONLY WILL CANDIDATE HAVE A |
| 82:24:00 | BETTER IDEA OF THEIR LOCAL |
| 82:26:00 | CONSTITUENCY BUT MORE CANDIDATES |

| | |
|---|---|
| 82:28:00 | HAVE A CHANCE TO RUN FOR ELECTED |
| 82:29:00 | OFFICE. |
| 82:31:00 | WILL NOT NEED AS MUCH FINANCIAL |
| 82:34:00 | SUPPORT THEY WILL BE GRASS ROOT |
| 82:34:00 | CANDIDATES. |
| 82:35:00 | NEIGHBORS REPRESENTING |
| 82:35:00 | NEIGHBORS. |
| 82:37:00 | IN LIGHT OF WHAT HAS HAPPENED IN |
| 82:38:00 | THE LAST WEEK IN OUR COUNTRY, |
| 82:41:00 | THIS IS THE TYPE OF DEMOCRATIC |
| 82:42:00 | REPRESENTATION THAT WE NEED AND |
| 82:48:00 | WE NEED IT NOW MORE THAN EVER. |
| 82:50:00 | SINCERELY JOHN WRIGHT. |
| 82:53:00 | NEXT FROM BERNARD DOOLEY. |
| 82:56:00 | I SUPPORT BY DISTRICT ELECTIONS. |
| 82:58:00 | WE LIVE IN NATOMA STATION AND DO |
| 83:00:00 | NOT HAVE ANY REPRESENTATION ON |
| 83:04:00 | CITY COUNCIL. |
| 83:06:00 | SIGNED BERNARD DOOLEY. |
| 83:10:00 | NEXT IS FROM ROBERT WHO WRITES |
| | DEAR MAYOR KOZLOWSKI AND |
| 83:12:00 | MEMBERS |
| 83:14:00 | OF FOLSOM CITY COUNCIL. |
| 83:16:00 | I'M RESIDENT OF CITY OF FOLSOM |
| 83:18:00 | AND I RESPECTFULLY URGE YOU TO |
| 83:20:00 | SUPPORT DISTRICT ELECTIONS. |
| 83:22:00 | THE CALIFORNIA VOTING RIGHTS ACT |
| 83:23:00 | CLEARLY REQUIRES ELECTIONS BY |
| 83:24:00 | DISTRICT HERE IN FOLSOM. |
| 83:26:00 | IN THIS ERA OF DIVISION, IT |
| 83:29:00 | WOULD BE A GREAT SIGN OF UNITY |
| 83:31:00 | AND WILLINGNESS TO SUPPORT |
| 83:32:00 | GRASSROOTS DEMOCRACY FOR YOU TO |
| 83:35:00 | CHANGE TO DISTRICT ELECTIONS FOR |
| 83:36:00 | 2022 |
| 83:37:00 | DESPITE RESULTS OF THE LAST |
| 83:38:00 | ELECTION THERE IS LITTLE |
| 83:40:00 | QUESTION THAT THE RIGHTS OF |
| 83:43:00 | MINORITY VOTERS HAVE NOT BEEN |
| 83:45:00 | FULLY VINDICATED IN FOLSOM AND |
| 83:46:00 | NO GUARANTEE THAT WITH THE RAPID |
| 83:49:00 | RATE OF GROWTH IN THIS CITY, |
| 83:52:00 | MINORITY INTERESTS WILL BE |
| 83:55:00 | FAIRLY REPRESENTED IN FUTURE |
| 83:56:00 | ELECTION. |
| 83:58:00 | DISTRICT ELECTIONS ASSURE |
| 83:59:00 | REPRESENTATION AT NEIGHBORHOOD |
| 83:59:00 | LEVEL. |
| 84:01:00 | EVEN IF YOU BELIEVE IT IS A |
| 84:03:00 | CLOSER LEGAL QUESTION THAN IT |
| 84:05:00 | IS, WHY RISK INCURRING |
| 84:06:00 | ADDITIONAL SUBSTANTIAL LEGAL |
| 84:08:00 | COSTS RATHER THAN SETTLING THE |
| 84:10:00 | LAWSUIT NOW, YOU WOULD BE |
| 84:11:00 | STRIKING A BLOW FOR GOD |
| 84:13:00 | GOVERNMENT BY AGREEING TO HAVE |
| 84:17:00 | DISTRICT ELECTIONS IN 2022 THANK |
| 84:21:00 | YOU RESPECTFULLY SIGNED ROBERT |
| 84:22:00 | DRESSER. |
| 84:25:00 | NEXT IS FROM NANCY MOORE. |
| 84:27:00 | AND NANCY WRITES DEAR MAYOR |
| 84:28:00 | KOZLOWSKI AND MEMBERS OF FOLSOM |
| 84:29:00 | CITY COUNCIL. |
| 84:33:00 | I'M RESIDENT OF AMERICAN RIVER |
| 84:34:00 | CANYON SOUTH NEIGHBORHOOD. |
| 84:36:00 | I STRONGLY SUPPORT DISTRICT |
| 84:36:00 | ELECTIONS. |
| 84:38:00 | I BELIEVE DISTRICT ELECTIONS |
| 84:40:00 | WILL GIVE NEIGHBORHOODS BETTER |
| 84:41:00 | REPRESENTATION BECAUSE OUR |
| 84:43:00 | COUNCIL MEMBER WOULD LIVE IN |
| 84:45:00 | DISTRICT HE OR SHE REPRESENTS |
| 84:46:00 | AND HAVE A BETTER AWARENESS |
| 84:47:00 | ABOUT CONCERNS AND PRIORITIES. |
| 84:50:00 | I BELIEVE IT WOULD PROVIDE MORE |
| 84:50:00 | ACCOUNTABILITY. |
| 84:52:00 | I HAVE LIVED IN MY NEIGHBORHOOD |
| 84:54:00 | FOR MORE THAN 23 YEARS AND HAVE |
| 84:55:00 | NEVER FELT THAT THIS AREA HAS |
| 84:58:00 | BEEN ADEQUATELY REPRESENTED. |
| 85:00:00 | ESTABLISHING DISTRICT ELECTIONS |
| 85:02:00 | WOULD BRING FOLSOM INTO |
| 85:03:00 | COMPLIANCE WITH THE VOTING |
| 85:04:00 | RIGHTS ACT. |
| 85:06:00 | IT IS AN ISSUE I CARE ABOUT, |
| 85:09:00 | PLEASE DO THE RIGHT THING FOR |
| 85:12:00 | FOLSOM RESIDENTS, SINCERELY |
| 85:12:00 | NANCY MOORE. |
| 85:14:00 | AND NEXT eMAIL WAS NOT SIGNED, |
| 85:19:00 | NO NAME THAT GOES WITH IT. |

| | | | |
|---|---|---|---|
| 85:22:00 | eMAIL ADDRESS INDICATES | 86:45:00 | COLLECTOR WHO WRONGLY ASSUMES |
| 85:23:00 | (INAUDIBLE) I STRONGLY SUPPORT | 86:46:00 | THEY ARE HONEST. |
| 85:24:00 | ELECTION OF CITY COUNCIL MEMBERS | 86:48:00 | THAT eMAIL WAS NOT SIGNED. |
| 85:25:00 | BY DISTRICT. | 86:52:00 | NO NAME. |
| 85:28:00 | FOLSOM PROPERTY OWNERS IN LNL | 86:54:00 | NEXT eMAIL FROM CHRISTOPHER |
| 85:32:00 | DISTRICTS HAVE BEEN | 86:56:00 | BAKER WHO WRITES TO WHOM IT MAY |
| 85:33:00 | SYSTEMATICALLY DEFRAUDED BY | 86:58:00 | CONCERN COUNCIL MEMBER AND |
| 85:35:00 | ANNUAL ASSESSMENTS FOR YEARS. | 86:59:00 | FELLOW OFFICIALS. |
| 85:37:00 | NO ELECTED OFFICIAL HAS EVEN | 87:03:00 | AS RESIDENT OF FOSS FOLSOM SINCE |
| 85:40:00 | BOTHERED TO TAKE A LOOK AT LNL | 87:04:00 | 2011 I URGE YOU TO STAND UP |
| 85:42:00 | ACT AND ENGINEER REPORT THAT | 87:07:00 | AGAINST DISTRICT VERSUS AT LARGE |
| 85:45:00 | SHOWED VIOLATION. | 87:08:00 | REPRESENTATION FOR FOLSOM. |
| 85:47:00 | CORRUPTION BY CITY AND SCI | 87:11:00 | OUR CITY IS A FEW MILES WIDE. |
| 85:48:00 | CONTINUES. | 87:13:00 | I CAN GET FROM JUNIOR COLLEGE TO |
| 85:50:00 | VIOLATION OF STATE LAW AND CLEAR | 87:18:00 | OLD TOWN BY BIKE IN A FEW |
| 85:51:00 | VIOLATION OF FOURTH AMENDMENT OF | 87:19:00 | MINUTES. |
| 85:52:00 | THE U.S. CONSTITUTION. | 87:19:00 | I CAN'T POSSIBLY FATHOM THOSE ON |
| 85:54:00 | IF WE HAVE DISTRICT | 87:25:00 | ONE SIDE OF FOLSOM HAVING |
| 85:56:00 | REPRESENTATIVES SOMEONE MIGHT | 87:26:00 | DRASTICALLY DIFFERENT PROBLEMS |
| 85:59:00 | LOOK AT SOMEWHAT COMPLEX | 87:28:00 | THAN IN ANY NEIGHBORHOODS. |
| 86:00:00 | EVIDENCE. | 87:32:00 | CREATING DISTRICT CREATES POTS |
| 86:01:00 | THE WORDS IN THE ACT ARE SIMPLE | 87:32:00 | F INDIVIDUALS INSTEAD OF |
| 86:02:00 | AND SPECIFIC. | 87:34:00 | NATIONALITY AND BACK GROUNDS. |
| 86:04:00 | DEFINITIONS ARE RIGHT IN THE | 87:38:00 | I WOULD LIKE TO KNOW WHO TRULY |
| 86:06:00 | BEGINNING OF THE ACT. | 87:39:00 | BENEFITS OFF THIS LAWSUIT. |
| 86:08:00 | CITY DOCUMENTS ARE NOT SO | 87:41:00 | AFTER REVIEW OF THE INDIVIDUAL |
| 86:10:00 | READILY AVAILABLE AND USE | 87:43:00 | IS DRIVEN BY THE DOLLARS AND NOT |
| 86:11:00 | STRANGE CATEGORIES NOT RELATED | 87:43:00 | SOCIAL BENEFITS. |
| 86:12:00 | TO THE LAW. | 87:44:00 | THANK YOU. |
| 86:16:00 | THIS IS A SCAM AS CLEVER AS | 87:48:00 | PLEASE VOTE AGAINST DISTRICT |
| 86:17:00 | ANYTHING BERNIE MADOFF COULD | 87:49:00 | REPRESENTATION. |
| 86:18:00 | WORK OUT. | 87:52:00 | SIGNED CHRISTOPHER BAKER. |
| 86:20:00 | ELECTIONS BY DISTRICT WOULD GIVE | 87:56:00 | NEXT eMAIL IS FROM CURT WHO |
| 86:21:00 | US A CHANCE TO GET SOMEONE WITH | 88:00:00 | WRITES KEEP FOLSOM CITY OWE |
| 86:23:00 | INTEGRITY ON THE COUNCIL. | 88:03:00 | ELECTIONS AT LARGE DEMAND FOR |
| 86:25:00 | THAT WOULD BE A WELCOME CHANGE. | 88:07:00 | DISTRICT ELECTIONS IS |
| 86:28:00 | WOULD ALSO PROBABLY BE A FEW | 88:08:00 | UNCONSTITUTIONAL SIGNED CAPTAIN |
| 86:29:00 | CITY EMPLOYEES WHO WOULD | 88:11:00 | CURT TARAS U.S. AIR FORCE |
| 86:30:00 | SUDDENLY LEAVE TOWN. | 88:12:00 | VETERAN. |
| 86:33:00 | AND THOUSANDS OF FOLSOM PROPERTY | 88:17:00 | AND THE NEXT ITEM eMAIL FROM |
| 86:35:00 | OWNERS WOULD FIND ANNUAL TAX | 88:19:00 | TESTIMONY OF SCOTT RAFFERTY FOR |
| 86:36:00 | BILLS REDUCED. | 88:21:00 | DVRA LAWSUIT PLAINTIFF AND HE |
| 86:39:00 | LNL ASSESSMENTS ARE FEES FOR | 88:23:00 | WRITES I HAVE ADVISED MY CLIENTS |
| 86:41:00 | SPECIFIC FEES AND SERVICES NOT | 88:24:00 | NOT TO SPEAK ON TONIGHT'S |
| 86:44:00 | TAXES COLLECTED BY COUNTY TAX | 88:28:00 | UNTIMELY AND CONFUSED RESOLUTION |

| Time | Text |
|---|---|
| 88:32:00 | OF INTENT WHICH MISLEADINGLY |
| 88:33:00 | PROMISES TO COMPLY WITH CVRA |
| 88:36:00 | MONTH TOO LATE, DOES NOT |
| 88:38:00 | SCHEDULE HEARINGS AND DOESN'T |
| 88:39:00 | COMPLY WITH STATUTORY CONDITIONS |
| 88:42:00 | THAT WOULD HAVE ALLOWED YOU TO |
| 88:45:00 | DRAW MAP WITHOUT COURT |
| 88:46:00 | SUPERVISION. |
| 88:46:00 | CITY ATTORNEY DARED US TO FILE |
| 88:49:00 | SUIT SO YOU ARE IN COURT NOW. |
| 88:51:00 | ROBERT (INAUDIBLE) DEMANDED |
| 88:52:00 | DISTRICT ELECTIONS 30 YEARS AGO |
| 88:56:00 | A DECADE BEFORE CVRA EXPLAINING |
| 88:59:00 | HOW DISTRICTS REDUCE INFLUENCE |
| 89:03:00 | OF MONEY IN CHAMBER AND |
| 89:03:00 | REPRESENTATION. |
| 89:05:00 | LAST FEBRUARY 330 CONSTITUENTS |
| 89:07:00 | FROM EVERY PART OF THE CITY IN |
| 89:08:00 | EVERY PARTY ASKED YOU TO COMPLY |
| 89:11:00 | YOU DID NOT EVEN AGENDIZE THE |
| 89:13:00 | CITY MANAGER STATED DISDAIN FOR |
| 89:15:00 | THE LAW, ARGUING THAT IT LEADS |
| 89:17:00 | TO FACTIONS AND FRICTION. |
| 89:20:00 | IN OCTOBER MY CLIENT FORMALLY |
| 89:23:00 | INVOKED CVRA SHOWING HOW |
| 89:25:00 | (INAUDIBLE) CASE VOTE IN 2018 |
| 89:30:00 | WAS RACIALLY POLARIZED. |
| 89:32:00 | TONIGHT YOU DEFIANTLY DEN |
| 89:33:00 | IRREFUTABLE EVIDENCE. |
| 89:36:00 | YOU HAVE DONE NO STUDY AND HAVE |
| 89:38:00 | NO BASIS TO DENY LIABILITY IN |
| 89:38:00 | COURT. |
| 89:40:00 | UNTIL DECEMBER 12, CVRA ALLOWED |
| 89:43:00 | YOU TO AVOID LITIGATION, ENTER |
| 89:44:00 | AGREEMENT WITH US AND EXTEND |
| 89:48:00 | TIME FOR HEARINGS. |
| 89:49:00 | CITY ATTORNEY MADE IT IMPOSSIBLE |
| 89:50:00 | TO DO SO. |
| 89:51:00 | MY CLIENTS HAD TO WAIVE THEIR |
| 89:54:00 | RIGHT TO BE REPRESENTED AT |
| 89:56:00 | HEARINGS IN VIOLATION OF THE |
| 89:57:00 | CITY'S OWN CHARTER. |
| 90:00:00 | WE HAD TO AGREE NOT TO INTERFERE |
| 90:03:00 | OR OBJECT TO PROCESS OR TO MAP |
| 90:05:00 | EVEN IF THEY VIOLATED CALIFORNIA |
| 90:07:00 | FAIR ACT. |
| 90:08:00 | REJECTED STATUTORY TERMS TO |
| 90:11:00 | SCHEDULE HEARING AND SHOW HOW |
| 90:14:00 | DELAY WOULD INCREASE RATHER THAN |
| 90:16:00 | EXHAUST PUBLIC INPUT. |
| 90:19:00 | AFTER DEADLINE MY CLIENTS WROTE |
| 90:20:00 | VIEW ABOUT IMPACT YOUR |
| 90:22:00 | CONSTITUENTS WERE RIGHT TO |
| 90:23:00 | CONTACT YOU DIRECTLY. |
| 90:26:00 | I DON'T AGREE WITH YOUR ATTORNEY |
| 90:27:00 | CLAIM THAT THEIR eMAIL WAS |
| 90:29:00 | ANGRY AND HE THREATENED A |
| 90:31:00 | BACKLASH. |
| 90:34:00 | UNTIMELY OPPORTUNISTIC |
| 90:36:00 | ULTIMATELY MEANINGLESS |
| 90:39:00 | RESOLUTION FULFILLS PREDICTIONS. |
| 90:41:00 | REFUSE TO COMMIT TO 2022 |
| 90:43:00 | CLAIMING THAT COVID COULD |
| 90:44:00 | PREVENT REGISTRAR FROM |
| 90:47:00 | CONDUCTING BY DISTRICT |
| 90:48:00 | ELECTIONS. |
| 90:50:00 | HER TAFFE HAD NO PROBLEM IN 2020 |
| 90:52:00 | USING A MAP SH THAT SHE WAS |
| 90:53:00 | GIVEN IN JUNE. |
| 90:55:00 | NO EMERGENCY ORDER CAN IMMUNIZE |
| 90:57:00 | YOU IN A SITUATION WHERE PEOPLE |
| 90:58:00 | HAD TO CHOOSE BETWEEN PUBLIC |
| 91:00:00 | HEALTH AND ATTENDING HEARINGS |
| 91:03:00 | (INAUDIBLE) CAME TO PASS. |
| 91:04:00 | TELECONFERENCES TOLLING DOES NOT |
| 91:04:00 | APPLY. |
| 91:06:00 | STATE'S MOST AGGRESSIVE |
| 91:09:00 | MUNICIPAL LAWYER PUBLICLY TOLD A |
| 91:10:00 | CLIENT IT WOULD COST 250,000 |
| 91:13:00 | JUST TO MAKE THAT ARGUMENT. |
| 91:15:00 | IT WILL LOSE SO YOU WILL PAY FOR |
| 91:17:00 | ALL OF MY RESEARCH AND 50 YEARS |
| 91:18:00 | OF ADVERSE PRECEDENT IN OUR |
| 91:22:00 | STATE AND 20 OTHERS WITH THE |
| 91:23:00 | SAME NIXON ERA LAW. |
| | HEED GOVERNOR SCHWARZENEGGER |
| 91:25:00 | WHO |
| 91:28:00 | CALLS FOR A LAW TO PREVENT USING |
| 91:30:00 | COVID AS EXCUSE FOR SUPPRESSING |
| 91:31:00 | THE VOTE WHICH IS WHAT AT LARGE |

| | |
|---|---|
| 91:33:00 | ELECTIONS DO. |
| 91:36:00 | THAT CONCLUDES THE RA, FROM |
| 91:37:00 | SCOTT RAFFERTY. |
| 91:40:00 | >> WHEN DID THAT eMAIL COME |
| 91:41:00 | IN. |
| 91:41:00 | >> 5 P.M. |
| 91:43:00 | >> 5 TODAY? |
| 91:46:00 | >> COUNCIL MEMBER HOWELL IT WAS |
| 91:49:00 | MISADDRESSED TO YOU, I REFORDED |
| 91:51:00 | IT TO YOU LATER. |
| 91:57:00 | YOU DID NOT RECEIVE IT DIRECTLY. |
| 91:57:00 | >> (INAUDIBLE). |
| 92:00:00 | >> NEXT eMAIL IS FROM CARLOL |
| 92:02:00 | (INAUDIBLE WHO WRITES PLEASE |
| 92:05:00 | READ DURING ITEM 10. |
| 92:06:00 | YOUR CITY ATTORNEY WAS FORTUNATE |
| 92:07:00 | TO HAVE HAD AN OPPORTUNITY TO |
| 92:10:00 | WORK WITH SCOTT RAFFERTY. |
| 92:13:00 | NO ONE RETAINS DR. RAFFERTY |
| 92:15:00 | UNLESS THEY INTEND TO HAVE AN |
| 92:17:00 | ADVOCATE DEDICATED TO EVERY |
| 92:20:00 | DISENFRANCHISED MINORITY. |
| 92:21:00 | IN (INAUDIBLE) HE FOUND COMMON |
| 92:26:00 | CAUSE AMONG OPPOSING VIEWPOINTS |
| 92:27:00 | LEADING HARSH CRITIC OF DISTRICT |
| 92:30:00 | ELECTIONS TO APOLOGIZE TO HIM ON |
| 92:31:00 | THE RECORD. |
| 92:32:00 | IN ANOTHER CASE HE STOOD UP TO |
| 92:34:00 | PERSONAL ATTACKS THAT REPELLED |
| 92:36:00 | ASIANS WHO SPOKEN IN SUPPORT. |
| 92:38:00 | AND IN RICHMOND HE AGAIN HAD TO |
| 92:40:00 | STAND IN FOR LATINO CITIZENS |
| 92:43:00 | AFTER COUNCIL MEMBER USED FOUL |
| 92:44:00 | LANGUAGE AND CALLED THEM |
| 92:46:00 | MEXICANS. |
| 92:49:00 | AND IN NAPA VALLEY, USD, HE |
| 92:50:00 | REPRESENTED LATINO CITIZENS HE |
| 92:52:00 | CRITICIZED SPLITTING A DISTRICT |
| 92:56:00 | THAT WAS 47% FILIPINO BUT HAD |
| 93:01:00 | LOW TURNOUT. |
| 93:04:00 | HE HAS IMPROVED QUALITY |
| 93:05:00 | INTEGRITY AND PUBLIC ACCEPTANCE |
| 93:07:00 | OF PUBLIC HEARING PROCESS IN |
| 93:10:00 | EVERY CASE IN WHICH HE HAS |
| 93:10:00 | PARTICIPATED. |
| 93:12:00 | SCOTT TRIES TO WORK WITH EVERY |
| 93:14:00 | JURISDICTION BUT HE WAS WAY TOO |
| 93:16:00 | GENEROUS WITH CITY OF FOLSOM. |
| 93:20:00 | HELP ADVISED CLIENTS TO DELAY |
| 93:21:00 | FILING PETITION UNTIL LATE |
| 93:22:00 | OCTOBER 2020 IN HOPES THAT THE |
| 93:24:00 | CITY COULD AVOID HAVING TO DRAW |
| 93:26:00 | MAPS AND THEN REDRAW THEM AFTER |
| 93:29:00 | 2020 CENSUS DATA ARE AVAILABLE. |
| 93:31:00 | BUT GIVEN THE DELAY, UNLESS YOU |
| 93:34:00 | WANT TO FINISH HEARING BY MARCH |
| 93:36:00 | YOU NEEDED AN EXTENSION THAT YOU |
| 93:37:00 | CANNOT GET WITHOUTIES CLIENT'S |
| 93:39:00 | WRITTEN AGREEMENT TO SCHEDULE |
| 93:40:00 | HEARINGS AND PROVIDE EXTRA |
| 93:42:00 | OPPORTUNITY FOR INPUT. |
| 93:45:00 | THIS IS NOT A STRONG NEGOTIATING |
| 93:48:00 | POSITION WHY DID YOUR CITY |
| 93:50:00 | ATTORNEY DEMAND THAT RAFFERTY |
| 93:51:00 | SHALL NOT SPEAK AT ANY PUBLIC |
| 93:54:00 | HEARING OR ANY WORKSHOP? |
| 93:55:00 | THIS WAS NOT JUST AN INSULT AND |
| 93:57:00 | DID NOT JUST EXCLUDE HIS CLIENTS |
| 93:59:00 | FROM MAKING PARTICIPATION. |
| 94:01:00 | IT IS A VIOLATION OF YOUR OWN |
| 94:03:00 | CITY CHARTER. |
| 94:07:00 | SCOTT MAY HAVE EXPERIENCE FROM |
| 94:08:00 | CVRA HEARINGS IN MORE |
| 94:10:00 | JURISDICTIONS THAN ANYONE ELSE, |
| 94:11:00 | THE CITY ATTORNEY REJECTED EVERY |
| 94:14:00 | ONE OF HIS SUGGESTIONS FOR |
| 94:15:00 | ENGAGING THE PUBLIC. |
| 94:18:00 | YOU HAD THE OPPORTUNITY TO |
| 94:19:00 | PRESIDE OVER GENUINE |
| 94:20:00 | COLLABORATION REACHING OUT TO |
| 94:23:00 | ENTIRE COMMUNITY AND INSTEAD THE |
| 94:24:00 | CITY ATTORNEY'S UNTIMELINESS, |
| 94:26:00 | ARROW BEGAN AND DISREGARD FOR |
| 94:29:00 | THIS LAW HAS FORCED A LAWSUIT. |
| 94:34:00 | AND IT IS SIGNED CARLOS. |
| 94:36:00 | >> The Chair: TO LATINA CAUCUS |
| 94:37:00 | CALIFORNIA DEMOCRATIC PARTY. |
| 94:39:00 | THE LAST eMAIL THAT WE |
| 94:42:00 | RECEIVED TODAY IS FROM JUSTIN |
| 94:44:00 | AND JUSTIN WRITES MAYOR |

94:47:00 KOZLOWSKI AND COUNCIL MEMBERS.
94:50:00 WE ALL KNEW THIS DAY WOULD COME
94:52:00 ATTORNEY SCOTT RAFFERTY HAS BEEN
94:53:00 EXTORTING CITIES AND SCHOOL
94:54:00 DISTRICTS FOR A DECADE FOR
94:55:00 PERSONAL GAIN.
94:57:00 I IMPLORE YOU TO NOT USE OUR TAX
94:59:00 DOLLARS TO PAY HIM OFF.
95:01:00 I UNDERSTAND THE DESIRE TO NOT
95:03:00 SPEND TAX DOLLARS IF THE END
95:05:00 RESULT IS THAT WE ARE LIKELY TO
95:07:00 LOSE THE CASE, BUT SANTA MONICA
95:09:00 HAS SUCCESSFULLY DEFENDED
95:12:00 AT-LARGE VOTING SYSTEM.
95:13:00 APPEALS COURT RULED THAT VOTER
95:15:00 DILUTION IS REQUIRED ELEMENT OF
95:18:00 CALIFORNIA VOTING RIGHTS CLAIM.
95:23:00 SO PLEASE ASK WHETHER FOLSOM HAS
95:23:00 VOTER DILUTION.
95:24:00 COULD WE MAKE DISTRICT WHERE
95:26:00 MINORITY IS MAJORITY?
95:30:00 SANTA MONICA COULD NOT AND BASED
95:31:00 ON 2,010-CENT USE DATA IN
95:32:00 RAFFERTY'S OWN LETTER IT WOULD
95:35:00 NOT BE POSSIBLE IN FOLSOM.
95:36:00 WE WOULD PREVENT MINORITY VOTING
95:37:00 FROM BANDING TOGETHER ACROSS THE
95:40:00 CITY TO ELECT CANDIDATE
95:42:00 DECREASING MINORITY BLOCK VOTING
95:45:00 POWER IN MULTIPLE DISTRICTS.
95:47:00 MOVING TO DISTRICTS MAKE
95:49:00 MINORITY REPRESENTATION MORE
95:50:00 LIKELY?
95:52:00 ACCORDING TO LA TIMES CITY THAT
95:54:00 SWITCHED DISTRICTS IN RESPONSE
95:56:00 TO LITIGATION DEMANDS BETWEEN
95:59:00 JUNE 2016 AND APRIL 2017, LESS
96:01:00 THAN ONE THIRD SAW INCREASE IN
96:03:00 MINORITY REPRESENTATION.
96:06:00 AND FINALLY, WOULD MOVING TO
96:08:00 DISTRICT BENEFIT OUR CITY?
96:10:00 WE NEED TO LOOK AT OTHER
96:13:00 DISTRICT BASED ELECTION CITIES
96:14:00 WITH TURF BATTLES TO SEE THIS
96:17:00 WOULD BE FOLSOM'S FUTURE.

96:18:00 RESIDENTSES WOULD NO LONGER GET
96:20:00 TO VOTE ON CITY COUNCIL EVERY
96:23:00 TWO YEARS AND FOR FIVE SEATS BUT
96:24:00 LIMBED TO VOTING EVERY FOUR
96:26:00 YEARS AND ONLY ON ONE COUNCIL
96:26:00 MEMBER.
96:28:00 COUNCIL MEMBERS WOULD HAVE
96:29:00 LITTLE INCENTIVE TO FOLLOW WHAT
96:32:00 IS BEST FOR THE CITY AS A WHOLE.
96:34:00 URGE YOU TO USE OUR TAX DOLLARS
96:38:00 TO STUDY WHETHER VOTER DILUTION
96:40:00 IS OCCURRING IN FOLSOM BEFORE
96:41:00 DECLARING YOUR INTENT TO MOVE TO
96:43:00 DISTRICT-BASED ELECTION.
96:45:00 PLEAD WITH YOU TO RESPECT CITY'S
96:49:00 CHARTER AND NOT USE STATE
96:50:00 LEGISLATIVE AUTHORITY TO
96:52:00 OVERRULE THE DOCUMENT WITHOUT
96:53:00 VOTE OF THE PEOPLE THANKS FOR
96:57:00 YOUR TIME THIS EVENING SIGNED
96:57:00 JUSTIN.
96:59:00 >> AND MAYOR KOZLOWSKI ONE
97:00:00 LETTER THAT CAME IN TODAY I
97:05:00 DON'T BELIEVE THE CLERK HAD FROM
97:08:00 IAN CORNELL.
DEAR MAYOR KOZLOWSKI AND
97:09:00 MEMBERS
97:10:00 OF CITY COUNCIL.
97:13:00 AS BUSINESS OWNER AND DEEP TIES
97:15:00 TO THE COMMUNITY OPPOSE SUPPOSED
97:17:00 MOVE FROM CITY WIDE AT LARGE
97:19:00 ELECTIONS TO DISTRICT-BASED
97:19:00 ELECTIONS.
97:21:00 NOT WARRANTED JUSTIFIED OR
97:22:00 PRUDENT IN OUR CITY.
97:27:00 FOLSOM IS NOT AILING FROM DOWSE
97:28:00 THIS ACTION PURPORTS TO CURE.
97:29:00 CONSIDERATION WAS PROMPTED BY A
97:32:00 LETTER FROM SCOTT RAFFERTY
97:34:00 ATTORNEY WORKING FROM HIS HOME
97:34:00 NEARLY 100 MILES AWAY.
97:36:00 BASES ARGUMENTS ON CALIFORNIA
97:37:00 VOTING RIGHTS ACT WHICH IS A
97:39:00 COTTAGE INDUSTRY FOR ATTORNEY
97:41:00 WHOSE USE IT NOT FOR BETTER

| | | | |
|---|---|---|---|
| 97:42:00 | FINANCE MINISTER OF | 99:23:00 | CONTINUE TO SELECT ASTUTE |
| 97:43:00 | MUNICIPALITIES BUT TO EXTORT | 99:24:00 | LEADERS TO GUIDE OUR CITY AND |
| 97:44:00 | SETTLEMENTS OF LEE FEES FROM | 99:25:00 | MAKE BEST DECISION EVEN IN |
| 97:47:00 | RESIDENTS OF THOSE COMMUNITIES. | 99:27:00 | TOUGHEST OF TIMES. |
| 97:49:00 | CALIFORNIA VOTING RIGHTS ACT IS | 99:28:00 | GENDER OR COLOR OF SKIN HAVE NOT |
| 97:52:00 | INTENDED TO MAKE IT EASIER FOR | 99:30:00 | AN SHOULD NOT BE FACTORS WHEN |
| 97:54:00 | MINORITY GROUPS TO IMPROVE | 99:31:00 | ELECTING BEST LEADERS. |
| 97:58:00 | REPRESENTATION IN AT LARGE | 99:33:00 | ONE OF MY BIGGEST CONCERNS IN |
| 97:59:00 | ELECTIONS. | 99:35:00 | DISTRICT ELECTIONS IT LIMITS |
| 98:01:00 | FOLSOM DOES NOT HAVE THAT. | 99:38:00 | VOTERS TO CASTING BALLOTS FOR |
| 98:03:00 | GROWING DIVERSITY INCLUDES | 99:38:00 | ONE COUNCIL MEMBER EVERY FOUR |
| 98:05:00 | RESIDENTS OF VARIOUS ETHNICITY | 99:40:00 | YEARS CURRENTLY VOTE FOR TWO OR |
| 98:07:00 | SPREAD EVENLY IN THE CITY SHOWN | 99:43:00 | THREE COUNCIL MEMBERS EVERY TWO |
| 98:08:00 | ON MAP INCLUDED IN THE LETTER | 99:43:00 | YEARS. |
| 98:10:00 | FROM MR. RAFFERTY. | 99:46:00 | IF DISTRICT ELECTS COUNCIL |
| 98:12:00 | FOLSOM VOTERS DO NOT HAVE | 99:47:00 | MEMBER THE RESIDENTS ARE STUCK |
| 98:15:00 | HISTORY OF REJECTING MINORITY | 99:48:00 | WITH THAT REPRESENTATION FOR |
| 98:19:00 | CANDIDATES AND NOW WITH ELECTION | 99:50:00 | FOUR YEARS UNDER THAT SCENARIO |
| 98:22:00 | OF ROZ REGS AND CHALAMCHERLA | 99:52:00 | WITH OTHER FOUR COUNCIL MEMBERS |
| 98:24:00 | MR. RAFFERTY ARGUMENTS BECOME | 99:55:00 | FOCUSED ON CONSTITUENTS IN THEIR |
| 98:25:00 | (INAUDIBLE) HIS LETTER CLAIMS | 99:56:00 | DISTRICTS LARGE AREAS OF FOLSOM |
| 98:29:00 | 13% ARE ASIAN WITH ELECTION OF | 99:58:00 | WOULD BE UNDERREPRESENTED FOR |
| 98:33:00 | YY 20% OF CITY COUNCIL IS ASIAN. | 99:59:00 | FOUR YEARS WITH NO RECOURSE. |
| 98:36:00 | MR. RAFFERTY LETTER CLAIMS 11% | 100:01:00 | FOLSOM MAYORS AND COUNCIL |
| 98:39:00 | EVER LATINO, ELECTION OF | 100:02:00 | MEMBERS HAVE BEEN CAPABLE OF |
| 98:43:00 | RODRIGUEZ 20% IS LATINO/LATINA. | 100:04:00 | SERVING CITY AS A WHOLE AND NOT |
| 98:45:00 | RA RAFFERTY LETTER STATES IF ALL | 100:06:00 | JUST NEIGHBORHOODS AND NOT DOING |
| 98:47:00 | LATINA VOTERS LOCATED IN ONE | 100:09:00 | UNNECESSARY BATTLES ENSUING WITH |
| 98:49:00 | DISTRICT AND ALL ASIAN VOTERS IN | 100:10:00 | ALLOCATION OF FUNDS, PARKS, |
| 98:51:00 | ANOTHER EACH GROUP WOULD BE | 100:11:00 | TRAILS, STREET MAINTENANCE |
| 98:55:00 | CAPABLE OF FORMING MAJORITY | 100:13:00 | EMERGENCY SERVICES AND MORE |
| 98:55:00 | DISTRICT UNQUOTE. | 100:15:00 | (INAUDIBLE) ELECTED |
| 98:58:00 | DESPITE BEING BEARLY TRUE IT IS | 100:16:00 | REPRESENTATIVES WERE JUST |
| 98:59:00 | (INAUDIBLE) NOT CONCENTRATED IN | 100:17:00 | RESPONSIBLE FOR NEIGHBORHOOD |
| 99:02:00 | SINGLE SEPARATE DISTRICTS IN | 100:20:00 | SURROUNDING RESIDENTS, A REST |
| 99:04:00 | FOLSOM SPREAD IN THE CITY | 100:21:00 | PIP TEE FOR DISASTER. |
| 99:06:00 | PROPOSING A CURE FOR DISEASE | 100:23:00 | YOU ARE IN THE POSITION DECIDING |
| 99:07:00 | FROM WHICH FOLSOM DOES NOT | 100:26:00 | BETWEEN SPENDING WOULD CAN BE |
| 99:08:00 | SUFFER. | 100:28:00 | MILLIONS OF DOLLARS, INTO OUR |
| 99:10:00 | THAT BRINGS UP A BIGGER | 100:34:00 | CIVIC PROCESS OR ACQUIESCING TO |
| 99:11:00 | SIGNIFICANT AND IMPORTANT | 100:39:00 | DEMANDS OF ATTORNEYS WHO LIVES |
| 99:12:00 | QUESTION. | 100:40:00 | 100 MILES AWAY. |
| 99:14:00 | DO WE OR SHOULD WE VOTE FOR | 100:41:00 | (INAUDIBLE) MY PREFERENCE WOULD |
| 99:16:00 | PEOPLE BECAUSE THEY LOOK LIKE US | 100:42:00 | BE TO LEAVE ELECTION PROCESS AS |
| 99:21:00 | OF COURSE NOT, DO NOT BREED THA- | 100:43:00 | IS WITH COUNCIL MEMBERS DECIDED |

| | |
|---|---|
| 100:46:00 | BY CITY WIDE VOTE OF ELIGIBLE |
| 100:48:00 | VOTERS, IF DISTRICT ELECTIONS |
| 100:50:00 | ARE TO BE CONSIDERED I HOPE IT |
| 100:52:00 | IS A BALLOT MEASURE TO GIVE |
| 100:54:00 | VOTERS A VOICE BASED ON MER ITS |
| 100:56:00 | OF PROPOSAL INSTEAD OF THE LEGAL |
| 100:57:00 | EXTORTION OF OUR CITY. |
| 101:01:00 | I HOPE THAT CITY OF FOLSOM WILL |
| 101:04:00 | FATE UNTIL CENSUS DATA IS |
| 101:05:00 | AVAILABLE TO DETERMINE HOW |
| 101:10:00 | DISTRICT LINES WILL BE DRAWN IAN |
| 101:17:00 | CORNELL. |
| 101:26:00 | >> IS THAT EVERYTHING? |
| 101:34:00 | COUNCIL FOR COMMENTARY START OUT |
| 101:37:00 | BY SOMETHING BROUGHT UP AT THE |
| 101:37:00 | BEGINNING. |
| 101:43:00 | TIMING OF THIS PUBLIC HEARING. |
| 101:48:00 | THE ISSUE OF CVRA FROM AT LARGE |
| 101:50:00 | TO BY DISTRICT HAS BEEN WELL |
| 101:52:00 | DOCUMENTED REGIONALLY HAD FOUR |
| 101:55:00 | JURISDICTIONS IN THE LAST YEAR, |
| 101:58:00 | YEAR AND A HALF GONE THROUGH THE |
| 101:59:00 | PROCESS. |
| 102:02:00 | FOLSOM CORDOVA UNIFIED SCHOOL |
| 102:04:00 | DISTRICT LITERALLY TODAY IT LAST |
| 102:05:00 | YEAR. |
| 102:06:00 | INHERENTLY, MAINLY FOR BENEFIT |
| 102:08:00 | OF THOSE LISTENING, MR. KLEIN |
| 102:11:00 | KNOWS THIS, CVRA MAKES A PIECE |
| 102:14:00 | OF THE PROCESS A DEMAND LETTER |
| 102:18:00 | BE SENT SO AGENCY. |
| 102:20:00 | ONCE THAT DEMAND LETTER IS |
| 102:21:00 | RECEIVED THAT INHERENT SLY A |
| 102:24:00 | THREAT OF LAWSUIT AND MUST BE |
| 102:26:00 | DEALT WITH BY THE COUNCIL IN A |
| 102:27:00 | CLOSED SESSION MEETING. |
| 102:30:00 | WHICH WE DID DO IN DECEMBER. |
| 102:31:00 | WE HAVE NOT HAD A MEETING SINCE |
| 102:32:00 | THAT DAY. |
| 102:33:00 | TODAY IS OUR FIRST OPPORTUNITY |
| 102:35:00 | TO ADDRESS THIS. |
| 102:36:00 | AND THAT IS WHY THE TIMING OF |
| 102:38:00 | THIS IS WHAT IT IS. |
| 102:40:00 | BUT THERE HAS BEEN PLENTY OF |
| 102:42:00 | OPPORTUNITY FOR PEOPLE TO |
| 102:48:00 | DISCUSS OR FORM AN OPINION ABOUT |
| 102:50:00 | CVRA REGIONALLY. |
| 102:51:00 | PASS TO IT MY COLLEAGUES FOR |
| 102:55:00 | COMMENTS THEY WOULD LIKE TO |
| 102:57:00 | MAKE. |
| 102:59:00 | >> MAYOR, I KNOW I HEARD SEVERAL |
| 103:01:00 | TIMES EVERYBODY SAYING THAT |
| 103:03:00 | (INAUDIBLE) ELECTIONS FOR CITY |
| 103:09:00 | WILL BE (INAUDIBLE) BY JUST |
| 103:10:00 | DOING THE -- |
| 103:12:00 | IS THAT EVERYTHING FROM |
| 103:13:00 | (INAUDIBLE) HELP ON |
| 103:19:00 | CLARIFICATION PLEASE? |
| 103:21:00 | >> CHRIS DID ANALYSIS OF THE |
| 103:22:00 | COSTS. |
| 103:24:00 | >> THERE IS SOME COST REDUCTION |
| 103:27:00 | AND THE WAY THAT ELECTIONS ARE |
| 103:29:00 | COSTED OUT BY THE COUNTY, THERE |
| 103:31:00 | IS A BASE SET-UP FEE AND THEN |
| 103:35:00 | THERE IS A PER REGISTERED VOTER |
| 103:38:00 | FEE. |
| 103:42:00 | RIGHT NOW CITY PAYS BASE SET-UP |
| 103:44:00 | FEE AND PER EVERY SINGLE |
| 103:45:00 | REGISTERED VOTER FEE SPREADING |
| 103:47:00 | THAT OVER THE CITY. |
| 103:48:00 | IF YOU TRANSITION TO DISTRICTS |
| 103:50:00 | ELECTIONS THEN IN ONE YEAR WHEN |
| 103:53:00 | YOU HAVE THREE SEATS UP YOU WILL |
| 103:55:00 | PAY SAME BASE SET-UP FEE AND |
| 104:00:00 | ONLY PAYING FOR THREE FIFTH OF |
| 104:01:00 | REGISTERED VOTERS THAT ELECTION |
| 104:06:00 | AND NEXT ELECTION YOU WILL PAY |
| 104:07:00 | FOR TWO FIFTH OF THE REGISTRED |
| 104:09:00 | VOTERS, SOME COST SAVINGS |
| 104:09:00 | ASSOCIATED WITH IT. |
| 104:13:00 | >> THE NUMBERS THEY ARE USING |
| 104:14:00 | (INAUDIBLE) FOR PROBABLY THE ONE |
| 104:16:00 | (INAUDIBLE) IF YOU DO. |
| 104:19:00 | >> IF YOU DO TWO FIFTH ONE CYCLE |
| 104:21:00 | RATHER THAN ALL OF THE VOTERS |
| 104:23:00 | AND THEN THREE FIFTH IN THE |
| 104:24:00 | SUBSEQUENT CYCLE YOUR |
| 104:25:00 | EFFECTIVELY GOING FROM ONE |
| 104:27:00 | ELECTION, OR FROM TWO ELECTIONS |
| 104:30:00 | TO ONE ELECTION. |

| | | | |
|---|---|---|---|
| 104:32:00 | SPLIT BETWEEN TWO CYCLES. | 106:14:00 | IN ALL OF THE COMMENTS WE HEARD |
| 104:33:00 | >> WHAT IS THE DOLLARS THAT WE | 106:16:00 | PLUS 30, NOT ONE PERSON SAID I'M |
| 104:35:00 | ARE TALKING ABOUT? | 106:19:00 | A PERSON OF COLOR AND I DO NOT |
| 104:39:00 | >> THIS YEAR ELECTION WAS JUST | 106:21:00 | FEEL THAT THE CITY OF FOLSOM |
| 104:40:00 | UNDER 60,000. | 106:23:00 | REPRESENTS ME WELL. |
| 104:41:00 | >> WE COULD SAVE? | 106:25:00 | AND CALIFORNIA VOTERS RIGHTS ACT |
| 104:44:00 | >> YOU WOULD BE ESSENTIALLY -- | 106:29:00 | IS ABOUT MINORITIES |
| 104:46:00 | >> 60 AND 40% BETWEEN THE TWO | 106:29:00 | REPRESENTATION. |
| 104:50:00 | ELECTIONS IS THE WAY YOU WOULD | 106:31:00 | IN GETTING PEOPLE ELECTED, |
| 104:51:00 | DISTRIBUTE THAT COST. | 106:34:00 | PEOPLE OF COLOR ELECTED. |
| 104:51:00 | >> OKAY. | 106:37:00 | SO THOSE OF JUST MY COMMENTS. |
| 104:52:00 | >> THANK YOU. | | >> CITY ATTY IF I MAY ADDRESS THAT |
| 104:59:00 | >> I HAVE SOME COMMENTS. | 106:38:00 | REAL |
| 104:59:00 | >> PLEASE. | 106:40:00 | QUICK MR. MAYOR AND MEMBERS OF |
| 105:02:00 | >>ROSARIO SO YOU KNOW,IN TALKING TO | 106:41:00 | CITY COUNCIL. |
| 105:03:00 | PEOPLE, SOMETHING THAT WAS VERY | 106:42:00 | CALIFORNIA VOTING RIGHTS ACT |
| 105:05:00 | IMPORTANT WAS INTEGRITY AND | 106:47:00 | DOES NOT CARE ABOUT CANDIDATES. |
| 105:10:00 | TRANSPARENCY AND INFORMATION I | 106:49:00 | IT CARES ABOUT THE VOTERS. |
| 105:12:00 | (INAUDIBLE) AND I DON'T FEEL | 106:51:00 | MINORITY VOTERS CAME ALL |
| 105:15:00 | THAT WE HAVE DONE A GOOD JOB IN | 106:56:00 | TOGETHER IN TIGHT COMPACT GROUP |
| 105:18:00 | COMMUNICATING THIS ISSUE TO THE | 106:58:00 | (INAUDIBLE) NO ISSUE. |
| 105:20:00 | RESIDENTS, THAT THERE COULD BE A | 107:00:00 | THE PROBLEM HERE IF THAT |
| 105:22:00 | SUBSTANTIAL CHANGE TO WAY THAT | 107:04:00 | HAPPENS, THEN THAT IS A WAY TO |
| 105:25:00 | FOLSOM IS GOVERNED. | 107:09:00 | DEMONSTRATE WHAT IS THE |
| 105:27:00 | I LOOK AT THIS ISSUE, I LOOK AT | 107:09:00 | (INAUDIBLE). |
| 105:29:00 | MOVING TO DISTRICT ELECTIONS | 107:13:00 | >> THANK YOU. |
| 105:33:00 | WILL NOT BE SOLVING A PROBLEM | 107:17:00 | >> I HAVE A COUPLE OF COMMENTS. |
| 105:34:00 | THAT MINORITIES CANNOT GET | 107:18:00 | >> GO AHEAD. |
| 105:37:00 | ELECTED, AS MANY HAVE SAID, YK | 107:19:00 | >> HOWELL IT GOES BACK TO MIKE'S |
| 105:39:00 | AND I ORGANICALLY WERE ELECTED | 107:21:00 | RESPONSE TO BRUCE ABOUT WHAT THE |
| 105:42:00 | TO OFFICE FROM A LOT OF HARD | 107:22:00 | TIMING WAS. |
| 105:42:00 | WORK. | 107:26:00 | AND THERE HAS BEEN A FAIR AMOUNT |
| | AND THE OUTCOME WAS | 107:28:00 | OF DISCUSSION IN THE BACKGROUND |
| 105:49:00 | OVERWHELMING | 107:32:00 | I KNOW I HAVE MET WITH SOME OF |
| 105:50:00 | WHEN I LOOK AT THE CITY OF | 107:33:00 | THE PEOPLE AND PEOPLE FROM |
| 105:52:00 | FOLSOM AND I SEE THAT WE DON'T | 107:35:00 | FOLSOM DEMOCRATIC CLUB. |
| 105:53:00 | HAVE UNDERREPRESENTED MINORITIES | 107:38:00 | THAT WAS A YEAR AND A HALF AGO. |
| 105:55:00 | IN OUR COMMUNITY, ON THE | 107:40:00 | I'M PRETTY MUCH GOING TO SAY |
| 105:56:00 | CONTRARY, WE SEE SOME OF THE | 107:43:00 | TONIGHT WHAT I SAID TO YOU THAT |
| 105:58:00 | ISSUES THAT THIS HAS CREATED FOR | 107:43:00 | DAY. |
| 106:02:00 | OTHER CITIES. | 107:44:00 | PART OF THE REASON FOR THE |
| 106:03:00 | BUT NOW THAT WE HAVE PEOPLE OF | 107:47:00 | DISCUSSION HAPPENING NOT |
| 106:05:00 | COLOR ELECTED TO COUNCIL, I | 107:49:00 | NECESSARILY IN THE CITY'S |
| 106:08:00 | CONTINUE TO ASK WHY ARE WE STILL | 107:51:00 | NEWSLETTER OR ANYWHERE SELLS |
| 106:12:00 | ADVOCATING FOR DISTRICTS. | 107:53:00 | THAT CITY OF FOLSOM HAS BEEN |

| Time | Text |
|---|---|
| 107:56:00 | LIVING IN FEAR OF GETTING DEMAND |
| 107:56:00 | LETTER. |
| 107:59:00 | WE HAVE BEEN WATCHING OVER TIME |
| 108:01:00 | FOR THE LAST SEVERAL YEARS WHEN |
| 108:04:00 | SANTA MONICA TRIED TO OVERCOME |
| 108:08:00 | IT, WHEN PALMDALE AND THE OTHER |
| 108:09:00 | CITIES THROUGHOUT THE STATE |
| 108:11:00 | ATTEMPTED TO RESIST GOING TO |
| 108:12:00 | DISTRICTS. |
| 108:13:00 | I DO NOT BELIEVE DISTRICTS ARE |
| 108:15:00 | GOOD FOR CITY OF FOLSOM. |
| 108:18:00 | I'M A LITTLE BIT FRANKLY |
| 108:20:00 | INSULTED THAT FOLKS THOUGHT THEY |
| 108:23:00 | SHOULD SEND SAME eMAIL WORDED |
| 108:25:00 | SAME WAY AND THEY LIVE IN |
| 108:26:00 | DIFFERENT NEIGHBORHOODS. |
| 108:28:00 | I LIVE CLOSE TO THOSE |
| 108:30:00 | NEIGHBORHOODS MIKE DOES, SARAH, |
| 108:32:00 | YK AND ROSARIO, WE ALL LIVE |
| 108:34:00 | CLOSE TO NEIGHBORHOODS. |
| 108:35:00 | ALL OF US KNOW WHAT IS GOING ON |
| 108:37:00 | IN NEARLY EVERY NEIGHBORHOOD IN |
| 108:38:00 | FOLSOM. |
| 108:40:00 | TO SUGGEST THAT I'M ONLY WORRIED |
| 108:42:00 | ABOUT WHAT HAPPENS IN MY OWN |
| 108:43:00 | NEIGHBORHOOD OR THAT I WOULD |
| 108:45:00 | ONLY BE WORRIED ABOUT WHAT |
| 108:47:00 | HAPPENS IN MY OWN NEIGHBORHOOD |
| 108:48:00 | THAT IS NOT A VALID COMMENT. |
| 108:52:00 | IT IS NOT THE NATURE OF MY |
| 108:52:00 | PERSONALITY. |
| 108:57:00 | I DO, I DON'T LEAVE FOLSOM ALL |
| 108:59:00 | THAT OFTEN I KNOW WHAT IS GOING |
| 109:01:00 | ON EVERYWHERE IN FOLSOM. |
| 109:03:00 | SUGGESTION THAT THERE IS A |
| 109:04:00 | DIFFERENCE IN INFRASTRUCTURE IN |
| 109:06:00 | ONE NEIGHBORHOOD OR CITY |
| 109:11:00 | SERVICES OR POLICE SERVICES OR |
| 109:14:00 | IN ANY NEIGHBORHOOD IS |
| 109:14:00 | PREPOSTEROUS. |
| 109:17:00 | EACH AND EVERY ONE OF THE PEOPLE |
| 109:19:00 | ELECTED TO CITY COUNCIL FOR THE |
| 109:20:00 | 22 YEARS I HAVE BEEN HERE AND |
| 109:21:00 | BOB WAS ON THE COUNCIL 8 YEARS |
| 109:22:00 | BEFORE I WAS. |
| 109:24:00 | THAT GETS US INTO THE LAST 30 |
| 109:25:00 | YEARS. |
| 109:29:00 | AND TO SUGGEST THAT ALL OF US, |
| 109:31:00 | THAT HAVE SERVED ON THIS CITY |
| 109:33:00 | COUNCIL OVER THAT TIME PERIOD |
| 109:35:00 | HAVE NOT BEEN INORDINATELY |
| 109:36:00 | CONCERNED ABOUT EVERY SINGLE |
| 109:38:00 | THING THAT HAPPENS IN EVERY |
| 109:39:00 | SINGLE NEIGHBORHOOD, ANYTHING |
| 109:41:00 | THAT THERE IS ANYTHING WE CAN DO |
| 109:43:00 | ABOUT, WE GET A LOT OF |
| 109:44:00 | COMPLAINTS ABOUT LITTLE THINGS |
| 109:46:00 | THAT MAYBE WE CAN'T FIX OR |
| 109:48:00 | THINGS THAT ARE SOCIAL IN |
| 109:50:00 | NATURE, THAT THE CITY OF FOLSOM |
| 109:52:00 | DOESN'T HAVE THE RESOURCES OR |
| 109:54:00 | THE ABILITY TO INFLUENCE. |
| 109:56:00 | BUT I WOULD MUCH RATHER KNOW |
| 109:58:00 | THAT ALL FIVE OF THE PEOPLE THAT |
| 110:01:00 | ARE SITTING UP HERE ARE BEHOLDEN |
| 110:03:00 | TO EVERY SINGLE RESIDENT OF CITY |
| 110:05:00 | OF FOLSOM NOT JUST PEOPLE THAT |
| 110:06:00 | LIVE IN NEIGHBORHOODS. |
| 110:10:00 | I'M KIND OF OFFENDED THAT PEOPLE |
| 110:11:00 | HONESTLY BELIEVE THAT THINGS |
| 110:13:00 | WOULD BE ANY BETTER. |
| 110:15:00 | MY APOLOGIES TO ALL OF THE |
| 110:16:00 | COUNCIL MEMBERS IN CITY OF |
| 110:19:00 | SACRAMENTO I WILL USE THEIR |
| 110:22:00 | RECENT ISSUES WITH HOMELESSNESS. |
| 110:24:00 | THE CITY OF FOLSOM, COUNCIL |
| 110:26:00 | MEMBERS HAVE BEEN FIGHTING WITH |
| 110:28:00 | ONE ANOTHER FOR AT LEAST LAST |
| 110:29:00 | FIVE YEARS. |
| 110:31:00 | I HAVE BEEN WITNESS TO SOME OF |
| 110:33:00 | THOSE CONVERSATIONS. |
| 110:35:00 | BECAUSE OF REGIONAL BOARDS AND |
| 110:38:00 | COMMISSIONS THAT I SIT ON. |
| 110:39:00 | EXAMPLE WOULD BE ONE COUNCIL |
| 110:41:00 | MEMBER WANTED TO PUT HOMELESS |
| 110:43:00 | SHELTER ON PROPERTY THAT IS |
| 110:45:00 | CURRENTLY OWNED BY RT BUT NOT |
| 110:48:00 | BEING USED, A WELL OVER BUILT |
| 110:50:00 | PARKING LOT THAT WHERE CARS ARE |
| 110:51:00 | NOT PARKING. |

| | |
|---|---|
| 110:53:00 | SO ONE OF THE COUNCIL MEMBERS IN |
| 110:54:00 | CITY OF SACRAMENTO WANTED TO PUT |
| 110:56:00 | A LARGE HOMELESS SHELTER THERE. |
| 110:59:00 | THAT WAS OPPOSED BY COUNCIL |
| 111:01:00 | MEMBER IN ADJACENT DISTRICT |
| 111:04:00 | BECAUSE IT IS ACROSS THE STREET. |
| 111:05:00 | THOSE ARE THE KINDS OF THINGS |
| 111:07:00 | THAT I DON'T WANT TO SEE. |
| 111:09:00 | THAT IS A GRAPHIC EXAMPLE. |
| 111:11:00 | I DON'T WANT TO FIGHT MIKE OVER |
| 111:13:00 | THIS PARK VERSUS ANOTHER PARK |
| 111:15:00 | VERSUS THIS SECTION OF TRAIL |
| 111:16:00 | VERSUS ANOTHER SECTION OF THE |
| 111:16:00 | TRAIL. |
| 111:19:00 | WE HAVE 52 MILES OF TRAILS. |
| 111:20:00 | THEY CONNECT TO EACH OTHER. |
| 111:23:00 | YOU KNOW, WHAT HAPPENS IN WILLOW |
| 111:25:00 | CREEK WHERE I LIVE, PARK WAY |
| 111:26:00 | WHERE MIKE LIVES OR ON THE OTHER |
| 111:28:00 | SIDE OF THE WATER TREATMENT |
| 111:32:00 | PLANT WHERE ROSARIO LIVES OR IN |
| 111:34:00 | EMPIRE RANCH WHERE SARAH AND YK |
| 111:37:00 | LIVE, WE ALL NEED TO BE BEHOLDEN |
| 111:38:00 | TO NERVE THE CITY OF FOLSOM. |
| 111:40:00 | I HAVE HAD STRONG OPINIONS ABOUT |
| 111:41:00 | THIS ALL ALONG. |
| 111:44:00 | I WAS INITIALLY PROBABLY GOING |
| 111:45:00 | ALONG WITH THIS BECAUSE OF |
| 111:47:00 | THREAT OF LAWSUIT AND NOT |
| 111:49:00 | WANTING TO WASTE ANY OF THE |
| 111:52:00 | MONEY IN THE CITY'S COFFERS |
| 111:54:00 | PARTICULARLY GIVEN THE BUDGET |
| 111:55:00 | HIT WE HAVE TAKEN BECAUSE OF |
| 111:57:00 | EVERYTHING HAPPENED IN THE LAST |
| 111:59:00 | YEAR NOW I'M MORE ADAMANTLY |
| 112:00:00 | OPPOSED TO MOVING FORWARD WITH |
| 112:03:00 | THIS BECAUSE I THINK IT IS |
| 112:04:00 | ABSOLUTELY POSITIVELY THE WRONG |
| 112:06:00 | THING FOR THE 80,000 PEOPLE THAT |
| 112:07:00 | LIVE IN THIS CITY. |
| 112:10:00 | SO AS I SIT HERE TONIGHT I'M NOT |
| 112:11:00 | GOING TO BE WILLING TO SUPPORT |
| 112:12:00 | IT. |
| 112:13:00 | AND IF YOU ASK ME THAT QUESTION |
| 112:15:00 | A MONTH AGO I WOULD HAVE BUT IT |

| | |
|---|---|
| 112:17:00 | WAS TO AVOID LITIGATION. |
| 112:19:00 | I TAKE MR. RAFFERTY LETTER AS |
| 112:21:00 | THREATENING AND I FIND IT |
| 112:23:00 | GALLING THAT HE SENT THAT AT |
| 112:25:00 | 5:00 THIS AFTERNOON. |
| 112:28:00 | SO I'M KIND OF GETTING MYSELF |
| 112:30:00 | AMPED UP ABOUT THIS, I THINK |
| 112:32:00 | DISTRICTS IN CITY OF FOLSOM IS |
| 112:33:00 | ABSOLUTELY POSITIVETIVELY THE |
| 112:34:00 | WRONG THING FOR THE RESIDENTS OF |
| 112:37:00 | THE CITY OF FOLSOM AND THE |
| 112:38:00 | SUGGESTION THAT THE ONLY REASON |
| 112:40:00 | THAT THE FIVE OF US ARE SITTING |
| 112:44:00 | UP HERE IS BECAUSE OF THE |
| 112:45:00 | DEVELOPMENT COMMUNITY OR ANY |
| 112:48:00 | OUTSIDE INFLUENCE IS COMPLETELY |
| 112:49:00 | AND TOTALLY WRONG. |
| 112:51:00 | YOU KNOW, MOST OF US HAVE LIVED |
| 112:53:00 | HERE FOR A LONG TIME. |
| 112:55:00 | I LIVED IN FOLSOM FOR 36 YEARS. |
| 112:57:00 | WHEN I MOVED HERE THERE WAS |
| 112:58:00 | 11,000 PEOPLE. |
| 113:00:00 | I HAVE BEEN ELECTED AND |
| 113:02:00 | REELECTED AND REELECTED BECAUSE |
| | PEOPLE KNOW THAT MY PHONE |
| 113:04:00 | NUMBER |
| 113:05:00 | IS IN THE PHONE BOOK. |
| 113:08:00 | IF THEY SEND ME AN eMAIL I |
| 113:08:00 | WILL RESPOND TO THEM. |
| 113:10:00 | SHOW UP AT MY PLACE OF BUSINESS |
| 113:11:00 | THEY WILL GET MY ATTENTION. |
| 113:13:00 | THAT IF THEY CALL TO MEET WITH |
| 113:16:00 | ME I WILL MEET WITH THEM. |
| 113:17:00 | AND DO I AND ALL OF THE PEOPLE |
| 113:20:00 | THAT HAVE SERVED ON THIS CITY |
| 113:22:00 | COUNCIL HAVE WE ALL COLLECTIVELY |
| 113:23:00 | AND INDIVIDUALLY WORKED VERY, |
| 113:25:00 | VERY HARD TO ENSURE THAT FOLSOM |
| 113:26:00 | REMAINS ONE OF THE BEST PLACES |
| 113:28:00 | TO LIVE IN CALIFORNIA, ONE OF |
| 113:29:00 | THE BEST PLACES TO RAISE A |
| 113:31:00 | FAMILY, ONE OF THE BEST PLACES |
| 113:33:00 | TO RELOCATE BUSINESS AND ONE OF |
| 113:35:00 | THE BEST PLACE TO START A |
| 113:36:00 | BUSINESS I COULD GO ON. |

| Time | Text |
|---|---|
| 113:38:00 | TWO PAGES OF THOSE LISTS ON |
| 113:39:00 | CITY'S WEBSITE. |
| 113:40:00 | THAT IS WHY WE ARE SITTING HERE. |
| 113:43:00 | THAT IS WHY WE GET REELECTED. |
| 113:45:00 | THE BUSINESS COMMUNITY KNOWS |
| 113:46:00 | THAT, RESIDENTS OF CITY OF |
| 113:49:00 | FOLSOM WHETHER THEY ARE OR ARE |
| 113:50:00 | NOT BUSINESS OWNERS THEY KNOW |
| 113:51:00 | THAT, THAT IS WHY WE ARE |
| 113:52:00 | ELECTED. |
| 113:53:00 | IT IS NOT THE DEVELOPMENT |
| 113:54:00 | COMMUNITY. |
| 113:55:00 | I TAKE ALL OF THIS VERY, VERY |
| 113:58:00 | PERSONALLY, I PUT MY HEART AND |
| 114:00:00 | SOUL INTO EVERYTHING THAT THIS |
| 114:01:00 | COUNCIL COLLECTIVELY AND ALL OF |
| 114:05:00 | THE OTHER PEOPLE THAT SERVE ON |
| 114:06:00 | THE COMMISSIONS AND COMMITTEES |
| 114:08:00 | WITN THE CITY OF FOLSOM AND |
| 114:10:00 | FRANKLY IN THIS REGION. |
| 114:11:00 | I WILL CONTINUE TO DO THAT AND I |
| 114:13:00 | TAKE THIS AS AN AFFRONT TO THOSE |
| 114:15:00 | OF US WHO THINK THAT BECAUSE |
| 114:18:00 | THEY HAVE TO PICK UP THE PHONE |
| | MORE THAN ONCE THAT THAT |
| 114:21:00 | SOMEHOW |
| 114:22:00 | DISRESULTS THEIR LIVES. |
| 114:24:00 | I WILL STOP. |
| 114:26:00 | >> -- DISRUPTS THEIR LIVES. |
| 114:29:00 | I WILL STOP. |
| 114:29:00 | >> SARAH. |
| 114:29:00 | >> KOZLOWSKI THANK YOU. |
| 114:31:00 | I THI THERE ARE ADVANTAGES AND |
| 114:33:00 | DISADVANTAGES TO THE AT LARGE |
| 114:35:00 | SYSTEM AND ADVANTAGES AND |
| 114:37:00 | DISADVANTAGES TO DISTRICT |
| 114:37:00 | SYSTEM. |
| 114:39:00 | I THINK THAT ADVANTAGES OF AT |
| 114:42:00 | LARGE SYSTEM OUTWEIGH |
| 114:44:00 | DISADVANTAGES AND ADVANTAGES OF |
| 114:47:00 | AT LARGE SYSTEM OUTWEIGH |
| 114:49:00 | ADVANTAGES OF BY DISTRICT |
| 114:49:00 | SYSTEM. |
| 114:50:00 | REGARDLESS OF WHAT SYSTEM WE |
| 114:52:00 | HAVE IT IS OUR JOB AS ELECTED |
| 114:54:00 | OFFICIALS TO DO WHATEVER WE CAN |
| 114:56:00 | TO MINIMIZE THE DISADVANTAGES |
| 114:58:00 | AND TO REPRESENT OUR CITY THE |
| 115:01:00 | BEST THAT WE CAN. |
| 115:03:00 | I AM NOT INTERESTED IN SPENDING |
| 115:05:00 | MILLIONS OF DOLLARS TO DEFEND |
| 115:07:00 | SOMETHING THAT NO OTHER |
| 115:08:00 | JURISDICTION HAS SUCCESSFULLY |
| 115:09:00 | DEFENDED. |
| 115:11:00 | BUT I DO THINK THAT IT MAKE |
| 115:14:00 | SENSE TO SLOW DOWN AND TO WAIT |
| 115:16:00 | TO TAKE ADVANTAGEF THE |
| 115:18:00 | GOVERNOR'S EXECUTIVE ORDER THAT |
| 115:19:00 | SUSPENDS THESE TIME LINES AND TO |
| 115:24:00 | WAIT FOR 2,020-CENT USE DATA. |
| 115:29:00 | THAT IS WHAT I WOULD LIKE TO DO. |
| 115:35:00 | >> -- FOR THE 2,020-CENT USE 20. |
| 115:42:00 | THAT IS WHAT I WOULD LIKE TO DO. |
| 115:42:00 | >> YK? |
| 115:46:00 | >> IS ORDINANCE GIVING |
| 115:47:00 | MISREPRESENTATION, THE INTENT T- |
| 115:48:00 | DECLARING MAYBE, SENDING WRONG |
| 115:52:00 | SIGNAL THAT WE ARE MOVING THAT |
| 115:56:00 | FROM AT-LARGE TO BY DISTRICT. |
| 115:57:00 | I'M JUST READING THROUGH IT. |
| 115:59:00 | THIS IS WHAT EVERYBODY IS GOING |
| 116:02:00 | TO BE READING IT. |
| 116:02:00 | AGREE. |
| 116:06:00 | WE HAVE NOT SEEN SUCCESS BASED |
| 116:13:00 | ON THE NUMBERS, HAVE NOT SEEN |
| 116:13:00 | CENSUS. |
| 116:15:00 | TO RECEIVE PUBLIC INPUT. |
| 116:19:00 | MOST SAID THAT THEY ARE PRO OR |
| 116:23:00 | OPPOSING SIDE, WE NEED TO |
| 116:24:00 | INCLUDE PUBLIC. |
| 116:26:00 | I KNOW WE ARE ONLY FIVE AND THIS |
| 116:31:00 | PROBLEM IS MORE THAN FIVE IN MY |
| 116:31:00 | OPINION. |
| 116:34:00 | THAT IS (INAUDIBLE) WE ARE NOT |
| 116:35:00 | DECLARING AS FIVE BUT CERTAINLY |
| 116:37:00 | WE ARE LOOKING FOR PUBLIC |
| 116:42:00 | COMMENTS ON THIS MATTER. |
| 116:45:00 | AND FOR 2020 CENSUS AND OTHER |
| 116:46:00 | MATTERS (INAUDIBLE). |
| 116:47:00 | >> OKAY. |

| | |
|---|---|
| 116:48:00 | ALL RIGHT. |
| 116:50:00 | ANY OTHER COMMENTS? |
| 116:51:00 | ALL RIGHT. |
| 117:01:00 | I WILL JUST SAY THIS: THE CVRA |
| 117:03:00 | IS FOR GOOD OR BAD, IT IS AN |
| 117:08:00 | EXAMPLE OF THE STATE LEGISLATURE |
| 117:09:00 | DECLARING CITIES TO BE GUILTY OF |
| 117:10:00 | SOMETHING THAT THEY MAY OR MAY |
| 117:11:00 | NOT BE GUILTY OF. |
| 117:17:00 | IT WORKS FROM A SUPPOSITION THAT |
| 117:20:00 | AT-LARGE ELECTIONS AUTOMATICALLY |
| 117:25:00 | DILUTE THE VOTE OF SOME GROUP OF |
| 117:26:00 | PEOPLE. |
| 117:28:00 | OKAY. |
| 117:30:00 | NOW, THE RESIDENTS OF NATOMA |
| 117:32:00 | STATION ARE NOT A PROTECTED |
| 117:33:00 | CLASS, ALTHOUGH THEY HAVE NOT |
| 117:36:00 | HAD A CITY COUNCIL PERSON FROM |
| 117:40:00 | THAT NEIGHBORHOOD ELECTED IN THE |
| 117:40:00 | PAST. |
| 117:43:00 | BUT TO KERRI'S POINT -- |
| 117:44:00 | >> (INAUDIBLE). |
| | >> B2646TO YOUR POINT, THOUGH, |
| 117:46:00 | THEY |
| 117:47:00 | HAVE HAD FIVE. |
| 117:50:00 | AND A NUMBER OF eMAILS THAT I |
| 117:53:00 | RECEIVED LEFT THE IMPRESSION |
| 117:55:00 | THAT PEOPLE ARE LIVING IN FOLSOM |
| 117:57:00 | CURRENTLY WITH NO REPRESENTATION |
| 117:59:00 | WHATSOEVER BECAUSE THERE IS NOT |
| 118:00:00 | SOMEBODY THAT LIVES DOWN THE |
| 118:03:00 | BLOCK FROM THEM. |
| 118:03:00 | OKAY? |
| 118:06:00 | AND I THINK THAT IS A FAULTY |
| 118:07:00 | PREMISE TO WORK UNDER. |
| 118:11:00 | I DON'T LIVE ANYWHERE NEAR KEVIN |
| 118:12:00 | KIELY HE IS OUR REPRESENTATIVE |
| 118:14:00 | IN THE ASSEMBLY. |
| 118:18:00 | AND IF I WANT TO FIND HIM AND |
| 118:19:00 | PIGEON HOLE HIM AND MAKE HIM |
| 118:21:00 | TALK TO ME I CAN DO THAT IF I'M |
| 118:22:00 | A BIT AGGRESSIVE. |
| 118:25:00 | MAYBE IT IS EASIER FOR ME THAN |
| 118:26:00 | SOME OTHER PEOPLE, HOWEVER, |
| 118:27:00 | ANYBODY CAN DO THAT. |
| 118:29:00 | SAME GOES FOR EVERY OTHER ONE OF |
| 118:31:00 | ELECTED OFFICIALS THAT REPRESENT |
| 118:32:00 | US LOCALLY. |
| 118:35:00 | SO I AGREE WITH KERRI 100%. |
| 118:37:00 | EVERYONE HAS FIVE |
| 118:38:00 | REPRESENTATIVES AND I THINK THAT |
| 118:39:00 | WAS BROUGHT UP BY A COUPLE OF |
| 119:51:00 | WITHIN MY RECOLLECTION AND |
| 119:54:00 | YOU CAN CORRECT ME IF I AM |
| 120:00:00 | WRONG, THERE HAS BEEN JUST IN |
| 120:04:00 | ECTION, THERE HAS BEEN SIX |
| 120:06:00 | INSTANCES WHERE A MINORITY |
| 120:10:00 | CANDIDATE RAN FOR ERECTION. |
| 120:13:00 | ONE -- RAN FOR ELECTION. |
| 120:14:00 | ONE-THIRD OF THOSE WERE |
| 120:16:00 | MY PERSONAL EXPERIENCE AND I |
| 120:19:00 | KNOW THIS IS NOT ABOUT |
| 120:20:00 | CANDIDATES. |
| 120:22:00 | MY PERSONAL EXPERIENCE IT TOOK |
| 120:25:00 | ME EFFECTIVELY FOUR CAMPAIGNS TO |
| 120:28:00 | LAND HERE ON THE CITY COUNCIL |
| 120:29:00 | EPRESENTING PEOPLE BECAUSE IT |
| 120:32:00 | TOOK THAT LONG FOR ME TO WEAR |
| 120:38:00 | OUT SEVERAL PAIRS OF SHOES, |
| 120:40:00 | REFINED THE MESSAGES ABOUT WHAT |
| | MATCHED WHAT MY NEIGHBORS |
| 120:46:00 | WEREAT |
| 120:49:00 | INRESTED IN AND GET TO KNOW |
| 120:50:00 | ENOUGH I MY NEIGHBORS THROUGH |
| 120:52:00 | THE CITY THAT THEY WERE WILLING |
| 120:57:00 | TO TRUST ME WITH THIS JOB. |
| 121:12:00 | HE DID THAT OVER TWO ELECTIO%-@P |
| 121:12:00 | FORWARD. |
| 121:16:00 | THAT GETS PEOPLE ELECTIONS. |
| 121:20:00 | I THINK THEY TRIED TO DISREGARD |
| 121:23:00 | THE REALITY OF HOW ELECTIONS |
| 121:24:00 | ACTUALLY WORK. |
| 121:26:00 | WITH THAT BEING SAID I AM |
| 121:29:00 | WILLING TO ENTERTAIN A MOTION IF |
| 121:36:00 | THERE IS ONE. |
| 121:39:00 | >> DO WE NEED ONE? |
| 121:42:00 | >> THE AGENDA SAYS RESOLUTION. |
| 121:44:00 | YOU CAN TABLE THE ITEM, CONTINUE |
| 121:45:00 | THE ITEM. |
| 121:47:00 | I WOULD MAKE A MOTION TO |

| | | | |
|---|---|---|---|
| 121:52:00 | CONTINUE IT FOR AT LEAST 30-@30. | 124:25:00 | FOLSOM RESIDENTS. |
| 121:55:00 | >> OR UNTIL THE SESSION CENSUS | 124:27:00 | IT IS AN INDIAN AMERICAN OR |
| 121:56:00 | IS BACK. | 124:34:00 | BROWN SKIN, I NEVER FELT IT. |
| 121:59:00 | THAT WILL BE APRIL, MAY, JUNE. | 124:41:00 | THEY ARE TALKING ABOUT THAT ONE. |
| 122:03:00 | ARE TO BE DONE IN MARCH. | 124:45:00 | [INDISCERNABLE] |
| 122:11:00 | START LISTENING TO THE PUBLIC.% | 124:46:00 | FOLSOM RESIDENTS. |
| 122:17:00 | WE ARE REPRESENTING THEM. | 124:50:00 | I WANT TO MAKE THAT POINT CLEAR. |
| 122:33:00 | IT IS NO SECRET. | 124:54:00 | FOLSOM IS NOT LIKE THAT. |
| 122:36:00 | >> WE CAN TABLE TO ANUNSPECIFIED | 124:58:00 | THESE MINORITY THINGS. NEED- |
| 122:36:00 | DATE. | 124:59:00 | >> I WILL ADD ONE MORE COMMENT. |
| 122:41:00 | IT WILL COME BACK TO US IN THE | 125:03:00 | IF YOU GO BACK TO 1996. |
| 122:43:00 | RELATIVELY NEAR FUTURE, AND IN | 125:06:00 | YOU LOOKED AT IT THROUGH 2000. |
| 122:46:00 | THE MEANTIME, WE CERTAINLY CAN | 125:07:00 | 96 IF THE NUMBERS ARE RIGHT, |
| 122:48:00 | GATHER A LOT MORE COMMENTS FROM | 125:10:00 | THAT MEANS SIX PEOPLE RAN THAT |
| 122:49:00 | PEOPLE. | 125:12:00 | WOULD HAVE BEEN CONSIDERED |
| 122:50:00 | THIS WILL LEVEL LAND ON THE | 125:13:00 | MINORITIES AND THREE OF THEM |
| 122:53:00 | COVER OF THE TELEGRAPH THIS | 125:14:00 | WERE ELECTE |
| 122:53:00 | TIME. | 125:20:00 | THAT IS 50% OF THE PEOPLE. |
| 122:56:00 | >> HOWELL I THINK IT IS IMPORTANT THAT | 125:20:00 | >>KAY. |
| 122:58:00 | YOU UNDERSTAND THAT YOU ARE NEW | 125:27:00 | MR. CIT ATTORNEY. |
| 123:00:00 | TO THIS. | 125:24:00 | BEFORE WE PROCEED. |
| 123:02:00 | WE, MIKE AND SARAH AND I HAVE | 125:26:00 | >> I WILL MODIFY THE MOTION TO |
| 123:05:00 | BEEN GETTING E-MAILS ON THIS | 125:30:00 | CONTINUE ON THE CALEND. |
| 123:05:00 | SUBJECT. | 125:32:00 | >> YOU WANT TO EMBARK ON A |
| 123:08:00 | I JUST IN THE LAST THREE DAYS, I | 125:34:00 | PUBLIC EDUCATON PROGRAM |
| 123:11:00 | WOULD SAY I HAVE HAD 15 PHONE | 125:39:00 | >> I WAS GOING TO ASK A QUICK |
| 123:13:00 | CALLS ON THE SUBJECT, AND ALL OF | 125:41:00 | QSTION. |
| 123:15:00 | THE PHONE CALLS THE SUBJECT | 125:53:00 | THE GOVERNOR'S TIMETABLE, THE |
| 123:18:00 | THAT I HAVE GOTTEN IN THE LAST | 125:59:00 | THESE TYPES OF ACTIONS, WILL IT |
| 123:21:00 | THREE TO FOUR DAYS HAVE BEEN NOT | 126:10:00 | START IN THAT EMERGENCY ORDER? |
| 123:26:00 | IN FAVOR OF THIS. | 126:12:00 | >> DOT WE HAVE TO WAIT TO |
| 123:30:00 | >> EVEN WHEN THIS ISSUE WAS A | 126:16:00 | EVERY MONDAY TO FIND OUT WHAT IS |
| 123:37:00 | KNOW ARE AWARE OF THIS.N THE | 126:25:00 | HAPPENING NEXT? |
| 123:42:00 | PEOPLE WHO ARE NOT THE MAJORITY | 126:29:00 | >IT IS THE LACK OF PUBLIC |
| 123:47:00 | DON'T KNOW ABOUT THIS. | 126:39:00 | OUTREACH AND SOMETIS THEY GET |
| | >> YK MY NAME WAS USED | 126:45:00 | TOGETHER TO WORK ON SOMETHIN |
| 123:55:00 | SEVERALSUE.@ | 126:47:00 | THE CVRA IS DIFFERENT. |
| 123:57:00 | TIMES IN SEVERAL COMMUNICATIONS | 126:50:00 | IT HAS A VERY COMPRESSED |
| 124:02:00 | AS A MINORITY CANDIDATE. | 126:50:00 | TIMELINE. |
| 124:09:00 | ONE THING I CAN SAY FOLSOM NEVER | 126:53:00 | IF ATTORNEYS ARE ABLE TO GET AN |
| 124:13:00 | TREATD ME AS A MINORITY | 126:54:00 | AGREEMENT AT THE MOST BY STATUTE |
| 124:13:00 | CANDIDATE. | 126:57:00 | THE AGREEMENT CANNOT BE MORE |
| 124:17:00 | IT IS ABOUT THE DEDICATION AND | 127:00:00 | THAN 90 DAYS. |
| 124:22:00 | TOSSING THE MESSAGE TO THE | 127:05:00 | THE TIMELINE WITHIN TIME PUBLIC |
| | | 127:11:00 | HEARS MUST BE HELD IT IS 90 |

| | |
|---|---|
| 127:15:00 | DAYS. |
| 127:18:00 | THE PUBLIC DISCUSSION AND PUBLIC |
| 127:23:00 | DISCUSSION AND OUTREACH WE HAVE |
| 127:25:00 | STARTED TO EDUCATE THE PUBLIC |
| 127:29:00 | WITH FREQUENTY ASKED QUESTIONS |
| 127:32:00 | AND DOCUMENTS TO GO LIVE% |
| 127:32:00 | TOMORROW. |
| 127:34:00 | WE WILL BE ABLE TO DO THAT. |
| 127:41:00 | CHANGED SOME OF THE TIMELINE |
| 127:43:00 | BECAUSE WE WEREN'T SURE. |
| 127:46:00 | >> HOWELL GIVEN THE INACTION I THINK |
| 127:48:00 | YOU WERE EXPECTING TO APPROVE |
| 127:49:00 | TS TONIGHT. |
| 127:53:00 | I AM ASKING DOES THERET TORE |
| 127:55:00 | RICK TO GO -- RHETORIC TOMORROW% |
| 127:56:00 | NEEDS REVIEWED. |
| 127:58:00 | >> WE ARE GOING TO CHANGE THAT, |
| 128:02:00 | >> IT WILL NOT BE AVAILABLE |
| 128:02:00 | TOMORROW. |
| 128:03:00 | >> PRETTY FAST. |
| 128:06:00 | WE HAVE DONE A LOT OF WORK |
| 128:07:00 | BEHIND-THE-SCENES TO REACH OUT |
| 128:10:00 | TO THE PUBLIC O PROVIDE PUBLIC |
| 128:12:00 | INPUT AND CONSIDERATION AND SO |
| 128:12:00 | ON. |
| 128:15:00 | THAT IS READ TO GO. |
| 128:20:00 | THE STATUTE PROVIDE VERY SHORT |
| 128:21:00 | TIMELI. |
| 128:21:00 | >> ALL RIGHT. |
| 128:25:00 | HAVE A MOTION TO TABLE TO A |
| 128:30:00 | FURE MEETING UNSPECIFIED. |
| 128:30:00 | >> SECOND. |
| 128:35:00 | >> PLEASE CALL THE ROLL. |
| 128:35:00 | >> AQUINO. |
| 128:36:00 | >> YES. |
| 128:39:00 | >> HOW WELL. |
| 128:41:00 | >> YES. |
| 128:42:00 | >> RODRIGUEZ. |
| 128:42:00 | >> YES. |
| 128:45:00 | >> YOU NEED OFFICIAL DIRECTIONS |
| 128:46:00 | TO PLEASE START COMMUNICATING |
| 128:49:00 | THE FREQUENTLY ASKED QUESTIONS |
| 128:53:00 | ABOUT CVRA WHAT IT MEANS? |
| 128:55:00 | >> APPRECIATE THAT BUT WE ARE |
| 128:56:00 | QUITE CLEAR. |

# PLAINTIFFS'

# EXHIBIT 3

Proposed Resolution of Intent
not adopted, January 12, 2021

### RESOLUTION NO. 10575

## A RESOLUTION OF THE CITY COUNCIL OF THE CITY OF FOLSOM DECLARING ITS INTENT TO INITIATE PROCEDURES TO TRANSITION FROM AT-LARGE ELECTIONS TO DISTRICT-BASED ELECTIONS PURSUANT TO CALIFORNIA ELECTIONS CODE SECTION 10010 AND AUTHORIZE RELATED ACTIONS

**WHEREAS,** members of the City Council of the City of Folsom ("City") are currently elected in "at-large" elections, in which each councilmember is elected by the registered voters of the entire City without regard to where the candidates reside; and

**WHEREAS,** throughout California, including in the Sacramento region, litigants are alleging that cities and special districts who conduct at-large elections violate the California Voting Rights Act ("CVRA"), and the City is aware of the threat of litigation if the City does not voluntarily change to a "district-based" system for electing our councilmembers; and

**WHEREAS,** courts have opined that the CVRA and its goal of preventing voter dilution is a matter of statewide concern and, therefore, applies to charter cities; and

**WHEREAS,** pursuant to California Elections Code section 14028, a violation of the CVRA may be established if it is shown that racially polarized voting occurs in elections. Pursuant to California Elections Code section 14026(e), "racially polarized voting" is voting in which there is a difference in the choice of candidates that are preferred by voters in a protected class and between the choice of candidates that are preferred by voters in the rest of the electorate; and

**WHEREAS,** the City Council denies that its election system violates the CVRA or any other provision of law, and asserts that the City's election system is legal in all respects, and further denies any wrongdoing whatsoever in connection with the manner in which City Council elections have been conducted; and

**WHEREAS,** the City is committed to diversity and inclusion with respect to its elections; and

**WHEREAS,** the City Council is aware of the exorbitant cost that multiple cities and other public entities have faced in defending and/or settling CVRA litigation, and the impact that the expenditure of such costs could have on the City's ability to provide essential services to the City's residents and businesses; and

**WHEREAS,** the California Legislature, in amendments to California Elections Code Section 10010, has provided a method whereby a jurisdiction can expeditiously transition to a "district-based" election system and thereby avoid the high cost and risk of litigation under the CVRA; and

Resolution No. 10575
Page 1 of 4

**WHEREAS,** under a "by-district" election system, each City councilmember will be elected only by the voters in the district in which the candidate resides;

**WHEREAS,** Government Code section 34886 authorizes the City to adopt an ordinance to change to a "by-district" system of electing City Councilmembers without submitting the ordinance to the voters for approval; and

**WHEREAS,** public interest would be served and the purposes of CVRA would be furthered by the City Council consideration of a proposal to transition to a "district-based" election system because of the uncertainty of litigation and the potential extraordinary cost of defending a CVRA lawsuit, even if the City ultimately were to prevail; and

**WHEREAS,** prior to the City Council's consideration of an ordinance to establish district boundaries for a "district-based" election system, California Elections Code Section 10010 requires all of the following:

1. Prior to drawing a draft map or maps of the proposed boundaries of the districts, the City Council shall hold at least two public hearings over a period of no more than 30 days, at which the public will be invited to provide input regarding the composition of the districts.

2. After all maps are drawn, the City shall publish and make available for release at least 1 draft map and, if members of the City Council will be elected in their districts at different times to provide for staggered terms, publish the potential sequence of the elections.

3. The City Council shall also hold at least 2 additional hearings over a period of no more than 45 days, at which the public shall be invited to provide input regarding the content of the draft map or maps and the proposed sequence of elections, if applicable.

4. The first version of a draft map shall be published at least 7 days before consideration at a hearing. If a draft map is revised at or following a hearing, it shall be published and made available to the public for at least 7 days before adoption; and

**WHEREAS,** the U.S. 2020 Census data needed to develop a proposal for a "district-based" election system is not yet available from the United States Census Bureau; and

**WHEREAS,** the adoption of a "district-based" election system will not affect the terms of any sitting Councilmember, each of whom will serve out his or her current term.

**NOW, THEREFORE, BE IT RESOLVED** by the City Council of the City of Folsom as follows:

**SECTION 1.** The City Council hereby expresses its intent to transition to a "by-district" (district-based) system of election of its five City Councilmembers, as set forth herein.

**SECTION 2.** The City Council intends to and shall consider adoption of an ordinance to transition to a "by-district" (district-based) election system as authorized by California

Resolution No. 10575
Page 2 of 4

Government Code Section 34886 for use in the City's general municipal election for councilmembers, beginning in November 2022 or the next earliest municipal election if the Sacramento County Voter Registration and Elections Department is unable to implement the new "district-based" election areas for the November 2022 election. The City Council does not, at this time, decide the nature of such "district-based" election. Rather, the details of such system shall be determined only after community outreach and appropriate public hearings.

**SECTION 3.** In order to protect the public health and safety during the period when the State Public Health Officer and other public health officials have determined that it is necessary to engage in physical distancing to minimize the spread of COVID-19, the timeframes in Elections Code section 10010(a) and (e) have been suspended by Governor Newsom in Executive Orders N-34-20 and N-48-20 until further notice.

**SECTION 4.** The City Council intends to commence the process for drawing of district maps for district boundaries consistent with the procedures set forth in Elections Code section 10010, including the holding of public hearings and meetings as required by Elections Code section 10010 and/or other applicable law, once the U.S. 2020 Census data (California redistricting file) is made available from the United States Census Bureau. In the interest of promptly moving forward with the districting and mapping process, staff proposes to evaluate the feasibility of initiating the public meeting and public hearing process while Executive Orders N-34-20 and N-48-20 remain in place.

**SECTION 5.** The City Council directs staff to work with the City's demographer, and with other appropriate consultants as needed, to provide a detailed analysis of the City's current demographics and any other information or data necessary to prepare a draft map that divides the City into voting districts in a manner consistent with the intent and purpose of the CVRA and the Federal Voting Rights Act.

**SECTION 6.** Once the process has been initiated following receipt of the U.S. 2020 Census data (California redistricting file), the City Council directs staff to post or have the demographer post information regarding the proposed transition to a "by-district" (district based) election system, including maps, notices, agendas and other information, to establish a means of communication to answer questions from the public, and to otherwise take the steps necessary to comply with the applicable provisions of the Elections Code.

**SECTION 7.** The City Council will set forth tentative timelines for conducting a public process to solicit public input and testimony on proposed "district-based" electoral maps before the City Council adopts any such map.

**SECTION 8.** If any provision or clause of this Resolution is held invalid, unconstitutional, or otherwise repealed by act of law, such invalidity shall not affect any other provisions or clauses of the same which can be given effect without the invalid provision, clause, or application. To this end, the provisions and clauses of this Resolution hereto are declared to be severable.

Resolution No. 10575
Page 3 of 4

Page 184

**SECTION 9.** This Resolution shall become effective immediately upon its passage and adoption.

**PASSED AND ADOPTED** this 12th day of January 2021 by the following roll call vote:

AYES:      Councilmember(s):

NOES:      Councilmember(s):

ABSENT:      Councilmember(s):

ABSTAIN:      Councilmember(s):


_____

Michael D. Kozlowski, MAYOR

ATTEST:


_____

Christa Freemantle, CITY CLERK

Resolution No. 10575
Page 4 of 4

Page 165

# PLAINTIFFS'

# EXHIBIT 4

N-67-20

## EXECUTIVE ORDER N-67-20

**WHEREAS** on March 4, 2020, I proclaimed a State of Emergency to exist in California as a result of the threat of COVID-19; and

**WHEREAS** on November 3, 2020, California—like the other states of the United States—will hold a General Election, and Californians throughout the state will exercise their right to vote; and

**WHEREAS** while the future course of the COVID-19 pandemic cannot be known with certainty, state, national, and international projections reflect ongoing danger from the pandemic throughout the remainder of this year, and experts believe that COVID-19 will remain a threat to public health during the November election; and

**WHEREAS** California and its counties must take action now—to procure supplies, secure polling places, enlist volunteers, and draw up plans, among other steps—to ensure that the November 3, 2020 General Election is held in a manner that is accessible, secure, and safe; and

**WHEREAS** to preserve public health in the face of the threat of COVID-19, and to ensure that the November election is accessible, secure, and safe, all Californians who are registered to vote in that election must be empowered to vote by mail, as an alternative to in-person voting, where appropriate; and

**WHEREAS** it is also essential to ensure that all Californians who may need access to in-person voting opportunities—including individuals with disabilities, individuals who speak languages other than English, individuals experiencing homelessness, and others who may find vote-by-mail less accessible than in-person voting—are able to access such opportunities and exercise their right to vote; and

**WHEREAS** it is vital that California voters not be disenfranchised as a result of the COVID-19 pandemic, and that the November election be conducted in a way that promotes eligible voters' participation in our democracy; and

**WHEREAS** on May 8, 2020, I issued Executive Order N-64-20, which provides that Californians registered to vote in the November 3, 2020 General Election shall receive vote-by-mail ballots; and

**WHEREAS** as contemplated by Executive Order N-64-20, my Administration has been working and continues to work in partnership with the Legislature and the Secretary of State concerning the implementation of requirements for in-person voting opportunities and other details and fiscal impacts of the November election, and nothing in this Order is intended to limit legislative action on those subjects; and

**WHEREAS** it is now critical—given counties' pressing need to take action to prepare for the November election, as recognized in Executive Order N-64-20—that counties be able to prepare to meet requirements for in-person voting opportunities and to implement other details of the November election; and

**WHEREAS** to curb the spread of COVID-19, in-person voting opportunities for the November election must be made available in sufficient numbers to prevent overcrowding and to otherwise maintain physical distancing at in-person voting locations; and

**WHEREAS** public and private entities and individuals are encouraged to cooperate with county elections officials in administering the November election (including by volunteering their time and property, where appropriate), and county elections officials are encouraged to consider using all mechanisms provided by existing law to secure voting locations and elections personnel for that election, which may include the use of public buildings (such as school buildings and state office buildings) pursuant to Elections Code sections 12283–12284, and which may (in light of the threat posed by the COVID-19 pandemic) also include the assignment of public employees as disaster services workers pursuant to Government Code section 3100; and

**WHEREAS** under the provisions of Government Code section 8571, I find that strict compliance with various statutes specified in this Order would prevent, hinder, or delay appropriate actions to prevent and mitigate the effects of the COVID-19 pandemic.

**NOW, THEREFORE, I, GAVIN NEWSOM,** Governor of the State of California, in accordance with the authority vested in me by the State Constitution and statutes of the State of California, and in particular, Government Code sections 8567, 8571, and 8627, do hereby issue the following Order to become effective immediately:

## IT IS HEREBY ORDERED THAT:

1) As provided by Executive Order N-64-20, all Californians who are registered (and otherwise eligible) to vote in the November 3, 2020 General Election shall receive vote-by-mail ballots. Consistent with Elections Code section 2226, this provision is not intended, and shall not be construed, to mean that voters in an inactive voter registration status shall receive vote-by-mail ballots in connection with the November 3, 2020 General Election.

2) Notwithstanding any contrary provision of state law (including, but not limited to, Elections Code sections 3019.5 and 3019.7), all county elections officials are required to use the Secretary of State's vote-by-mail ballot tracking system, created pursuant to Elections Code section 3019.7, and to use Intelligent Mail Barcodes on all vote-by-mail ballot envelopes.

3) Notwithstanding any contrary provision of state law (including, but not limited to, any such provision of Elections Code sections 12200–12286 or 12288, and specifically including the requirement in Elections Code section 12286(a)(3) that at least one polling place be designated per precinct), a county that is not subject to the California Voter's Choice Act shall not, in connection with the November 3, 2020 General Election, be required to make available more than one polling place per 10,000 registered voters, as long as the county complies with all of the following conditions:

      a)     At least one polling place per 10,000 registered voters is made available for voting during the following hours:

              i)     From Saturday, October 31, 2020, through Monday, November 2, 2020, for at least eight hours (during regular hours convenient for members of the public) each day; and

              ii)     On Tuesday, November 3, 2020, from 7 a.m. until 8 p.m.

      b)     At least the following number of vote-by-mail ballot drop-off locations (as defined in Elections Code section 3025(a)(2)) is made available for ballot drop-off beginning no later than 9 a.m. on Tuesday, October 6, 2020, and continuing during regular business hours each day through the close of voting on Tuesday, November 3, 2020:

              i)     At least one vote-by-mail ballot drop-off location per 15,000 registered voters; and

              ii)     Not less than two vote-by-mail ballot drop-off locations regardless of the number of registered voters; and

      c)     At least one vote-by-mail ballot drop-off location required by subparagraph (b) is fully accessible to the public for at least twelve hours each day (during regular hours convenient for members of the public) between Tuesday, October 6, 2020 and Tuesday, November 3, 2020, inclusive.

4) Notwithstanding any contrary provision of state law (including, but not limited to, any such provision of Elections Code section 4005 or section 4007, as applicable), a county that is subject to the California Voter's Choice Act shall not, in connection with the November 3, 2020 General Election, be required to open any vote center (as that term is used in Elections Code sections 357.5, 4005, and 4007) prior to Saturday, October 31, 2020. Counties are nevertheless encouraged to open vote centers earlier, where feasible and as conditions warrant, to maximize opportunities for voter participation in the November 3, 2020 General Election.

5) Notwithstanding any contrary provision of state law (including, but not limited to, any such provision of Elections Code section 4005(a)(10)), no county elections official shall be required to conduct any in-person public meetings or workshops in connection with the preparation of plans for the administration of the November 3, 2020 General Election, as long as a draft of each such plan is posted on the relevant county election official's website in a manner consistent with Elections Code section 4005(a)(10)(E)(iii) and the relevant county elections official accepts public comment on the draft plan for at least 10 days. Counties are encouraged to take additional steps, where feasible, to facilitate and encourage public participation in the development of such plans.

6) Nothing in this Order is intended, or shall be construed, to limit a county's ability to fulfill the requirements imposed on that county by existing law (including, but not limited to, any provision of law conditionally suspended by Paragraph 3 as to counties not subject to the California Voter's Choice Act) concerning procedures for the November 3, 2020 General Election. In particular, any county described in Paragraph 3 that complies with all such requirements applicable to that county (and that therefore need not avail itself of the conditional suspension set forth in Paragraph 3) may do so without additionally satisfying any separate requirements that would otherwise be imposed by Paragraph 3. Additionally, where feasible, counties are encouraged to exceed the minimum requirements imposed by this Order, or otherwise imposed by law in connection with the administration of the November 3, 2020 General Election, to maximize opportunities for voter participation in that election.

7) The Legislature and the Secretary of State are requested to continue working in partnership with my Administration to ensure that the November 3, 2020 General Election is safe, secure, and accessible for all, including by ensuring (and by working with county elections officials to ensure) that there is sufficient voter education and outreach to prepare voters to participate in that election. Nothing in this Order is intended, or shall be construed, to limit in any way the enactment of legislation concerning the November 3, 2020 General Election.

**IT IS FURTHER ORDERED** that as soon as hereafter possible, this Order be filed in the Office of the Secretary of State and that widespread publicity and notice be given of this Order.

This Order is not intended to, and does not, create any rights or benefits, substantive or procedural, enforceable at law or in equity, against the State of California, its agencies, departments, entities, officers, employees, or any other person.

**IN WITNESS WHEREOF** I have hereunto set my hand and caused the Great Seal of the State of California to be affixed this 3rd day of June 2020.

_____

GAVIN NEWSOM
Governor of California

**ATTEST:**

_____

ALEX PADILLA
Secretary of State

# PLAINTIFFS'

# EXHIBIT 5

Newsom v. Superior Court for Sutter County
Petition for Writ of Mandamus

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

| | |
|---|---|
| **GAVIN NEWSOM, in his official capacity as Governor of the State of California,**<br><br>Petitioner,<br><br>**v.**<br><br>**THE SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF SUTTER,**<br><br>Respondent,<br><br>**JAMES GALLAGHER and KEVIN KILEY,**<br><br>Real Parties in Interest. | Case No.<br><br>[Related to Case No. C092070] |

Sutter County Superior Court, Case No. CVCS20-0912
Honorable Sarah Heckman (Civil: (530) 822-3304)

**PETITION FOR EXTRAORDINARY
WRIT OF MANDATE, PROHIBITION, OR
CERTIORARI; APPLICATION FOR
TEMPORARY STAY; MEMORANDUM
OF POINTS AND AUTHORITIES**

**IMMEDIATE STAY REQUESTED –
NOVEMBER 13, 2020 STATEMENT OF
DECISION; STAY DENIED BY THE
TRIAL COURT ON NOVEMBER 13, 2020**

XAVIER BECERRA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney
General
BENJAMIN M. GLICKMAN
Supervising Deputy Attorney
General
JAY C. RUSSELL
Deputy Attorney General

*JOHN W. KILLEEN
Deputy Attorney General
State Bar No. 258395
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-6045
  Fax: (916) 324-8835
  Email: John.Killeen@doj.ca.gov
*Attorneys for Petitioner Governor
Gavin Newsom*

## CERTIFICATE OF INTERESTED PARTIES

Pursuant to rules 8.208 and 8.488 of the California Rules of
Court, Petitioner Governor Gavin Newsom hereby certifies,
through his undersigned counsel, that there are no interested
entities or persons that must be listed in this certificate.

Dated:  November 16,
2020

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
BENJAMIN M. GLICKMAN
Supervising Deputy Attorney General
JAY C. RUSSELL
Deputy Attorney General


*/s/ John W. Killeen*
JOHN W. KILLEEN
Deputy Attorney General
*Attorneys for Petitioner Governor
Gavin Newsom*

# TABLE OF CONTENTS

**Page**

Certificate of Interested Parties ...................................................... 2

Introduction ..................................................................................... 14

Petition for Writ of Mandate .......................................................... 19

Jurisdiction ...................................................................................... 19

Authenticity of Exhibits ................................................................. 19

Parties .............................................................................................. 19

Relevant Factual and Procedural History ..................................... 20

I.    The COVID-19 Pandemic .......................................... 20

II.   California's Efforts to Protect the November 2020 Election from the Effects of the COVID-19 Pandemic .................................................................... 21

    A.    Executive Order N-64-20 ................................. 21

    B.    Executive Order N-67-20 ................................. 23

    C.    AB 860 and SB 423 .......................................... 26

    D.    Governor Newsom Formally Rescinded Executive Orders N-64-20 and N-67-20 ........ 28

III.   This Lawsuit ............................................................. 29

    A.    Real Parties' Complaint .................................. 29

    B.    Real Parties' Demand for Relief and Application for Temporary Restraining Order ................................................................ 29

    C.    Pre-Trial Proceedings ..................................... 31

    D.    The Trial And Post-Trial Proceedings ........... 32

Issues Presented ............................................................................. 35

Appeal is an Inadequate Remedy ................................................... 37

Beneficial Interest .......................................................................... 38

Application for an Immediate Stay ................................................. 38

# TABLE OF CONTENTS
## (continued)

                                                                    **Page**

Prayer for Relief .......................................................................... 38

Memorandum of Points and Authorities ..................................... 40

I.    Standard of Review ................................................. 41

II.   Argument ................................................................. 41

      A.    The Trial Court Erred by Not Dismissing
            the Case as Moot ............................................. 41

            1.    Real Parties' Challenge to
                  Executive Order N-67-20 Is Moot
                  Because Legislation Has
                  Superseded the Order ........................... 42

            2.    Real Parties' Challenge to
                  Executive Order N-67-20 Is Also
                  Moot Because the Election It
                  Concerned Has Taken Place ................. 45

            3.    The Existence of Other,
                  Unspecified Executive Orders Does
                  Not Make This Challenge to
                  Executive Order N-67-20
                  Justiciable, or Justify the Trial
                  Court's Overbroad Relief ...................... 46

            4.    No Exception to Mootness Applied ...... 48

      B.    The Trial Court Erred in Holding that
            Executive Order N-67-20 Was Unlawful ....... 50

            1.    Executive Order N-67-20 Was
                  Authorized by the Emergency
                  Services Act ......................................... 51

                  a.    Executive Order N-67-20 Is
                        Supported by the Plain Text
                        of the Emergency Services
                        Act ................................................. 52

# TABLE OF CONTENTS
## (continued)

**Page**

|  | b. | Executive Order N-67-20 Is Consistent with Historical Practice Accepted Without Objection by the Legislature ...... 55 |
|  | c. | The Trial Court's Contrary Interpretation Conflicts With the Statute's Plain Language, Undermines Its Purpose, and Threatens Enormous Practical Harm............................ 58 |

C. The Governor's Interpretation of the Emergency Services Act Does Not Violate Separation-of-Powers Principles.................... 64

D. The Trial Court Erred by Excluding Items from Evidence........................................ 68

III. Conclusion ................................................................. 71

### a.   Executive Order N-67-20 Is Supported by the Plain Text of the Emergency Services Act

Executive Order N-67-20 is a valid exercise of the Governor's authority under the Emergency Services Act to suspend regulatory statutes and to issue order using the police powers vested in the State.

Executive Order N-67-20 is a valid exercise of the Governor's power under the Emergency Services Act to "suspend any regulatory statute, or statute prescribing the procedure for conduct of state business." (Gov. Code, § 8571.)  This power plainly extends to the Elections Code, because the provisions of that Code are both regulatory statutes (*Anderson v. Celebrezze* (1983) 460 U.S. 780, 788 [recognizing "the state's important regulatory interests" in elections, italics added]), and statutes prescribing procedures for the conduct of state business (see, e.g., *Field v. Bowen* (2011) 199 Cal.App.4th 346, 356 [describing "state control over the election process for state offices"] [internal citations omitted].)

Executive Order N-67-20 is a conditional exercise of the suspension power granted by the Emergency Services Act. Indeed, in relevant part, the Order describes itself in precisely those terms—as a "conditional suspension" of Election Code provisions identified in Paragraph 3 of the Order.  (I Tab 14, p. 77 [¶ 6].)  A county that wished to avail itself of those statutory suspensions would be required to fulfill certain other requirements as a condition of those suspensions.  By contrast, a county that did not need to avail itself of those suspensions was

free to continue to comply with existing law, without otherwise fulfilling the conditions set forth in the Order. (*Ibid.*)

The Emergency Services Act authorizes the Governor's exercise of his suspension power in a conditional fashion. Section 8571 authorizes the Governor to exercise this suspension power when he determines that "*strict* compliance" with the relevant statute would hinder the response to the emergency. (Gov. Code, § 8571, italics added.) This indicates that the suspension power may be exercised when some compliance is possible, which in turn suggests that, in appropriate circumstances, the suspension power may be used to require something less than "strict" compliance, such as the conditions set forth in Executive Order N-67-20.

Any doubt concerning the Governor's authority to issue orders like Executive Order N-67-20 is dispelled by his broad power to promulgate orders and regulations using the police power vested in the State. Under the Emergency Services Act, the Governor has the power to issue orders with "the force and effect of law." (Gov. Code, § 8567, subd. (a).) Moreover, Government Code section 8627 empowers the Governor, to the extent he finds it necessary, to "exercise . . . all police power vested in the state by the Constitution and laws of the State of California in order to effectuate the purposes" of the Act. (Gov. Code, § 8627.) Where necessary "to effectuate the purposes" of the Act, and in the exercise of such power he may "promulgate, issue, and enforce such orders and regulations as he deems necessary" under Section 8567. (Gov. Code, § 8627.) Government

Code section 8627 thus defines the scope of the "[o]rders and regulations" the Governor may issue under Government Code section 8657. And, where necessary to effectuate the purposes of the Emergency Services Act, that power is broad: "The police power is the power of sovereignty or power to govern—the inherent reserved power of the state to subject individual rights to reasonable regulation for the general welfare." (*Massingill v. Dep't of Food & Agric.* (2002) 102 Cal.App.4th 498, 504 (internal quotations omitted); see also *Candid Enterprises, Inc. v. Grossmont Union High Sch. Dist.* (1985) 39 Cal.3d 878, 885 [the "police power" is "plenary authority to govern" within the relevant jurisdiction's geographic limits].)[9] This power is more than broad enough to authorize orders like Executive Order N-67-20.[10]

---

[9] The trial court inaccurately stated that it had "been provided no authority interpreting the phrase 'police powers' as used in Section 8627," ignoring the Governor's relevant authorities construing the term "police powers." (Compare III Tab 56, p. 172 with III Tab 54, p. 155.)

[10] Indeed, this power would independently suffice to authorize orders like Executive Order N-67-20 even if the Governor could not conditionally suspend relevant state statutes: after the Governor *unconditionally* suspended relevant state statutes (pursuant to Government Code section 8571), the Governor could (pursuant to Government Code sections 8567 and 8627) fill the resulting legal vacuum by issuing new orders with the force and effect of law.

# PLAINTIFFS'

# EXHIBIT 6

Newsom v. Superior Court for Sutter County
Reply in Support of Petition for Writ of Mandamus

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

| | |
|---|---|
| **GAVIN NEWSOM, in his official capacity as Governor of the State of California,**<br><br>Petitioner,<br><br>v.<br><br>**THE SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF SUTTER,**<br><br>Respondent,<br><br>**JAMES GALLAGHER and KEVIN KILEY,**<br><br>Real Parties in Interest. | Case No. C093006<br><br>[Related to Case No. C092070] |

Sutter County Superior Court, Case No. CVCS20-0912
Honorable Sarah Heckman (Main: (530) 822-3300)

**PETITIONER'S REPLY BRIEF IN SUPPORT OF
PETITION FOR EXTRAORDINARY WRIT OF
MANDATE, PROHIBITION, OR CERTIORARI**

XAVIER BECERRA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney
General
BENJAMIN M. GLICKMAN
Supervising Deputy Attorney
General
JAY C. RUSSELL
Deputy Attorney General

\*JOHN W. KILLEEN
Deputy Attorney General
State Bar No. 258395
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-6045
 Fax: (916) 324-8835
 Email:  John.Killeen@doj.ca.gov
*Attorneys for Petitioner Governor
Gavin Newsom*

Document received by the CA 3rd District Court of Appeal.

# TABLE OF CONTENTS

**Page**

Introduction.........................................................................................9

Argument........................................................................................... 11

I.    The Trial Court Erred by Not Dismissing the
Case as Moot ............................................................ 11

    A.    Real Parties' Challenge to Executive
Order N-67-20 Is Moot..................................... 11

    B.    No Exception to Mootness Applied ................ 13

II.    The Trial Court Erred in Holding That
Executive Order N-67-20 Was Unlawful................. 16

    A.    Executive Order N-67-20 Is Supported by
the Plain Text of the Emergency Services
Act.................................................................... 16

    B.    Executive Order N-67-20 Is Consistent
with Historical Practice Accepted
Without Objection by the Legislature ........... 23

    C.    The Trial Court's Contrary Interpretation
Threatens Enormous Practical Harm and
Undermines the Purposes of the
Emergency Services Act ................................. 25

III.    The Governor's Interpretation of the
Emergency Services Act Does Not Violate
Separation-of-Powers Principles.............................. 29

    A.    Executive Order N-67-20 Presented No
Conflict Between the Legislature and the
Governor........................................................... 29

    B.    The Emergency Services Act Is Not an
Unconstitutional Delegation .......................... 32

        1.    The Legislature Determined the
Fundamental Policy............................... 33

        2.    The Emergency Services Act
Prescribes Adequate Standards........... 34

Document received by the CA 3rd District Court of Appeal.

## TABLE OF CONTENTS
## (continued)

**Page**

        3.    The Emergency Services Act
              Includes Sufficient Safeguards ............ 37

IV.   The Trial Court Erred by Excluding Items from
      Evidence .................................................................. 40

Conclusion ...................................................................................... 40

Document received by the CA 3rd District Court of Appeal.

circumstances. (*Kugler v. Yocum* (1968) 69 Cal.2d 371 [after declaring the fundamental policy, the legislature may "confer upon executive or administrative officers the 'power to fill up the details'" via rules and regulations].) As such, the Legislature made the policy judgment to assign authority to the Governor to determine what steps are needed in an emergency context to protect Californians from the emergency—a task that the Legislature itself may not be able to address in time. And in making the fundamental policy determination that the Governor has primary authority to lead the State's emergency response, the Legislature also made the fundamental policy determination that the Governor required flexibility in order to respond to the many of types of emergencies that may occur.

The courts have upheld statutes based on far more general policy goals than these. For example, courts have held that a "general welfare standard" adequately establishes the fundamental policy of a law. (*Rodriguez v. Solis* (1991) 1 Cal.App.4th 495, 510.) A policy of conferring "significant community benefit" also has been found to suffice. (*Sacramentans for Fair Planning v. City of Sacramento* (2019) 37 Cal.App.5th 698, 717.) Here, the Legislature likewise clearly and expressly established the fundamental policy goals that underpin the Act.

### 2. The Emergency Services Act Prescribes Adequate Standards

The Legislature also provided adequate standards to guide implementation of the Act's policy objective. As the Supreme

Document received by the CA 3rd District Court of Appeal.

Court has admonished, to satisfy this requirement, the Legislature need not "articulate a formula" or impose "rigid standards." (*Gerawan Farming, supra,* 3 Cal.5th at pp. 1149, 1150, quotation omitted; *Carson Mobilehome Park Owners' Assoc. v. City of Carson* (1983) 35 Cal.3d 184, 191.) To the contrary, the Legislature may provide the flexibility needed to carry out the fundamental policy it has determined (*Gerawan Farming, supra,* 3 Cal.5th at p. 115), and therefore the "yardstick" it provides need only be "as definite as the exigencies of the particular problem permit." (*Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 168, quotation omitted.) The Act easily satisfies this requirement.

The Act defines when the Governor may exercise the powers granted in section 8627, identifies the purpose for which he may do so, and requires a close nexus with that purpose. In particular, the statute provides that the Governor may exercise the police power vested in the State "[d]uring a state of emergency." (Gov. Code, § 8627.) It also requires that this power be exercised "in order to effectuate the purpose of this chapter" (*ibid.*), which has expressly stated purposes (see *ibid.,* § 8550). And the statute requires a nexus with those purposes: that the exercise of the power shall be only as "necessary" and pursuant to orders issued "in accordance with the provisions of Section 8567" (*ibid.,* § 8627), which authorizes the Governor to make orders and regulations "necessary to carry out the provisions of this chapter" (*ibid.,* § 8567, subd. (a).)

Document received by the CA 3rd District Court of Appeal.

"[W]ith the breadth of potential emergencies" that might confront California, such standards—"the standards of protection of life, property," and so forth, "along with the 'necessary' qualifier"—"are sufficiently specific to guide discretion while appropriately flexible to address a myriad of real-world events." (*Beshear v. Acree* (Ky. Nov. 12, 2020) No. 2020-SC-0313-OA, 2020 WL 6736090, at *22.)  California courts have found adequate guidance where a statute established a fundamental policy of "promotion of 'public . . . welfare" without identifying any factors to be considered. (*Rodriguez v. Solis* (1991) 1 Cal.App.4th 495, 509-510 [explaining that "[t]his, in itself, can be construed as a guideline (to the promotion of public welfare"].)   By expressly requiring the Governor to effectuate the purposes of the Act, which themselves are expressly stated, and requiring a nexus (necessity), section 8627 provides even more guidance.[11]

Real Parties' most dire warnings seem to stem from their refusal to acknowledge that the Emergency Services Act contains this nexus requirement.  Real Parties warn, for example, that Governor's powers under the Act "lead[] ineluctably to a mandate to regulate and reorder the totality of economic and social life." (Return at pp. 50-51.)  Not so: as just explained, the Governor

_____

[11] The formulation "necessary" to effectuate the "purposes" of a "chapter" is used repeatedly throughout California codes. (See, e.g., Pub. Util. Code, § 132354; Food & Agric. Code, § 62724; Pub. Res. Code, § 5090.78; Educ. Code, § 84674; Gov. Code, § 7001; Welf. & Inst. Code, § 19755, etc. etc.)  Accepting Real Parties' argument would thus call into question a large number of other California statutes.

Document received by the CA 3rd District Court of Appeal.

may exercise his powers under the Act as "necessary" under the Act, and no further. And, as will be next discussed, the Act also contains additional safeguards—including, in particular, a temporal limitation on the Governor's authority—to ensure the Governor's powers do not sprawl beyond these limits.

### 3. The Emergency Services Act Includes Sufficient Safeguards

On top of this, the Legislature also enacted additional safeguards to protect against misuse of the power it conferred to the Governor.

*First*, the Governor's orders and regulations must be in writing, and the Governor "shall cause widespread publicity and notice to be given" of such orders and regulations. (Gov. Code, § 8567, subds. (a)-(b).) Such requirements that measures taken under the Act be conducted openly "provides a check on the [Governor's] power." (*Alexander v. State Pers. Bd.* (2000) 80 Cal.App.4th 526, 538.)

*Second*, as previously explained, the Legislature provided standards to cabin the Governor's exercise of the State's police power by providing that the Governor shall act, to the extent necessary, "in order to effectuate the purposes of" the Act. (Gov. Code, § 8627.) Therefore, the Legislature did not merely convey all of the State's police power without limitation or confer unbridled authority to the Governor, but rather authorized the Governor to exercise the State's police power during a proclaimed state of emergency only as reasonably necessary for that purpose.

Document received by the CA 3rd District Court of Appeal.

# PLAINTIFFS'

# EXHIBIT 7

Newsom v. Superior Court for Sutter County
Amicus of CSAC/LCC in Support of Petition for Writ of Mandamus

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
THIRD APPELLATE DISTRICT

**GAVIN NEWSOM, in his official capacity as Governor of the State of California,**

Petitioner,

v.

**THE SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF SUTTER,**

Respondent,

**JAMES GALLAGHER and KEVIN KILEY,**

Case No. C093006

[Related Case No. C092070]

On Petition for Writ of Mandate to the Sutter County Superior
Court, Case No. CVCS20-0912 (Hon. Sarah Heckman)

**[PROPOSED] AMICUS BRIEF OF THE CALIFORNIA
STATE ASSOCIATION OF COUNTIES AND LEAGUE OF
CALIFORNIA CITIES IN SUPPORT OF PETITIONER
GOVERNOR GAVIN NEWSOM**

JAMES R. WILLIAMS (SBN 271253)
*County Counsel*
HANNAH M. KIESCHNICK (SBN 319011)
STEPHANIE L. SAFDI (SBN 310517)
KARUN TILAK (SBN 323939)
OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA CLARA
70 W. Hedding St.

1

Document received by the CA 3rd District Court of Appeal.

East Wing, 9th Floor,
San José, CA 95110
Tel. (408) 299-5900
Fax. (408) 292-7240

Corrie Manning (SBN 278073)
General Counsel
LEAGUE OF
CALIFORNIA CITIES
1400 K Street, Suite 400
Sacramento, CA 95814
Tel: (916) 658-8200
Fax: (916) 658-8240
cmanning@cacities.org

Jennifer Henning (SBN 193915)
General Counsel
CALIFORNIA STATE
ASSOCIATION OF COUNTIES
1100 K Street, Suite 101
Sacramento, CA 95814
Tel: (916) 327-7535
Fax: (916) 443-8867
jhenning@counties.org

*Attorneys for Amicus Curiae*

Document received by the CA 3rd District Court of Appeal.

**2**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................. 4

INTRODUCTION .......................................................................... 6

ARGUMENT .................................................................................. 7

I. The Superior Court's Ruling and Injunction are Impermissibly Vague and Overbroad and They Impair Effective and Coordinated Emergency Response ....................................... 7

   A. The Vague and Capaciously Worded Injunction Provides Scant Guidance as to the Forms of Executive Action It Purports to Restrain .................................................................... 9

   B. The Ruling and Injunction Are a Case Study in Overbreadth, Purporting to Sweep in an Undefined and Indeterminate Universe of Executive Orders Not Before the Court ............................................................................................ 13

   C. The Flawed Ruling and Injunction Chill Local Government Action Taken in Reliance on Emergency Executive Orders ....................................................................... 16

II. The Superior Court's Ruling and Injunction, as Interpreted by Real Parties in Interest, is Ahistorical and Harmful to Local Governance During Emergencies ............................................... 21

   A. Executive Orders have Historically Gone Beyond Mere Unconditional Suspensions of State Law ............................... 21

   B. Executive Orders that Merely Suspend State Law Could Hamstring Local Governments and Create Unworkable Results ..................................................................................... 24

CONCLUSION............................................................................... 29

CERTIFICATE OF WORD COUNT ............................................. 30

Document received by the CA 3rd District Court of Appeal.

3

by agencies that rely on that authority. The prospect of such "uncoordinated, haphazard, or antagonistic action" is anathema to CESA's goal of "control[ling] and coordinat[ing] the efforts of all the various State agencies and local governments to ensure the most efficient and effective response" to an emergency. (*Macias*, *supra*, 10 Cal.4th at p. 856.)

## II. The Superior Court's Ruling and Injunction, as Interpreted by Real Parties in Interest, is Ahistorical and Harmful to Local Governance During Emergencies.

Real Parties in Interest interpret the trial court's ambiguous injunction to limit executive authority under CESA to unconditional suspensions of statutory mandates during emergencies.[1] To the extent the trial court's ambiguous decision can be read in this binary way, this Court should consider that such a reading would be an unprecedented departure from longstanding historical practice and lead to unworkable results that would hamstring local governance during times of crisis.

### A. Executive Orders have Historically Gone Beyond Mere Unconditional Suspensions of State Law.

Past Executive Orders issued under CESA have done more than unconditionally suspend state law during emergencies, and the Legislature has never amended CESA in response.

---

[1] As discussed in Part I.A. above, it is not at all clear that this was the trial court's intended effect, as the court enjoined enforcement of a portion of Executive Order N-67-20 that did nothing more than suspend deadlines such that even an unconditional suspension would appear to violate the trial court's injunction on "amend[ing], alter[ing], or chang[ing]" existing statutory law.

21

Document received by the CA 3rd District Court of Appeal.

For example, state law prohibits price gouging following emergencies for set periods of time but authorizes certain officials to extend the prohibition for an additional 30 days as needed. (Penal Code, § 396.) In response to devastating wildfires, Governor Brown suspended multiple times the temporal limits on price-gouging prohibitions and then extended those prohibitions beyond the 30 days contemplated by law for a period necessary to meet the needs of the emergency. (Governor's Exec. Order No. B-50-18 (Apr. 13, 2018) [waiving time period limitations under Penal Code section 396 and extending price gouging protections through December 4, 2018]; Governor's Exec. Order No. B-51-18 (Apr. 13, 2018) [same for counties impacted by different wildfires through December 4, 2018]; Governor's Exec. Order No. B-59-18 (Nov. 28, 2018) [same through May 31, 2019].) To continue assisting communities recovering from the wildfires, Governor Newsom likewise suspended the temporal limits on price-gouging prohibitions and then extended the prohibitions beyond the 30 days. (Governor's Exec. Order No. N-12-19 (May 31, 2019) [same through December 31, 2019]; Governor's Exec. Order No. N-22-19 (Dec. 31, 2019) [same through December 31, 2020].) The Governor effected such a suspension of temporal limits and extension of price-gouging prohibitions as recently as September 25, 2020 to protect communities recovering from this season's historic wildfires. (Governor's Exec. Order No. N-81-20 (Sept. 25, 2020).)

Real Parties in Interest dismiss these and other historical examples of modifications to statutory mandates by labeling

22

Document received by the CA 3rd District Court of Appeal.

them nothing more than an unconditional suspension of state law. (Return to Writ at p. 38.) The Executive Orders did more: first, they suspended the statutory timeframe; then, they affirmatively established a different timeframe for the protections in order to meet the demands of the emergency. By contrast, under Real Parties in Interest's view of the trial court's injunction, the Governor would be limited to suspending the temporal limitation on the price-gouging prohibition without affirmatively establishing an alternative sunset date. And in any event, the apparent confusion over whether these past Executive Orders merely suspend state law or also alter or make new state law only underscores how inscrutable the trial court's ruling is.

There are other historical examples that extend beyond mere "targeted suspensions." (*Cf.* Return to Writ p. 39.) "In order to quickly provide housing for those displaced by" fires, floods, and mud slides, numerous Executive Orders have suspended for three-year periods the various state laws—such as the Mobilehome Parks Act and sections of the Health and Safety Code—that govern the permitting, operation, and construction of mobilehomes, manufactured homes, and certain types of recreational vehicles. (See, e.g., Governor's Exec. Order No. B-35-15 (Oct. 1, 2015); Governor's Exec. Order No. B-43-17 (Oct. 18, 2017); Governor's Exec. Order No. B-50-18 (Apr. 13, 2018); Governor's Exec. Order No. B-57-18 (Nov. 14, 2018).) In addition to suspending these laws, these Executive Orders also directed the "Department of Housing and Community Development and local enforcement agencies with delegated disaster authority [to]

Document received by the CA 3rd District Court of Appeal.

23

jointly develop permitting, operating, and construction standards" to apply during the three-year suspension period that "shall provide reasonable consistency" with the normal statutory standards and factors. (*Ibid.*) In other words, these Executive Orders suspended state laws that would interfere with recovery efforts and then directed actions that would fill the resulting vacuum left by those suspensions.

Although these Executive Orders went beyond unconditional suspensions in order to meet the demands of the particular emergencies, the Legislature did not amend CESA to prohibit them. (See *Save Our Heritage Org. v. City of San Diego* (2018) 28 Cal.App.5th 656, 668 [courts assume that Legislature is aware of prior practice such that Legislature's failure to change practice in subsequent statutory enactments implies Legislative acquiescence].) The historical practice of modifying statutory mandates in response to a range of declared states of emergencies also underscores just how disruptive such a capacious injunction would be to coordinated emergency response and recovery efforts.

### B. Executive Orders that Merely Suspend State Law Could Hamstring Local Governments and Create Unworkable Results.

Local governments are subject to countless statutory and regulatory requirements. These include statutory timeframes for reviewing and approving development projects, responding to Public Record Act requests, and providing notice to claimants under the Government Claims Act; public noticing following determinations under the California Environmental Quality Act and in advance of official legislative meetings under the Brown

Document received by the CA 3rd District Court of Appeal.

24

Act; various workforce limitations regarding reinstatement, hours, and time for retired annuitants and temporary workers, among others; and more.

These requirements promote core values like timely government action as well as public participation and transparency in governance. But emergencies can severely impede the ability of local governments to comply with these statutory and regulatory requirements in the usual manner and within the usual timeframe. And, as in the case of the COVID-19 pandemic, statutory mandates like those imposing in-person meeting requirements may conflict with and even undermine critical emergency response efforts and compromise public health and safety. Local governments therefore rely on Executive Orders during emergencies in order to obtain relief from various statutory requirements that would otherwise impede their ability to govern or divert resources to emergency response, as well as to fulfill statutory mandates in manners consistent with their management of the crisis. Under the trial court's ruling, Executive Orders must necessarily be limited to suspending a statutory requirement or leaving it intact, but they can not make any modifications to the requirement, even to mitigate the impacts of the suspension and accomplish the legislative intent behind the suspended mandate. This, too, would lead to unworkable results for local governments.

For example, under normal circumstances, the various statutory requirements related to in-person hearings and physical notice promote public participation and transparency.

25

Document received by the CA 3rd District Court of Appeal.

But the unique circumstances of the COVID-19 pandemic make compliance both difficult and dangerous to public health and safety by subjecting government workers and members of the public to risk of exposure to the virus.  Recognizing this reality, Executive Order N-63-20 suspended requirements that public employers post notices on physical "employee bulletin boards" on the condition that the employer provide such notice through electronic means.  (Governor's Exec. Order No. N-63-20, ¶ 10 (May 7, 2020).)  It also suspended certain requirements that parties, witnesses, or the public participate in hearings in person on the condition that participants may access the entire proceeding while it is taking place through alternative, electronic means and the presiding officer otherwise complies with certain civil rights and accessibility requirements.  (*Id.* ¶ 11.)  As described above, other Executive Orders took similar actions with respect to the public meeting requirements under the Brown Act.  (See *supra*, Part I.C.)

Empowering local governments to move certain operations online to protect against the risks associated with in-person gathering promotes the values of transparency and public participation that animate the suspended requirements while assisting with management of the crisis itself.  These conditional suspensions thus afford local governments the flexibility necessary during emergencies to continue governing in a fashion that hews as closely as possible to statutory intent given the circumstances.  But under the trial court's ruling, the Executive Orders must either leave contextually harmful in-person noticing

26

Document received by the CA 3rd District Court of Appeal.

and meeting mandates intact or eviscerate legislative intent by waiving them entirely. This binary choice is damaging to local governments that rely on the alteration of statutory requirements during an emergency in a way that allows them to maintain continuity of operations in a manner most consistent with the underlying purpose of the suspended requirements and their response to the crisis at hand.

Beyond the flexibility that conditional suspensions afford, Executive Orders permitted by CESA also offer critical relief from various statutory deadlines so that local governments implementing continuity of operations plans can focus on addressing the emergency. Under ordinary circumstances, these requirements guarantee timely action by local government. During emergencies, however, when the public workforce may be drastically reduced or redirected, strict adherence to timeframes may disserve the public. For example, County Boards of Equalization or Assessment Appeals Boards are statutorily required to make a final determination on assessment appeals within two years of a timely filed application; if they do not, the applicant's opinion on value is automatically accepted. (Rev. & Tax. Code, § 1604.) Given the various disruptions caused by the COVID-19 pandemic, Executive Order N-72-20 extended to January 31, 2021 the deadline by which Boards must issue decisions on property tax assessment appeals. (Governor's Exec. Order No. N-72-20, ¶ 1 (July 31, 2020).) As another example, agencies normally have 30 days to act on an administrative law judge's proposed decision; if an agency fails to act within 30 days,

Document received by the CA 3rd District Court of Appeal.

27

the proposed decision is deemed adopted by the agency.
Executive Order N-35-20 doubled the time for agency action.
(Governor's Exec. Order No. N-35-20, ¶ 8 (Mar. 21, 2020).)
Likewise, Executive Order N-40-20 extended by 60 days the
deadline for opening and completing investigation of alleged
misconduct by public safety officers.  (Governor's Exec. Order No.
N-40-20, ¶ 15 (Mar. 30, 2020).)

Under the trial court's decision, the Governor could
suspend these statutory deadlines but not affirmatively extend
them to a time certain.  In other words, a Governor would have to
choose between providing much needed relief to local
governments laboring under emergency conditions and providing
predictability to the constituents who rely on timely government
action.  If, faced with this Cornelian dilemma, a Governor chose
not suspend the deadlines because he could not affirmatively
extend them, local governments could be forced to redirect much-
needed resources *away* from emergency response in order to
avoid the penalties that would stem from otherwise missed
deadlines.

As these examples demonstrate, the trial court's decision,
as interpreted by the Real Parties in Interest, is untenable and
would lead to perverse results: less transparent government, less
public participation, and fewer resources devoted to the
emergency at hand.  What Real Parties in Interest label as a
"parade of horribles" (Return to Writ at pp. 29–30) is in fact the
real and practical harm of the trial court's decision, if left to
stand.

Document received by the CA 3rd District Court of Appeal.

28

## CONCLUSION

For the foregoing reasons, CSAC and Cal Cities respectfully urge this Court to grant the relief requested in Petitioner's petition for a writ of mandate directing the trial court to vacate its November 13, 2020 Statement of Decision.

Dated: December 18, 2020           Respectfully submitted,

                            /s/

                            Jennifer Henning
                            California State Association of
                            Counties

                            /s/

                            Corrie Manning
                            League of California Cities

                            COUNTY OF SANTA CLARA
                            JAMES R. WILLIAMS,
                            County Counsel

                            /s/
                            By: Hannah M. Kieschnick
                            Deputy County Counsel

                            Attorneys for *Amici Curiae*
                            California State Association of
                            Counties and League of California
                            Cities

Document received by the CA 3rd District Court of Appeal.

**29**

## CERTIFICATE OF WORD COUNT

Pursuant to Rule of Court 8.204(c)(1), I certify that the foregoing Brief of Amici Curiae California State Association of Counties and League of California Cities in Support of Petitioners contains 5,588 words, including footnotes, but not including the Table of Contents, Table of Authorities, this Certificate, the caption page, or signature blocks.

Dated: December 18, 2020                    Respectfully submitted,

By:      /s/
                Jennifer Henning
                Litigation Counsel
                California State Association of
                Counties

Document received by the CA 3rd District Court of Appeal.

30

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Souza* (1952) 38 Cal.2d 825 .................................. 8, 15

*Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512 ................. 10

*DVD Copy Control Assn., Inc. v. Bunner*
(2003) 31 Cal. 4th 864................................................................ 15

*Evans v. Evans* (2008) 162 Cal.App.4th 1157 .......................... 9, 10

*Flast v. Cohen* (1968) 392 U.S. 83.............................................. 14

*Macias v. State* (1995) 10 Cal.4th 844 .......................... 6, 16, 20, 21

*Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129 ........................... 14

*People ex rel. Gascon v. HomeAdvisor, Inc.*
(2020) 49 Cal.App.5th 1073........................................................ 10

*People v. Custom Craft Carpets, Inc.*
(1984) 159 Cal.App.3d 676 ...................................................... 9, 10

*Pitchess v. Superior Court* (1969) 2 Cal.App.3d 644 ................. 8, 9

*Planned Parenthood Golden Gate v. Garibaldi*
(2003) 107 Cal.App.4th 345....................................................... 15

*Save Our Heritage Org. v. City of San Diego*
(2018) 28 Cal.App.5th 656......................................................... 24

*Weber v. Superior Court* (1945) 26 Cal.2d 144 ............................ 20

## STATUTES

Gov. Code, § 8550......................................................................... 16

Penal Code, § 396.......................................................................... 22

Rev. & Tax. Code, § 1604.............................................................. 27

## EXECUTIVE ORDERS AND PROCLAMATIONS

Governor's Exec. Order No. B-35-15 (Oct. 1, 2015)...................... 23

Governor's Exec. Order No. B-43-17 (Oct. 18, 2017).................... 23

Governor's Exec. Order No. B-50-18 (Apr. 13, 2018) ................... 23

Governor's Exec. Order No. B-51-18 (Apr. 13, 2018) ................... 22

Governor's Exec. Order No. B-57-18 (Nov. 14, 2018)............. 23, 24

Governor's Exec. Order No. B-59-18 (Nov. 28, 2018).................... 22

Governor's Exec. Order No. N-12-19 (May 31, 2019)................... 22

Governor's Exec. Order No. N-22-19 (Dec. 31, 2019)................... 22

Document received by the CA 3rd District Court of Appeal.

4

Governor's Exec. Order No. N-25-20 (Mar. 20, 2020) ............ 16, 17
Governor's Exec. Order No. N-26-20 (Mar. 13, 2020) ................... 18
Governor's Exec. Order No. N-28-20 (Mar. 16, 2020) ................... 18
Governor's Exec. Order No. N-35-20 (Mar. 21, 2020) ................... 28
Governor's Exec. Order No. N-40-20 (Mar. 30, 2020) ................... 28
Governor's Exec. Order No. N-54-20 (Apr. 22, 2020) ................... 18
Governor's Exec. Order No. N-56-20 (Apr. 22, 2020) ................... 18
Governor's Exec. Orders No. N-59-20 (May 1, 2020) ................... 18
Governor's Exec. Order No. N-63-20 (May 7, 2020) ............... 18, 26
Governor's Exec. Order No. N-65-20 (May 19, 2020) ................... 18
Governor's Exec. Order No. N-67-20 (June 3, 2020) ...... 7, 8, 11, 13
Governor's Exec. Order No. N-68-20 (June 5, 2020) ................... 18
Governor's Exec. Order No. N-71-20 (June 30, 2020) ................... 18
Governor's Exec. Order No. N-72-20 (July 31, 2020) ............. 18, 27
Governor's Exec. Order No. N-80-20 (Sept. 23, 2020) ................... 18
Governor's Exec. Order No. N-81-20 (Sept. 25, 2020) ...... 19, 20, 22

Document received by the CA 3rd District Court of Appeal.

5