# EXHIBIT P

STEVEN WANG, State Bar No. 191168
City Attorney
SARI MYERS DIERKING, State Bar No. 226805
Assistant City Attorney
City of Folsom
50 Natoma Street
Folsom, CA 95630
Telephone: (916) 461-6025
Facsimile: (916) 351-0536

Attorneys for Defendant
CITY OF FOLSOM

FILED/ENDORSED
MAR 1 0 2021
By: A. Macias
Deputy Clerk

*(Filing Fee Exempt: Gov. Code § 6103)*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SACRAMENTO

HARI SHETTY, KAVITA SOOD, and NEIGHBORHOOD ELECTIONS NOW

Plaintiffs,

vs.

CITY OF FOLSOM, *et al.*,

Defendants.

Case No. 34-2020-00291639

**CITY OF FOLSOM'S REPLY TO PLAINTIFFS' OPPOSITION TO DEMURRER**

Date: March 17, 2021
Time: 1:30 p.m.
Dept.: 53
Judge: Hon. Shama H. Mesiwala

Reservation No.: 2540569

Complaint Filed: January 5, 2021

**INTRODUCTION**

Executive Order N-48-20 specifically tolls Elections Code section 10010(e)(2), the regulatory prerequisite that a prospective plaintiff must wait 45 days to file suit after sending written notice that a political subdivision's method of conducting elections may violate the California Voting Rights Act (CVRA). Plaintiffs' Complaint was filed while that timeframe is tolled, so the Complaint is premature and subject to demurrer.

Plaintiffs argue that Executive Order N-48-20 does not apply and, even if it does, the

- 1 -
CITY OF FOLSOM'S REPLY TO PLAINTIFFS' OPPOSITION TO DEMURRER

1  Executive Order is unconstitutional. The plain language of Executive Order N-48-20 answers
2  Plaintiffs' first argument. By its terms, the Executive Order applies "to any political subdivision
3  of the State." (Exhibit 3 to the Request for Judicial Notice In Support of City of Folsom's
4  Demurrer to Plaintiffs' Complaint, filed with the City of Folsom's moving papers[1], at ¶ 2.)
5  Plaintiffs' second argument fails because Executive Order N-48-20 is not facially invalid, is not
6  subject to strict scrutiny, and it passes rational basis review. Plaintiffs' remaining arguments go
7  to the merits of the case, which are not at issue in this demurrer.

8  Executive Order N-48-20 does not preclude Plaintiffs from *ever* filing suit to enforce an
9  alleged violation of the CVRA. Once the Executive Order is lifted or the State of Emergency is
10 terminated, the 45-day timeframe in Elections Code section 10010(e)(2) will begin to run and, if
11 it expires without a political subdivision taking action, a complaint filed thereafter would be
12 timely. Because the Executive Order is now in effect, the Complaint is untimely, no amendment
13 can cure the defect, and this Demurrer should be sustained.

14 **ARGUMENT**

15 **1. Executive Order N-48-20 Applies to the City of Folsom**

16 The relevant portion of Executive Order N-48-20 specifically states that the
17 "timeframes set forth in Elections Code section 10010, subdivisions (a) and (e), are suspended as
18 to <u>any political subdivision of the State</u>." (Exhibit 3 at ¶2, emphasis added.) The Executive
19 Order does not contain qualifications or impose conditions or limitations on its broad statewide
20 applicability.

21 Plaintiffs ignore the plain language of Executive Order N-48-20 and argue instead that
22 it does not apply to the City of Folsom because the City has not started the process of changing
23 from at-large to by-district elections and because the City offers remote and in person public
24 participation at City Council meetings. Neither argument changes the clear, unambiguous
25 language of the Executive Order or carves out a "City of Folsom exception" to its statewide
26 applicability.

---

[1] Except as otherwise noted, all future references to Exhibits are references to Exhibits to the Request for Judicial Notice In Support of City of Folsom's Demurrer to Plaintiffs' Complaint, filed with the City of Folsom's Notice of Demurrer and Demurrer to Plaintiffs' Complaint.

1. Plaintiffs' argument that Executive Order N-48-20 does not apply because the City of Folsom has not started the process of changing from at-large to by-district elections improperly assumes liability and artificially imposes a condition in the Executive Order that is not there and does not exist. Plaintiffs pled the existence of vote dilution, which the City of Folsom denies; however, arguing the merits of the case is inappropriate at the demurrer stage of the litigation. The pleadings are not finalized, discovery has not even commenced, and Plaintiffs certainly have not proven their claims. Nevertheless, Plaintiffs attempt to improperly bootstrap their claims of liability into a basis for avoiding compliance with Executive Order N-48-20. Doing so would require the Court to substantially rewrite the Executive Order to add new provisions or replace its plain and unambiguous language. The Court should decline to do so and instead interpret Executive Order N-48-20 as it is worded.

Plaintiffs' argument that Executive Order N-48-20 does not apply to the City of Folsom because it offers in person and remote public access to city council meetings also ignores the plain language of the Executive Order, which applies to all political subdivisions in the State. (Exhibit 3 at ¶ 2.) As explained in the City of Folsom's moving papers, the Governor authorized local legislative bodies to hold public meetings remotely and to provide for remote public participation at those meetings before Executive Order N-48-20 was issued. (*See* Memorandum of Points and Authorities in Support of Demurrer at 12:10-13:3.) Nevertheless, the Governor crafted Executive Order N-48-20 to apply statewide, without regard to whether a local jurisdiction offers remote or in person participation at its public meetings. (Exhibit 3 at ¶ 2.)

Again, Plaintiffs would have this Court rewrite the Executive Order to excuse compliance therewith. Under this argument, Plaintiffs appear to propose that the Executive Order should apply only to local legislative bodies that do not offer remote participation at public meetings. Such a substantial change in the applicability of Executive Order N-48-20 is not supported by its terms or by the Emergency Services Act. Accordingly, the Court should decline to rewrite Executive Order N-48-20 and instead interpret the language as it was drafted.

Plaintiffs also argue that Executive Order N-48-20 should be interpreted in light of its intended purpose. That purpose is clearly articulated in paragraph 2 of the Executive Order itself.

1  Specifically, Executive Order N-48-20 was issued to clarify the scope of Executive Order N-34-20, which contained certain qualifications and limits. (Exhibit 3 at ¶ 2; Exhibit 2 at ¶1.) A comparison of the language in Executive Orders N-34-20 and N-48-20 shows that the Governor specifically chose to broaden, not restrict, the tolling of timeframes in the Elections Code to protect the public by minimizing the spread of COVID-19. Plaintiffs' arguments directly contradict the plain language of Executive Order N-48-20 and the Governor's stated intent to broadly toll the applicable timeframes.

Executive Order N-48-20 applies to the City of Folsom. (Exhibit 3 at ¶ 2.) The Governor did not include conditions or qualifications on its applicability. (*Ibid.*) In fact, the Executive Order specifically removed restrictions that existed in Executive Order N-34-20. (*Ibid.*) By its terms, Executive Order N-48-20 applies to any political subdivision of the State, including the City of Folsom. (*Ibid.*)

### 2. **Executive Order N-48-20 Does Not Violate Government Code Section 8571**

Government Code section 8571 grants the Governor the power to suspend any regulatory statute or any statute prescribing the procedure for the conduct of state business. (Government Code § 8571.) Executive Order N-48-20 cites Government Code section 8571 as the authority for its suspension of the timeframes in Elections Code section 10010(e). (Exhibit 3 at p. 2.)

Plaintiffs argue that the CVRA as a whole and Elections Code section 10010 in particular are not regulatory statutes, so Government Code section 8571 does not authorize the suspension. Plaintiffs' arguments ignore the language of the California Constitution, the findings of the United States Supreme Court, the California Supreme Court, and multiple Courts of Appeal, as well as the language of the Elections Code and the California Emergency Services Act.

The California Constitution describes election laws as regulatory, stating that "[t]he privilege of free suffrage shall be supported by laws regulating elections and prohibiting, under adequate penalties, all undue influence thereon from power, bribery, tumult, or other improper practice." (Cal. Const. Art. VII § 8(b).) Plaintiffs' Complaint alleges, essentially, that the

1  improper practice of vote dilution resulted in undue influence by one group of voters and
2  negatively affected the privilege of free suffrage by another group of voters, all in violation of
3  laws regulating elections and prohibiting such vote dilution (e.g., the CVRA)[2].

4  The United States Supreme Court has also described election codes as regulatory, stating, "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes. To achieve these necessary objectives, States have enacted comprehensive and sometimes complex election codes." (*Anderson v. Celebrezze* (1983) 460 U.S. 780, 788, construing Ohio's statutory deadline for candidacy statements as part of its "regulation of elections" and exercise of the State's "important regulatory interests", citing *Storer v. Brown* (1974) 415 U.S. 724, 730.)

12  The California Supreme Court has also described the Elections Code as regulatory. (*Brown v. Superior Court* (1971) 5 Cal.3d 509, 524: "It is clear that the integrity of elections, essential to the very preservation of a free society, is a matter in which the State may have a compelling regulatory concern." See also *Canon v. Justice Court for Lake Valley Judicial Dist.* (1964) 61 Cal.2d 446, 452.) Various California Courts of Appeal have come to the same conclusion. (*Rubin v. Padilla* (2015) 233 Cal.App.4th 1128, 1141; *League of Women Voters of California v. McPherson* (2006) 145 Cal.App.4th 1469, 1483 n. 12; *Vikco Ins. Services, Inc. v. Ohio Indemnity Co.* (1999) 70 Cal.App.4th 55, 63; *Patterson v. Board of Supervisors* (1988) 202 Cal.App.3d 22, 30.)

21  A Federal District Court recently considered a challenge to the Montana Governor's directive permitting that state's counties to conduct the November 3, 2020 general election partly by mail in ballot in response to the COVID-19 pandemic. (*Donald J. Trump for President, Inc. v. Bullock* 2020 U.S. Dist. LEXIS 181109, Exhibit 8 to the Request for Judicial Notice In Support of City of Folsom's Reply to Plaintiffs' Opposition to Demurrer.) Like Plaintiffs here, the plaintiffs in that case challenged the Montana Governor's power to suspend portions of the state's elections code, arguing that the suspended statute was not a regulatory statute and therefore not properly

---
[2] The City of Folsom denies these allegations.

- 5 -

suspended by the emergency powers granted to the governor by the state legislature. (*Id.* at pp. 29-30.) After reviewing United States Supreme Court precedent, the court determined that "[s]tatutes governing the electoral process are by their very nature regulatory." (*Ibid.*, citing *Anderson, supra,* 460 U.S. 780, 788; *Burdick v. Takushi* (1992) 504 U.S. 428, 433-434; and *Crawford v. Marion County Election Board* (2008) 553 U.S. 181, 203.) In addition, the Federal District Court found that the administration of elections "is quintessentially state business." (*Bullock, supra,* at p. 31, Exhibit 8 to the Request for Judicial Notice In Support of City of Folsom's Reply to Plaintiffs' Opposition to Demurrer.) Although that case is not binding, the analysis of the U.S. District Court for the District of Montana is persuasive.

In this case, a review of the relevant statutory language reveals that the CVRA is a regulatory statute that prescribes procedures for the conduct of the state business of elections, and the provisions of Elections Code section 10010 are no exception. Specifically, Elections Code section 10010 regulates the manner in which a political subdivision changes from an at-large method of election to a district-based election (subdivisions a and b), regulates the commencement of an action to enforce Elections Code sections 14027 and 14028 (subdivision e), and regulates the reimbursement of prospective plaintiffs who send notice of potential violation before a political subdivision changes from at-large to by-district elections (subdivision f).

The suspension of timeframes in regulatory statutes like Elections Code section 10010 is consistent with the language of the California Emergency Services Act. Government Code section 8571 gives the Governor authority to suspend any regulatory statute and any statute prescribing the procedure for conduct of state business where he determines that strict compliance would in any way prevent, hinder, or delay the mitigation of the effects of an emergency. (Government Code § 8571.) Suspending the timeframes in Elections Code section 10010 (e) after the necessary determination by the Governor is consistent with Government Code section 8571 because, as explained above, Elections Code section 10010(e) regulates the commencement of an action for alleged violation of the CVRA by imposing timeframes on prospective plaintiffs and political subdivisions.

The suspension of timeframes in regulatory statutes like Elections Code section 10010

is also consistent with the intent and purpose of the California Emergency Services Act. Compliance with the provisions of Elections Code section 10010 would require political subdivisions to hold multiple public hearings on an issue of central importance to many voters during a global pandemic involving a highly contagious disease. As explained by the Governor, "uncertainty regarding Elections Code section 10010 could ... induce political subdivisions to hold these public hearings ... at a time when public health requires that Californians stay home except for essential needs, and otherwise engage in physical distancing, to minimize the spread of COVID-19." (Exhibit 3 at p. 1.) Holding the hearings during this time "would threaten public health and safety, and would force Californians to choose between fully participating in their democratic process and safeguarding their own health and safety, as well as the health and safety of their communities." (Exhibit 3 at p. 2.) The declaration of purpose and policy in the California Emergency Services Act explains that "[t]he state has long recognized its responsibility to mitigate the effects of ... emergencies that result in ... extreme peril to life... and generally to protect the health and safety and preserve the lives ... of the people of the state." (Government Code § 8550.) Accordingly, the suspension of timeframes that the Governor determined would be likely to threaten public health is consistent with the stated intent and purpose of the California Emergency Services Act.

Elections Code section 10010 is a regulatory statute. Under the circumstances, its suspension is consistent with the language and intent of the California Emergency Services Act. As such, suspension of the timeframes in Elections Code section 10010 was proper and does not violate Government Code section 8571.

**3. Executive Order N-48-20 is Constitutional**

*A. Executive Order N-48-20 is not facially invalid*

When considering the constitutionality of laws, courts make two kinds of decisions: "decisions about whether a law is invalid on its face and in all of its conceivable applications (called 'facial' invalidity), and about whether a particular application of a law is invalid (called 'as-applied' invalidity)." (*Sanchez v. City of Modesto* (2006) 145 Cal.App.4th 660, 665.) A facial challenge is "the most difficult challenge to mount successfully, since the challenger must

establish that no set of circumstances exists under which the Act would be valid." (*Id. at pp.* 678-679, quoting *United States v. Salerno* (1987) 481 U.S. 739, 745.) In this case, Plaintiffs appear to mount a facial challenge to Executive Order N-48-20, but then describe situations in which it might pass constitutional muster. Since even Plaintiffs admit that the Executive Order would be constitutional in certain circumstances (see Opposition at 14:3-8) it is not facially invalid.

B. *Strict scrutiny analysis is unnecessary in this case*

The United States Supreme Court has explained that "to subject every voting regulation to strict scrutiny and require that the regulation be narrowly tailored to advance a compelling state interest, as petitioner suggests, would tie the hands of States seeking to assure that elections are operated equitably and efficiently." (*Burdick, supra,* 504 U.S. at pp. 433-434.) When, as here, "a state election law provision imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions." (*Id.* at p. 434.) When analyzing a facial challenge to the CVRA itself, the Court of Appeal found that rational basis review, rather than strict scrutiny, applied because the act "does not allocate benefits or burdens on the basis of race or any other suspect classification and does not burden anyone's right to vote." (*Sanchez, supra,* 145 Cal.App.4th at p. 680.) "Under rational basis review, ... a law need only bear a *rational relationship* to a *legitimate* governmental interest." (*Id.* at p. 678, emphasis in original, citing *Vacco v. Quill* (1997) 521 U.S. 793.) A similar analysis should apply to executive orders issued pursuant to a declared state of emergency.

In this case, Executive Order N-48-20's tolling of the applicable timeframes is a temporary, reasonable, nondiscriminatory restriction that is justified by the State's important interest in preventing and mitigating the effects of the COVID-19 pandemic and, as such, it passes rational basis review. (See *Anderson, supra,* 460 U.S. at pp. 788-789 and *Sanchez, supra,* 145 Cal.App.4th at p. 680.) Executive Order N-48-20 does not classify individuals by race or burden anyone's right to vote. As explained in the City of Folsom's moving papers, an election occurred in November 2020 while the Executive Order was in place. Plaintiffs' Complaint does not allege otherwise, but instead challenges the at-large method by which Folsom City

- 8 -

Councilmembers are elected and serve, alleging that it improperly dilutes the votes Asian and Latino voters in the community[3]. The next election is not scheduled to occur until November 2022, so even if Plaintiffs were to establish liability, which the City of Folsom denies, there is no imminent threat to the rights of voters. As such, there is no reason for the Court to invalidate the Governor's reasoned conclusion that holding public hearings pursuant to Elections Code section 10010 while physical distancing is necessary to protect public health will prevent, hinder, or delay appropriate actions to prevent and mitigate the effects of the COVID-19 pandemic.

### C. *Executive Order N-48-20 passes strict scrutiny*[4]

Even if strict scrutiny analysis is required, Executive Order N-48-20 meets that requirement because it is narrowly tailored to address a compelling state interest.

#### i. Reducing the spread of COVID-19 is a compelling state interest

Having seen more than half a million American lives lost due to COVID-19, there can be no legitimate argument that reducing the spread of COVID-19 is not a compelling state interest. The Governor's Declaration of State of Emergency, attached as Exhibit 1 to the City of Folsom's moving papers, describes the nature of the threat posed by COVID-19 as it was understood approximately one year ago. Since that time, the number of cases and deaths associated with the disease have increased significantly, further supporting that conclusion.

#### ii. Executive Order N-48-20 is narrowly tailored to achieve a compelling state interest

Executive Order N-48-20 temporarily suspends timeframes that would operate to require public hearings on an important and often contentious issue during the pandemic. It does not suspend elections or prevent any voter from casting a ballot. Executive Order N-48-20 also does not preclude prospective plaintiffs from ever filing suit to enforce an alleged violation of the

---

[3] Plaintiffs improperly claim that the City of Folsom "chose to deny its own citizens… the right to an equal vote." Plaintiffs also improperly imply that the City of Folsom is using the pandemic as "an excuse []or a legal defense to intentional discrimination against Asian and Latino voters." The City of Folsom specifically denies these baseless and inflammatory allegations.

[4] This strict scrutiny analysis is abbreviated due to the page limits associated with reply papers on demurrer and the City of Folsom's position that strict scrutiny does not apply under the circumstances. If the Court determines that strict scrutiny applies, the City of Folsom respectfully requests the opportunity to provide supplemental briefing on that issue.

- 9 -
CITY OF FOLSOM'S REPLY TO PLAINTIFFS' OPPOSITION TO DEMURRER

CVRA. Once the Executive Order is lifted or the State of Emergency is terminated, the 45-day timeframe in Elections Code section 10010(e)(2) will begin to run and, if it expires without a political subdivision taking action, a complaint filed thereafter would be timely. In addition, the Executive Order pauses the applicable timeframes on March 20, 2020, "such that days elapsed during the suspension … are not counted, but any days that elapsed prior to that suspension are still counted."[5] (Exhibit 3 at ¶ 2.) Even assuming liability,[6] there is no immediate threat to the rights of voters because the next municipal election in the City of Folsom is not scheduled to occur until November 2022. Under the circumstances, the Executive Order is narrowly tailored to achieve the compelling state interest in reducing the spread of COVID-19.

## CONCLUSION

Despite Plaintiffs' arguments, this is a simple case. A statute imposes timeframes that must pass before prospective plaintiffs may file suit. (Elections Code § 10010(e)(2).) A properly issued Executive Order tolls the applicable timeframe due to the COVID-19 pandemic. (Exhibit 3 at ¶ 2.) By its terms, the Executive Order applies to any political subdivision of the State, such as the City of Folsom. The Complaint was filed while the applicable timeframe is tolled, so the Complaint is untimely and subject to demurrer. While the Executive Order remains in place, no amendment can cure the defect in the Complaint. Therefore, and for the foregoing reasons, the City of Folsom respectfully requests that its demurrer be sustained without leave to amend.

Dated: March 10, 2021

SARI MYERS DIERKING
Assistant City Attorney
Attorney for Defendant, CITY OF FOLSOM

---

[5] This provision is not applicable here because Plaintiffs served the notice of potential violation in October 2020, after the Executive Order tolled the applicable timeframes.
[6] The City of Folsom denies liability.

**PROOF OF SERVICE**

I, Stacy Saldutti, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 50 Natoma Street, Folsom, CA 95630. On March 10, 2021, I served the within documents:

1. **CITY OF FOLSOM'S REPLY TO PLAINTIFFS' OPPOSITION TO DEMURRER**
2. **REQUEST FOR JUDICIAL NOTICE**

[X] by delivering the document listed above via electronic mail to the email address set forth below per agreement between the parties.

[ ] by transmitting via facsimile from (916) 351-0536 the above listed document(s) without error to the fax number(s) set forth below on this date before 5:00 p.m. A copy of the transmittal/confirmation sheet is attached.

[ ] by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Folsom, California addressed as set forth below.

[ ] by causing personal delivery by _____ of the document(s) listed above to the person(s) at the address(es) set forth below.

[ ] by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a _____ agent for delivery

[ ] by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

| | |
|---|---|
| Scott Rafferty<br>1913 Whitecliff Court<br>Walnut Creek, CA 94596<br>rafferty@gmail.com | Domenic D. Spinelli<br>Spinelli, Donald & Nott<br>601 University Avenue, Suite 225<br>Sacramento, CA 95825<br>domenics@sdnlaw.com |

I am readily familiar with the City of Folsom's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct and that this proof of service was executed on March 10, 2021, at Folsom, California.

*/s/ Stacy Saldutti*
Stacy Saldutti

**PROOF OF SERVICE**

I, Stacy Saldutti, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 50 Natoma Street, Folsom, CA 95630. On March 10, 2021, I served the within documents:

1. **CITY OF FOLSOM'S REPLY TO PLAINTIFFS' OPPOSITION TO DEMURRER**
2. **REQUEST FOR JUDICIAL NOTICE**

☐ by delivering the document listed above via electronic mail to the email address set forth below.

☐ by transmitting via facsimile from (916) 351-0536 the above listed document(s) without error to the fax number(s) set forth below on this date before 5:00 p.m. A copy of the transmittal/confirmation sheet is attached.

☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Folsom, California addressed as set forth below.

☐ by causing personal delivery by _____ of the document(s) listed above to the person(s) at the address(es) set forth below.

☐ by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a _____ agent for delivery.

☒ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

Sacramento Superior Court
Hall of Justice Building
813 6th Street, 1st Floor
Sacramento, CA  95814

I am readily familiar with the City of Folsom's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct and that this proof of service was executed on March 10, 2021, at Folsom, California.

_____
Stacy Saldutti