STEVEN WANG, Bar No. 191168
City Attorney
swang@folsom.ca.us
SARI MYERS DIERKING, Bar No. 226805
sdierking@folsom.ca.us
Assistant City Attorney
CITY OF FOLSOM
50 Natoma Street
Folsom, California 95630
Telephone: (916) 461-6025
Facsimile: (916) 351-0536

JEFFREY V. DUNN, Bar No. 131926
jeffrey.dunn@bbklaw.com
DANIEL L. RICHARDS, Bar No. 315552
daniel.richards@bbklaw.com
BEST BEST & KRIEGER LLP
18101 Von Karman Avenue, Suite 1000
Irvine, California 92612
Telephone:   (949) 263-2600
Facsimile:    (949) 260-0972

Attorneys for Defendant
CITY OF FOLSOM

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARI SHETTY, KAVITA SOOD, AND NEIGHBORHOOD ELECTIONS NOW, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF FOLSOM, <br><br> Defendant. | Case No. 2-22-cv-00534-JAM-JDP <br><br> **DEFENDANT CITY OF FOLSOM'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> *[Filed concurrently with:* <br><br> *1. Declaration of Daniel L. Richards:* <br> *2. Request for Judicial Notice; and* <br> *3. [Proposed] Order]* <br><br> Date:   June 28, 2022 <br> Time:   1:30 p.m. <br> Room:  6 |

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO ALL PARTIES AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 28, 2022, at 1:30 p.m. or as soon thereafter as the matter may be heard in Courtroom 6 of the above-entitled court, Defendant City of Folsom ("City" or "Defendant") will and hereby does move the Court for an Order dismissing Plaintiffs Hari Shetty, Kavita Sood, and Neighborhood Elections Now's ("Plaintiffs") First Amended Complaint as against it.

Defendant brings this motion pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6). The motion is based on the ground that Plaintiff has failed to state a claim upon which relief can be granted as to all counts against Defendant as discussed herein. The motion is based on the following:

Plaintiffs' First Cause of Action under the California Voting Rights Act fails to state a claim on which relief can be granted because the City has transitioned to a by-district election system and this claim is moot.

Plaintiffs' Second Cause of Action under Section 2 of the Voting Rights Act fails to state a claim on which relief can be granted because Plaintiffs fail to establish the *Thornburg v. Gingles*, 478 U.S. 30 (1986) ("*Gingles*") preconditions and further fails to allege facts to state a claim for intentional discrimination that overcome the presumption of good faith that is plausible on its face.

Plaintiffs' Third Cause of Action under the California FAIRMAPS Act fails to state a claim on which relief can be granted because there is no private right of action under the FAIRMAPS Act and Plaintiffs have failed to allege a violation of the FAIRMAPS Act that is plausible on its face.

Plaintiffs' Fourth Cause of Action under California Elections Code section 10010, subdivision (b) fails to state a claim on which relief can be granted because section 10010(b) does not provide a private right of action and Plaintiffs fail to allege a violation of section 10010(b) that is plausible on its face.

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

MOTION TO DISMISS

Plaintiffs' Fifth Cause of Action under the Equal Protection Clause fails to state a claim on which relief can be granted because the adopted map has a population variance of less than 10 percent between the highest and lowest population districts, and Plaintiffs fail to overcome the presumption that such districts are constitutional.

Plaintiffs Sixth Cause of Action under the California Constitution fails to state a claim on which relief can be granted because the California Constitution imposes no greater requirement of equal population than the United States Constitution, and Plaintiffs fail to overcome the presumption that a map with less than 10 percent maximum population variance is constitutional.

Plaintiffs Seventh Cause of Action under 42 U.S.C. § 1983 fails to state a claim on which relief can be granted because Plaintiffs fail to allege a violation of any federal statute of constitutional provision that is plausible on its face.

This motion is based on the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice and Declaration of Daniel L. Richards, on the full records in this matter, and on such further briefing and argument as the Court may allow.

This motion is made following repeated attempts to arrange a conference of counsel pursuant to the Court's standing order, which efforts were initiated on March 23, 2022 at 3:27 p.m., less than one hour after the City's receipt of this Court's standing order. Declaration of Daniel L. Richards ("Richards Decl.") at ¶ 7–8 & Exs. 6–7. As described more fully in the concurrently filed Richards Declaration, counsel for the City (1) repeatedly offered to make themselves available at any-time, whether in the early morning, working day, or late in the evening, to meet and confer; (2) offered to attempt to meet and confer in writing through e-mail, and explained the basis for the contemplated motion to dismiss; and (3) inquired whether, if counsel for Plaintiffs were unable or unwilling to make time for a call or meet and confer, if Plaintiffs would be amenable to stipulating

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

pursuant to Local Rule 144 to a brief seven day extension of the City's responsive pleading deadline to allow the parties sufficient time to meet and confer. Counsel for Plaintiff would not or could not make himself available for a call, did not agree to attempt to meet and confer through further email correspondence, and did not respond to the City's inquiry regarding a brief stipulated extension of the City's time to respond.  *Id.* at ¶¶ 9–15 & Exs. 8–14.

However, based on email correspondence with counsel for Plaintiffs, counsel for the City understands Plaintiffs' position to be that the contemplated motion has no merit, the issues cannot be resolved without the necessity of briefing, the issues cannot be narrowed for review by the Court, and settlement is not a practical option at this time. *See, e.g.,* Richards Decl. Ex. 12 (indication from Plaintiffs' counsel that entirety of contemplated motion lacks merit and may lack a good faith basis). Based on this understanding of Plaintiffs' position, and the correspondence through email, counsel for the City states that this motion is made following the conference of counsel pursuant to the Court's standing order which took place through written correspondence beginning on March 23, 2022 and concluding on March 25, 2022.

Dated:  March 30, 2022                        BEST BEST & KRIEGER LLP


                                             By: */s/ Jeffrey V. Dunn*
                                             JEFFREY V. DUNN
                                             DANIEL L. RICHARDS
                                             Attorneys for Defendants
                                             CITY OF FOLSOM

Dated:  March 30, 2022                        CITY OF FOLSOM


                                             By: */s/ Steven Wang*
                                             STEVEN WANG
                                             SARI MYERS DIERKING
                                             Attorneys for Defendants
                                             CITY OF FOLSOM

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

# **<u>TABLE OF CONTENTS</u>**

Page

I.      INTRODUCTION ...................................................................................... 1
II.     FACTUAL BACKGROUND ....................................................................... 2
III.    LEGAL ARGUMENT ............................................................................... 3
        A.    Legal Standard for a Motion to Dismiss ........................................ 3
        B.    Plaintiffs' First Cause of Action is Moot ....................................... 3
        C.    Plaintiffs' Second Cause of Action Fails to State a Claim .................. 4
        D.    Plaintiffs Third Cause of Action under the Fair Maps Act Fails .......... 8
        E.    Plaintiffs Fourth Cause of Action Fails ....................................... 11
        F.    Plaintiffs Fifth Cause of Action Fails ......................................... 12
        G.    Sixth Cause of Action Fails ...................................................... 14
        H.    Plaintiffs Seventh Cause of Action Fails ..................................... 15
IV.     CONCLUSION ...................................................................................... 15

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

MOTION TO DISMISS

# <u>TABLE OF AUTHORITIES</u>

**Page (s)**

**Federal Cases**

*Abate v. Mundt*
    403 U.S. 182 (1971) ........................................................................ 13

*Abbott v. Perez*
    138 S. Ct. 2305 (2018) ................................................................. 5, 6

*Abrams v. Johnson*
    521 U.S. 74 (1997) ........................................................................... 8

*Altamirano v. Matsu, LLC*
    2012 WL 13164153 (C.D. Cal. Sept. 26, 2012) .............................. 9

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ..................................................................... 3, 7

*Balistreri v. Pacifica Police Dep't.*
    901 F.2d 696 (9th Cir. 1988) ........................................................... 3

*Bartlett v. Strickland*
    556 U.S. 1 (2009) ............................................................................. 5

*Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*
    941 F.3d 1195 (9th Cir. 2019) ......................................................... 4

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) ..................................................................... 3, 7

*Bethune-Hill v. Virginia State Bd. of Elections*
    137 S. Ct. 788 (2017) ....................................................................... 6

*Brown v. Thomson*
    462 U.S. 835 (1983) ....................................................................... 12

*Bush v. Vera*
    517 U.S. 952 (1996) ......................................................................... 6

*Conley v. Gibson*
    355 U.S. 41 (1957) ........................................................................... 3

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

MOTION TO DISMISS

*Connor v. Finch*
   431 U.S. 407 (1977) ...................................................................... 13

*Coto Settlement v. Eisenberg*
   593 F.3d 1031 (9th Cir. 2010) .......................................................... 3

*Easley v. Cromartie*
   532 U.S. 234 (2001) ................................................................... 1, 6

*Evenwel v. Abbott*
   578 U.S. 54 (2016) ...................................................................... 12

*Frank v. Forest County*
   336 F.3d 570 (7th Cir.2003) ............................................................ 13

*Fund for Accurate and Informed Representation, Inc. v. Weprin*
   506 U.S. 1017 (1992) ................................................................... 13

*Harris v. Arizona Indep. Redistricting Comm'n*
   578 U.S. 253 (2016) ................................................................. 1, 12

*Karcher v. Daggett*
   462 U.S. 725 (1983) .................................................................... 12

*Kucharczyk v. Regents of Univ. of California*
   946 F. Supp. 1419 (N.D. Cal. 1996) ................................................ 9, 10

*Mem'l Health Servs. v. City of San Clemente*
   2019 WL 480471 (C.D. Cal. Feb. 6, 2019) ............................................... 9

*Miller v. Johnson*
   515 U.S. 900 (1995) ................................................................... 6, 7

*Reno v. Bossier Parish School Bd.*
   520 U.S. 471 (1997) ..................................................................... 6

*Reynolds v. Sims*
   377 U.S. 533 (1964) ............................................................... 12, 14

*Shaw v. Reno*
   509 U.S. 630 (1993) ..................................................................... 7

*Thornburg v. Gingles*
   478 U.S. 30 (1986) ................................................................... 1, 5

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

MOTION TO DISMISS

*Villegas v. Gilroy Garlic Festival Ass'n*
    541 F.3d 950 (9th Cir. 2008) .......................................................................... 2, 15

*White v. Regester*
    412 U.S. 755 (1974) ............................................................................................ 13

**State Cases**

*Ass'n of Irritated Residents v. San Joaquin Valley Unified Air Polution Control Dist.*
    168 Cal.App.4th 535 (2008) ............................................................................... 9

*Assembly of State of Cal. v. Deukmejian*
    30 Cal.3d 638 (1982) .................................................................................. 10, 15

*Canaan v. Abdelnour*
    40 Cal.3d 703 (1985) ......................................................................................... 15

*Griswold v. County of San Diego*
    32 Cal.App.3d 56 (1973) .............................................................................. 10, 11

*Jauregui v. City of Palmdale*
    226 Cal.App.4th 781 (2014) ........................................................................... 2, 15

*Langsam v. City of Sausalito*
    190 Cal.App.3d 871 (1987) ................................................................................. 9

*Legislature v. Reinecke*
    6 Cal.3d 595 (1972) ........................................................................................... 11

*Santa Teresa Citizen Action Grp. v. City of San Jose*
    114 Cal.App.4th 689 (2003) ............................................................................. 10

*Serrano v. Priest*
    5 Cal.3d 584 (1971) ........................................................................................... 14

*Strumsky v. San Diego County Employees Retirement Assn.*
    11 Cal.3d 28 (1974) ........................................................................................... 10

*Tinsley v. Palo Alto Unified Sch. Dist.*
    91 Cal.App.3d 871 (1979) ................................................................................. 14

*Vandermost v. Bowen*
    53 Cal.4th 421 (2012) ........................................................................................ 15

MOTION TO DISMISS

**State Statutes**

Cal. Code of Civ. Proc. § 1085 ............................................................................. 9, 10

Cal. Elec. Code § 10010 ...................................................................................... 1, 2, 11

Cal. Elec. Code § 14025 .............................................................................................. 2

Cal. Elec. Code § 14032 .............................................................................................. 9

Cal. Elec. Code §§ 21620–21630 ............................................................................... 8

Cal. Elec. Code § 21629 .............................................................................................. 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

MOTION TO DISMISS

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Each of Plaintiffs' claims against the City of Folsom fail as a matter of law. Plaintiffs' First Cause of Action brought under the California Voting Rights Act alleges that the City improperly utilizes an at-large method of election. As a matter of judicially-noticeable fact, the City enacted Ordinance No. 1324, completing the process of transitioning to by-district elections on March 22, 2022. This claim is moot, and it is apparent from matters subject to judicial notice that the claim suffers from a fatal defect: The City does not use an at-large method of elections.

The Second Cause of Action under the Voting Rights Act fails because (1) Plaintiffs cannot allege the *Gingles* preconditions to establish an "effects" based claim, and (2) Plaintiffs fail to allege sufficient facts to overcome the presumption of good faith of public officials and show that, in enacting the maps, the City "subordinated traditional race-neutral districting principles to racial considerations." *Easley v. Cromartie*, 532 U.S. 234, 241–42 (2001).

The Third Cause of Action fails because the California Fair Maps Act does not provide a private right of action. If Plaintiffs believe the City violated mandatory duties imposed by the FAIRMAPS Act, their remedy is to bring a petition for writ of mandate.

The Fourth Cause of Action fails because California Elections Code section 10010(b) provides no private right of action, and because neither this statute nor any other source of law requires the election sequencing demanded by Plaintiffs.

The Fifth Cause of Action based on a malapportionment claims fails because Plaintiff does not and cannot allege the district maps contain a maximum population deviance of 10 percent or greater, and Plaintiffs do not and cannot overcome the presumption of constitutionality that attaches to maps with "de minimis" deviations of less than 10 percent. *Harris v. Arizona Indep. Redistricting Comm'n*, 578 U.S. 253, 259 (2016).

MOTION TO DISMISS

1    The Sixth Cause of Action for malapportionment under the California

2    Constitution fails for the same reasons Plaintiffs' Fifth Cause of Action fails. The

3    California Constitution requires no greater equality of population than the United

4    States Constitution. *Jauregui v. City of Palmdale*, 226 Cal.App.4th 781, 800 (2014).

5    The Seventh Cause of Action under 42 U.S.C. section 1983 fails because

6    Plaintiffs' underlying federal claims fail. *Villegas v. Gilroy Garlic Festival Ass'n*,

7    541 F.3d 950, 957 (9th Cir. 2008). The motion to dismiss should be granted in full.

8    ## II.    **FACTUAL BACKGROUND**

9    On December 31, 2020, Plaintiffs filed a complaint against the City of

10   Folsom, bringing a single cause of action under the California Voting Rights Act,

11   California Elections Code section 14025, et seq., based on allegations that the

12   City's at-large method of city council elections was illegal. ECF No. 1-1. On March

13   17, 2021, the state court sustained a demurrer to the complaint. ECF No. 1-18.

14   On February 22, 2022, Plaintiffs filed an Amended Complaint, bringing

15   seven causes of action under a variety of state and federal statutes and constitutional

16   provisions. ECF 2-1. As Plaintiffs' Amended Complaint recognized, the City began

17   the process of transitioning to by-district based elections before the Amended

18   Complaint was filed. *Id.* at ¶¶ 3–9, 16.

19   On July 27, 2021, the City adopted a Resolution of Intent beginning the

20   process of transitioning from an at-large to a by-district election system. *Id.* at ¶ 16;

21   *see also* Request for Judicial Notice ("RJN") Ex. 1. Following a number of public

22   hearings, on March 8, 2022, the City Council introduced and conducted first

23   reading of Ordinance No. 1324, "An Ordinance of the City of Folsom Establishing

24   a By-District Election Process in Five Council District Pursuant to the California

25   Elections Code Section 10010 and Adding New Sections to Chapter 2.06 of the

26   Folsom Municipal Code to Provide for City Council Election Districts." RJN Ex. 2.

27   This Ordinance selected the "Preferred Map 2" as the final district map to be used

28   in future elections. *Id.* at p. 12. A copy of the map was attached to the Ordinance,

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

and incorporated therein by reference. *Id.* at p. 16.

On March 22, 2022, the City conducted its second reading of and enacted Resolution No. 1324, completing the process of transitioning to by-district elections. RJN Exs. 3, 4. The "Preferred Map 2" will be used in the next election cycle, which will be conducted on a by-district basis. RJN Ex. 4.

The gravamen of Plaintiffs' Amended Complaint is (1) the City's use of an at-large election system violates the California Voting Rights Act, and (2) that the by-district map that will be used by the City in future elections violates a number of state and federal statutes and constitutional protections. ECF No. 2-1 at, e.g., ¶¶ 64–103. As is explained below, all of Plaintiffs' claims fail.

## III.   **LEGAL ARGUMENT**

### A.   **Legal Standard for a Motion to Dismiss**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the claims the Complaint. *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). A Rule 12(b)(6) motion to dismiss challenges defects disclosed on the face of the complaint, or which are apparent from matters that are subject to judicial notice. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

The Supreme Court has recognized a heightened pleading standard in Rule 8 of the Federal Rules of Civil Procedure. Under this standard, a plaintiff must allege facts to state a claim for relief that is plausible on its face. The plaintiff may not rely on mere threadbare legal conclusions to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### B.   **Plaintiffs' First Cause of Action is Moot**

Plaintiffs' First Cause of Action, brought under the California Voting Rights act, alleges the City "employs an at-large method of election . . . . City of Folsom's

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

at-large method of election is imposed in a manner that impairs the ability of protected classes as defined by the California Voting Rights Act to elect candidates of their choice or influence the outcome of elections." ECF No. 2-1 at ¶¶ 66–67.

This claim is moot. On March 22, 2022, the City enacted Ordinance No. 1324, which transitions Folsom from an at-large election system to a by-district system. RJN Ex. 4. The expiration or repeal of a challenged legislative act is generally sufficient to render a case moot. *Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1198 (9th Cir. 2019). As the Ninth Circuit confirmed in 2019, the repeal, or replacement of a law should "not be treated the same as voluntary cessation of challenged acts by a private party." *Id.* at 1199. A court should "assume that a legislative body is acting in good faith in repealing or amending a challenged legislative provision, or in allowing it to expire." *Id.* Therefore, in determining whether a case is moot," a court should "presume that the repeal, amendment, or expiration of legislation will render an action challenging the legislation moot, unless there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it." *Id.* Any reasonable expectation of reenactment cannot be based on "speculation alone," but must be "founded in the record." *Id.* Plaintiffs can cite to no evidence suggesting that the City will (or could) return to an at-large voting system. The claim is moot.

Plaintiffs' First Cause of Action for violation of the California Voting Rights Act by virtue of use of an "at-large" method of election should be dismissed because the City of Folsom no longer employs an "at-large" method of election.

### C.     Plaintiffs' Second Cause of Action Fails to State a Claim

Plaintiffs' Second Cause of Action alleges that the City's newly adopted maps violate Section 2 of the Federal Voting Rights Act, 42 U.S.C. § 1973 ("Section 2"). Section 2 provides:

> (a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 10303(f)(2) of this title. . . .

(b) A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: . . . .

To establish a violation of Section 2 based on the effect of redistricting, a plaintiff must satisfy the *Gingles* preconditions: "(1) a geographically compact minority population sufficient to constitute a majority in a single-member district, (2) political cohesion among the members of the minority group, and (3) bloc voting by the majority to defeat the minority's preferred candidate." *Abbott v. Perez*, 138 S. Ct. 2305, 2330–31 (2018) (*citing Gingles*, 478 U.S. at 48–51). A plaintiff "must then go on to prove that, under the totality of the circumstances, the district lines dilute the votes of the members of the minority group." (*Id*.)

To the extent Plaintiffs intend to bring a typical Section 2 claim, Plaintiffs' allegations fail. Plaintiff does not and cannot satisfy the first *Gingles* precondition: that there is a geographically compact minority population sufficient to constitute a majority in a single-member district. On the contrary, as Plaintiffs allege "it is possible to create a district in which at least 30% of eligible voters are Asian-American." (ECF No. 2-1 at ¶ 74.) A hypothetical 30 percent Asian-American district is not "sufficient to constitute a majority in a single-member district." *See, e.g*., *Bartlett v. Strickland*, 556 U.S. 1, 13 (2009) ("At the other end of the spectrum are influence districts, in which a minority group can influence the outcome of an election even if its preferred candidate cannot be elected. This Court has held that §

- 5 -

1   2 does not require the creation of influence districts.")

2        In apparent light of their inability to allege an "effect" claim, Plaintiffs

3   instead allege that the City Council engaged in intentional racially discriminatory

4   conduct. Plaintiffs' allegations fall well short of plausibly establishing such a

5   serious charge. Whenever a challenger claims that a state law was enacted with

6   discriminatory intent, the burden of proof lies with them. *Reno v. Bossier Parish*

7   *School Bd*., 520 U.S. 471, 481 (1997). "This rule takes on special significance in

8   districting cases. Redistricting is primarily the duty and responsibility of the State,

9   and federal-court review of districting legislation represents a serious intrusion on

10  the most vital of local functions." *Abbott*, 138 S. Ct. at 2324–25 (2018) (*citing*

11  *Miller v. Johnson*, 515 U.S. 900, 915 (1995) (internal alterations and quotation

12  marks omitted). When it is alleged legislators acted with discriminatory intent, the

13  "good faith of the [local] legislature must be presumed." *Id*.

14       The Supreme Court has explained the heavy burden a challenger bears in

15  establishing intentional race based discrimination:

16       [T]he burden of proof on the plaintiffs (who attack the district) is a
17       demanding one. Those who claim that a legislature has improperly
         used race as a criterion, . . . must show at a minimum that the
18       legislature subordinated traditional race-neutral districting principles to
         racial considerations. Race must not simply have been a motivation for
19       the drawing of a majority-minority district, but the 'predominant
         factor' motivating the legislature's districting decision. Plaintiffs must
20       show that a facially neutral law is unexplainable on grounds other than
         race. . . . [C]ourts must exercise extraordinary caution in adjudicating
21       claims that a State has drawn district lines on the basis of race, . . .

22  *Easley*, 532 U.S. at 241–42 (internal citations and alterations omitted); *see also*

23  *Bush v. Vera*, 517 U.S. 952, 968 (1996) ("If district lines merely correlate with race

24  because they are drawn on the basis of political affiliation, which correlates with

25  race, there is no racial classification to justify, . . ."); *Bethune-Hill v. Virginia State*

26  *Bd. of Elections*, 137 S. Ct. 788, 797 (2017) ("[A] plaintiff alleging racial

27  gerrymandering bears the burden to show . . . that race was the predominant factor

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

MOTION TO DISMISS

1   motivating the legislature's decision to place a significant number of voters within

2   or without a particular district.") (internal alterations omitted).

3        While this is a motion to dismiss and Plaintiffs need not prove their

4   allegations, Plaintiffs must still allege facts that, if true, plausibly suggest an

5   entitlement to relief. *Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

6   Plaintiffs do not allege facts plausibly suggesting that the City subordinated

7   traditional race-neutral districting principles to racial considerations and that the

8   adopted Preferred Map 2 is unexplainable on grounds other than race. Nor do

9   Plaintiffs' allegations plausibly suggest the presumption of good faith is overcome.

10       The only facts alleged by Plaintiffs in support of the allegation of intentional

11  racial discrimination are (1) that Mayor Howell and demographer stated that "there

12  were no concentrations of any ethnicity anywhere in Folsom" and "knew these

13  rationalizations to be false;" (ECF No.2-1 at ¶ 72); (2) the City violated the Brown

14  Act and otherwise "depart[ed] from normal procedures" in the lead up to adopting

15  the Preferred Map 2 (*Id.* at ¶ 73); and (3) that the City could have adopted a map in

16  which 30 percent of eligible voters were Asian-American and instead "fragment[ed]

17  Asian-American voters among multiple districts." *Id.* at ¶ 74–75; *compare with*

18  *Shaw v. Reno*, 509 U.S. 630, 649 (1993) ("[A] plaintiff challenging a

19  reapportionment statute under the Equal Protection Clause may state a claim by

20  alleging that the legislation, though race-neutral on its face, rationally cannot be

21  understood as anything other than an effort to separate voters into different districts

22  on the basis of race."); *Miller v. Johnson*, 515 U.S. 900, 913 (1995) (district lines

23  unconstitutional when "race for its own sake, and not other districting principles,

24  was the legislature's dominant and controlling rationale in drawing its

25  districtlines."). These allegations, individually and collectively, are insufficient to

26  overcome the presumption of good faith and suggest that City of Folsom legislature

27  acted with a secret discriminatory intent to segregate Asian-American voters and

28  adopted a map unexplainable on grounds other than race.

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

For example, the statement that "there [are] no concentrations of any ethnicity anywhere in Folsom" is not plausibly understood as a knowing falsehood. On the contrary, as Plaintiffs concede, there was not a sufficient concentration of Asian-Americans or other ethnicities to create a majority-minority district. ECF No. 2-1 at ¶ 74.[1] Ascribing this meaning to a challenged statement is a far more plausible explanation than Plaintiffs' allegation that these statements reflect knowing lies meant to disguise invidious discrimination.

Further, despite Plaintiffs' protestation that the City could have created a district with a greater number of Asian-Americans (but not a majority), neither the Voting Rights Act nor the United States Constitution compel (or allow) a legislative body to simply draw maps for the purpose of maximizing minority voter concentration. If the City did try to simply maximize Asian-American voter concentration but without creating a minority-majority district in order to comply with the Voting Rights Act, as Plaintiffs apparently propose, such racially based legislating could itself be subject to strict scrutiny. *Abrams v. Johnson*, 521 U.S. 74, 91 (1997). While complying with Section 2's command to create, in appropriate circumstances, a majority-minority district "can be a compelling state interest," it is far from clear that Plaintiffs' proposed course of action would satisfy this exceedingly strict test. *Id.*

**D.   Plaintiffs Third Cause of Action under the Fair Maps Act Fails**

Plaintiffs' Third Cause of Action for violation of the FAIRMAPS Act fails because the FAIRMAPS Act provides no private right of action against a public body like the City of Folsom. *Compare* Cal. Elections Code §§ 21620–21630 (Portion of FAIRMAPS Act applicable to Charter Cities, providing no private right of action except in circumstances where a City fails to adopt council districts by a

---

[1] Notably, the map adopted by the City created a district (District 3) with 36 percent of its total population Asian-American, and 25 percent of the voting age population Asian-American, within a few percentage points of the greatest concentration postulated by Plaintiffs. RJN Ex. 5.

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

MOTION TO DISMISS

certain deadline; *see* Cal. Elec. Code § 21629) *with* Cal. Elec. Code § 14032 ("Any voter who is a member of a protected class and who resides in a political subdivision where a violation of Sections 14027 and 1408 [portions of the California Voting Rights Act] is alleged may file an action pursuant to these sections in the superior court of the county in which the political subdivision is located."); *see also Altamirano v. Matsu, LLC*, 2012 WL 13164153, at *3 (C.D. Cal. Sept. 26, 2012) ("This Court will follow the unambiguous California precedent in agreeing that when neither the language nor the history of a statute indicates an intent to create a new private right to sue, a party contending for judicial recognition of such a right bears a heavy, perhaps insurmountable, burden of persuasion.") (internal quotation omitted).

This is not to say Plaintiffs have no remedy if they believe the City has enacted legislation in contravention of a mandatory duty imposed by the FAIRMAPS Act. The remedy to challenge a legislative or quasi-legislative act, under California law, is a petition for writ of mandate brought under California Code of Civil Procedure section 1085. *See, e.g., Ass'n of Irritated Residents v. San Joaquin Valley Unified Air Polution Control Dist.*, 168 Cal.App.4th 535, 542 (2008) (Judicial review of decisions of public entities is obtained by a proceeding for a writ of ordinary or administrative mandate."); *Langsam v. City of Sausalito*, 190 Cal.App.3d 871, 878–882 (1987) (petition for ordinary mandamus under section 1085 was correct vehicle for judicial review of city council's quasi-legislative decision);  *Mem'l Health Servs. v. City of San Clemente*, 2019 WL 480471, at *11 (C.D. Cal. Feb. 6, 2019) ("Under California law . . . legislative acts are subject to review under ordinary mandamus pursuant to California Code of Civil Procedure § 1085 . . . . Because the City's enactment of Ordinance 1616 was a legislative zoning decision rather than a quasi-adjudicatory act, that decision is subject to review only under the ordinary writ of mandamus standard."); *Kucharczyk v. Regents of Univ. of California*, 946 F. Supp. 1419, 1434 (N.D. Cal.

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

- 9 -

1996) ("In California, the proper method of obtaining judicial review of most public agency decisions is by instituting a proceeding for a writ of mandate.").

Importantly, this is not a bare technicality; petitions for writs of mandate are meaningfully distinct from ordinary civil causes of action. First, petitions for writs of mandate are tried on closed records consisting only of the materials before the legislative body. *See, e.g., Santa Teresa Citizen Action Grp. v. City of San Jose*, 114 Cal.App.4th 689, 707 (2003) ("Petitioners' extra-record evidence is inadmissible to support the writ petition."); *Kucharczyk,* 946 F. Supp. at 1438 ("Having determined that ordinary mandamus applies, the Court next determines that the decision should be reviewed on a closed record. . . [T]he Court will consider only a closed record and will not consider any extra-record evidence.")

Second, petitions for writ of mandate recognize the delicate separation of powers concerned implicated in judicial review of the acts of another branch of government by imposing a heavy burden on parties seeking writs. Under California law, a court's review of actions undertaken in a legislative capacity is limited to a determination whether the legislature's actions were arbitrary, capricious, or entirely lacking in evidentiary support or whether it failed to follow the procedure required by law. Cal. Code Civ. Proc. § 1085; *see also Strumsky v. San Diego County Employees Retirement Assn*., 11 Cal.3d 28, 35, fn. 2 (1974). This review is narrower still in the context of drawing electoral lines: "Because reapportionment is so essentially a legislative function, certain basic considerations relating to the fundamental doctrine of the separation of powers between the judicial and the legislative branches of government regulate and limit courts in the exercise of their power to declare such enactments invalid." *Griswold v. County of San Diego*, 32 Cal.App.3d 56, 65–66 (1973). "Among the limitations upon the court's power is the presumption the enactment is valid and that the legislative body performed its duty and ascertained the existence of any facts upon which its right to act depended." *Id.* at 66; *see also Assembly of State of Cal. v. Deukmejian*, 30 Cal.3d 638, 676 (1982)

Best Best & Krieger LLP
Attorneys at Law
18101 Von Karman Avenue, Suite 1000
Irvine, California 92612

("It is neither wise nor just to place the burden of reapportionment, a basically political responsibility, on the courts of a state. . . This court has repeatedly noted its reluctance to enter into the complex arena of legislative reapportionment."); *Legislature v. Reinecke*, 6 Cal.3d 595, 598 (1972) ("[R]eapportionment is primarily a matter for the legislative branch of the government to resolve."). If Plaintiffs believe the City abused its discretion or failed to comply with mandatory duties imposed by the Fair Maps Act, their remedy is to seek a writ of mandate and attempt to carry the heavy burden imposed on a party seeking a writ of mandate.

### E.     Plaintiffs Fourth Cause of Action Fails

Plaintiffs' claim under California Election Code section 10010(b) is meritless. First, the private right of action in section 10010 is limited to an action to enforce section 14027 and 14028 of the California Voting Rights Act. *See* Cal. Elec. Code § 10010(e). To the extent Plaintiffs believe the City has violated some other mandatory duty imposed by Section 10010(b), Plaintiffs' remedy is a petition for writ of mandate, as described more fully in Section III.D.

Second, Plaintiffs' allegations fail to state a legally cognizable claim. Plaintiffs' allegation concerning the legislative history of A.B. 350 are legal conclusions subject to no presumption of truth. Neither section 10010(b), the California Voting Rights Act, nor any other authority require that "high-Asian" or any high minority district be scheduled for any particular election year. No California Court has held that Section 10010(b) requires any particular sequence of voting. On the contrary, California courts have rejected the contention that there is any particular legal duty to sequence elections in a certain manner: "No court has yet held the Equal Protection Clause inhibits redistricting which merely postpones the right to vote or that it operates to require a minimum change above all other considerations involved in state or local reapportionment." *Griswold v. Cty. of San Diego*, 32 Cal.App.3d 56, 63 (1973).

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1          **F.**      **Plaintiffs Fifth Cause of Action Fails**

2                 Plaintiffs' allegation that the City engaged in intentional discrimination in

3   violation of the Fourteenth and Fifteenth Amendment fails for the reasons described

4   in Section III.C. Plaintiffs' allegation that the Preferred Map 2 violates the

5   Fourteenth Amendment's demand of "substantial equality of population" is

6   meritless. Tellingly, Plaintiffs fail to allege the actual deviation from ideal, and do

7   not allege the total deviation exceeds ten percent, instead vaguely alluding to a

8   "guiding principle" of "keeping population variance close to 10 percent." *See* ECF

9   No. 2-1 at ¶¶ 36–44, 87–90.  The Equal Protection Clause of the Fourteenth

10  Amendment requires that legislative districts "must be apportioned on a population

11  basis," meaning that the state must "make an honest and good faith effort to

12  construct districts . . . as nearly of equal population as is practicable." *Reynolds v.*

13  *Sims*, 377 U.S. 533, 577 (1964). Deviation in the population is constitutionally

14  permissible, so long as the disparities are based on "legitimate considerations

15  incident to the effectuation of a rational state policy." *Id.* at 579. Compactness,

16  contiguity, respecting lines of political subdivisions, preserving the core of prior

17  districts, and avoiding contests between incumbents are examples of the legitimate

18  criteria that can justify deviations. *Karcher v. Daggett*, 462 U.S. 725, 740 (1983).

19                Before requiring the state or locality to justify its deviations, plaintiffs must

20  make a prima facie case of a discrimination. By itself, the existence of minor

21  deviations is insufficient to make out a prima facie case of discrimination. *Brown v.*

22  *Thomson*, 462 U.S. 835, 842 (1983). With respect to state districts, the Supreme

23  Court has said that, as a general matter, a "plan with a maximum population

24  deviation under 10% falls within this category of minor deviations" which do not

25  constitute a prima facie case and which do not require explanation. *Id.* at 842.

26                The Supreme Court has noted that "we believe that attacks on deviations

27  under 10% will succeed only rarely, in unusual cases." *Harris v. Arizona Indep.*

28  *Redistricting Comm'n*, 578 U.S. 253, 259 (2016); *see also, e.g., Evenwel v. Abbott*,

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

- 12 -

578 U.S. 54, 60 (2016) ("Where the maximum population deviation between the largest and smallest district is less than 10%, the Court has held, a state or local legislative map presumptively complies with the one-person, one-vote rule."); *Fund for Accurate and Informed Representation, Inc. v. Weprin*, 506 U.S. 1017 (1992) (summarily affirming a District Court's finding that there was no prima facie case where the maximum population deviation was 9.43%); *Connor v. Finch*, 431 U.S. 407, 418 (1977) (noting that under–10 percent deviations are considered to be of prima facie constitutional validity in context of legislatively enacted apportionments); *White v. Regester*, 412 U.S. 755, 765 (1974) (permitting variance of 9.9 percent, and concluding that this variance did not make out a prima facie equal protection violation).  In light of the local communities and geography, smaller populations, and other quintessentially local factors, the Supreme Court and other courts have voiced approval for the proposition that "slightly greater percentage deviations may be tolerable for local government apportionment schemes." *Abate v. Mundt*, 403 U.S. 182, 185 (1971); *see also Frank v. Forest County*, 336 F.3d 570, 573 (7th Cir.2003) (Upholding a county redistricting plan with an overall maximum deviation of 18.03 percent, reasoning that the "10 percent rule . . . was devised for elections in larger electoral districts.").

Notably, while Plaintiffs allege that "excess population" can be used to improperly "dilute[] a high-minority district," this is not the case here. On the contrary, analysis of the Preferred Map 2 that was before the Folsom City Council demonstrates that the two districts with the highest percentage of white individuals and the lowest percentage of Asian-American persons - Districts One and Two – have the highest population and highest deviation from ideal (.094 percent and 5.65 percent, respectively). RJN Ex. 5. The district with the highest percentage of Asian-American individuals – District Three at 36 percent – had by a wide margin the lowest population and greatest deviation below ideal, 4.02 percent below ideal. In other words, the minor deviations do not dilute the vote of Asian-American voters

- 13 -

1   (and if anything, the de minimis deviations marginally amplify them). RJN Ex. 5.

2       Plaintiffs allege no facts to suggest the de minimis deviation was motivated

3   by invidious discriminatory intent, or other illicit motives, or that the deviation will

4   have any discriminatory impact. In fact, Plaintiffs suggest that the deviations were

5   intended to, but will not, prevent "the district containing the largest number of

6   Asian-American voters from being substantially overpopulated before the next

7   census. Therefore, they are not justified as a measure to protect Asian-American

8   voters from quantitative dilution." ECF No. 2-1 at ¶ 90. This is, at most, a rebuttal

9   of an explanation justifying a deviation. Plaintiffs' protestation that the deviation is

10  insufficient to accomplish its purported legitimate goal is insufficient to make out a

11  prima facie case of invidious discrimination.

12      **G.    Sixth Cause of Action Fails**

13      Plaintiffs' Sixth Cause of Action fails. This cause of action almost

14  exclusively consists of Plaintiffs' articulation of and argument concerning the rights

15  guaranteed under the California Constitution. *See* ECF No. 2-1 at ¶¶ 91–96. The

16  sole allegation as to how the City has purportedly violated these protections is:

17  "[T]he deliberate overpopulation of the Historic District and Central Folsom in

18  Preferred Map 2 violated the California Constitution." ECF No 2-1 at ¶ 93.

19      This threadbare allegation is insufficient to state a claim. None of the

20  authorities cited by Plaintiffs support the proposition that the California

21  Constitution requires any greater scrutiny of de minimis deviations between

22  districts than the United States Constitution. *See Tinsley v. Palo Alto Unified Sch.*

23  *Dist.*, 91 Cal.App.3d 871 (1979) (concerning school segregation, not voting or

24  redistricting); *Serrano v. Priest*, 5 Cal.3d 584, 613 (1971) (concerning school

25  funding, and reasoning by analogy: "If a voter's address may not determine the

26  weight to which his ballot is entitled, surely it should not determine the quality of

27  his child's education") (*citing Reynolds v. Sims*, 377 U.S. 533 & fn. 45 (1964),

28  which held that "while mathematical nicety is not a constitutional requisite," an

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

MOTION TO DISMISS

apportionment map that made no attempt to even broadly reflect population was unconstitutional).

On the contrary, the California decisions that have addressed apportionment have applied the same tests applied by decisions construing the Equal Protection Clause of the United States Constitution. *See, e.g.*, *Vandermost v. Bowen*, 53 Cal.4th 421, 472 (2012) ("The most obvious problem with the 2001 map concerns the principle of 'one person, one vote,' under both the federal equal protection clause . . . and under California Constitution, article XXI, section 2, subdivision (d)(1). . . . '[A]s a general matter, . . . an apportionment plan with a maximum population deviation under 10 percent falls within this category of minor deviations . . . .'"); *Assembly of State of Cal. v. Deukmejian*, 30 Cal.3d 638, 667 (1982) ("As summarized by one federal district court, a maximum deviation of less than 10 percent between the largest and smallest districts is permissible and need not be justified by the state."); *see also Jauregui v. City of Palmdale*, 226 Cal.App.4th 781, 800 (2014) ("Our Supreme Court has described the Fourteenth Amendment and article I, section 2 as providing comparable protections in voting rights cases.") (*citing Canaan v. Abdelnour*, 40 Cal.3d 703, 715 (1985)). Plaintiffs' Sixth Cause of Action therefore fails for the same reasons the Fifth Cause of Action fails.

### H.   Plaintiffs Seventh Cause of Action Fails

Plaintiffs' 42 U.S.C. section 1983 claim is based on the allegations in Plaintiffs' Second and Fifth Causes of Action that the policies of the City are unconstitutional or violate federal law. *See* ECF No. 2-1 at ¶¶ 97–99. Because those other counts fail, Plaintiffs' section 1983 claim fails. *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008).

### IV.   CONCLUSION

The City's Motion to Dismiss should granted in full.

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

MOTION TO DISMISS

1   Dated:  March 30, 2022              BEST BEST & KRIEGER LLP

2

3                                        By:  /s/ Jeffrey V. Dunn
                                             JEFFREY V. DUNN
                                             DANIEL L. RICHARDS
4                                            Attorneys for Defendants
                                             CITY OF FOLSOM
5
    Dated:  March 30, 2022              CITY OF FOLSOM
6

7                                        By:  /s/ Steven Wang
                                             STEVEN WANG
8                                            SARI MYERS DIERKING
                                             Attorneys for Defendants
9                                            CITY OF FOLSOM

10
    55747.00005\34945971.5
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS